**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**
*Caption In Compliance With D.N.J. LBR 9004-1(b)*

**DUANE MORRIS LLP**
Morris S. Bauer, Esq.
One Riverfront Plaza
1037 Raymond Boulevard, Suite 1800
Newark, NJ 07102-5429
Telephone: (973) 424-2037
E-mail:  msbaurer@duanemorris.com

*Counsel for Fulton Bank, N.A.*

| | |
|---|---|
| In Re:<br><br>**VARUN MALIK,**<br><br>        Debtor. | Case No. 22-11708 CMG<br><br>Judge: Hon. Christine M. Gravelle<br><br>Chapter 11 |
| **VARUN MALIK,**<br><br>        Plaintiff,<br><br> v.<br><br>**FULTON BANK, N.A.,**<br><br>        Defendant. | Adv. Pro. No.: 22-01069 CMG<br><br>Judge: Hon. Christine M. Gravelle |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF FULTON
BANK, N.A., FOR THE ENTRY OF AN ORDER (A) DISMISSING THE
CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b);
OR IN THE ALTERNATIVE, (B) FOR (1) RELIEF FROM THE
AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)(1) TO ALLOW
STATE COURT ACTION TO PROCEED, (2) DISMISSAL OF THE
ADVERSARY PROCEEDING, AND (3) ABSTENTION PURSUANT TO 28
U.S.C. § 1334(c); AND (C) FOR OTHER RELATED RELIEF**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT .................................................1

II.      STATEMENT OF FACTS ...................................................5

III.      LEGAL ARGUMENT.......................................................6

POINT 1      THE COURT SHOULD DISMISS THE BANKRUPTCY CASE FOR CAUSE ...........................................................................6

     A.      LEGAL STANDARDS ................................................ 6

     B.      THE DEBTOR'S CONDUCT IN THE STATE COURT ACTION REVEALS THAT THE BANKRUPTCY PETITION FILING WAS PRIMARILY A LITIGATION TACTIC ................................ 9

     C.      THE TOTALITY OF THE CIRCUMSTANCES REVEAL NO VALID PURPOSE FOR THE BANKRUPTCY CASE .................... 15

POINT 2      IN THE ALTERNATIVE, THE COURT SHOULD (1) ABSTAIN FROM HEARING AND DISMISS THE ADVERSARY PROCEEDING; AND (2) GRANT FULTON BANK RELIEF FROM THE AUTOMATIC STAY FOR THE PURPOSE OF PROCEEDING WITH THE STATE COURT ACTION ..............................................................17

     A.      THE COURT SHOULD ABSTAIN FROM HEARING AND DISMISS THE ADVERSARY PROCEEDING .................................. 17

         1.      Mandatory Abstention ........................................... 17

         2.      Permissive Abstention ........................................... 19

         3.      Application of the Abstention Doctrines Support the Court Abstaining and Dismissing the Adversary Proceeding ..................................... 20

     B.      THE COURT SHOULD LIFT THE AUTOMATIC STAY TO ALLOW THE STATE COURT ACTION TO PROCEED ................................. 23

         1.      The Balance of Harms Tips Toward Fulton Bank .................................... 25

CONCLUSION...................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*In re 15375 Mem. Corp. v. Bepco, LP*, 589 F.3d 605 (3d Cir. 2009) ................................... 7-8, 14

*In re Am. Cap. Equip., LLC*, 688 F.3d 145 (3d Cir. 2012) ...........................................................6

*In re Argus Grp. 1700*, 206 B.R. 737 (Bankr. E.D. Pa. 1996)................................................11, 19

*In re Chan*, 355 B.R. 494 (Bankr. E.D. Pa. 2006) ...........................................................................24

*In re Chatkin*, 465 B.R. 54 (Bankr. E.D. Pa. 2012) .................................................................. 23-24

*In re Cinelli*, No. 14-1007, 2014 WL 4106030 (E.D. Pa. Aug. 27, 2014)...............................22, 26

*In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004)...........................................................18

*In re Crown Village Farm, LLC*, 415 B.R. 86 (Bankr. D. Del. 2009)...........................................12

*In re Dabney*, 45 B.R. 312 (Bankr. E.D. Pa. 1985) .......................................................................25

*In re Derma Pen, LLC*, No. 14–11894, 2014 WL 7269762 (Bankr. D. Del. Dec.
    19, 2014) ...................................................................................................................................13

*In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750
    (D.N.J. 1996)............................................................................................................................19

*In re Exide Techs.*, 544 F.3d 196 (3d Cir. 2008) .....................................................................18–19

*In re G-I Hldgs., Inc.*, 580 B.R. 388 (Bankr. D.N.J. 2018).............................................................20

*In re Greenberg*, No. 16-1350, 2017 WL 3816042 (9th Cir. B.A.P. Aug. 31, 2017)......................8

*In re GVS Portfolio I B, LLC*, No. 21-10690, 2021 WL 2285285 (Bankr. D. Del.
    June 4, 2021)...............................................................................................................................7

*In re Indian Palms Assocs., Ltd.*, 61 F.3d 197 (3d Cir. 1995) .......................................................23

*In re Int. Telecom Express, Inc.*, 384 F.3d 108 (3d Cir. 2004) ........................................................8

*In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293 (Bankr. D. Del. 2011) .........................6

*In re Laurel Highlands Found., Inc.*, 473 B.R. 641 (Bankr. W.D. Pa. 2012)................................12

*In re Lezdy*, 332 B.R. 217 (Bankr. M.D. Fla. 2005) ......................................................................16

*In re Liptak*, 304 B.R. 820 (Bankr. N.D. Ill. 2004)........................................................................13

DM3\8537082.1

*In re LTL Mgmt., LLC*, No. 21-30589, 2022 WL 596617 (Bankr. D.N.J. Feb. 25, 2022) ...............................................................................................................7

*In re Mid–Atl. Handling Sys., LLC*, 304 B.R. 111 (Bankr. D.N.J. 2003) ............................... 24-25

*In re Monsour Med. Ctr., Inc.*, 154 B.R. 201 (Bankr. W.D. Pa. 1993) ..............................8, 11–12

*In re Quad Sys. Corp.*, No. 00-35667F, 2001 WL 1843379 (E.D. Pa. Mar. 20, 2001) ..............................................................................................................25

*In re Schaffer*, 597 B.R. 777 .......................................................................8, 15, 23, 25

*In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999) ...................................................7

*In re Stingfree Techs. Co.*, 427 B.R. 337 (Bankr. E.D. Pa. 2010) ......................................7, 15–17

*Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. 2006) .............................................................18

*In re Stone Fox Cap. LLC*, 572 B.R. 582 (Bankr. W.D. Pa. 2017) ........................................8

*In re Sullivan*, 522 B.R. 604 (9th Cir. B.A.P. 2016) .....................................................15

*Matter of Welwood Corp.*, 60 B.R. 319 (Bankr. M.D. Fla. 1986) .........................................17

*In re Wilson*, 116 F.3d 87 (3d Cir. 1997) ..................................................................23

*Matter of Young*, 76 B.R. 376 (Bankr. D. Del. 1987) ....................................................13

**State Cases**

*Fulton Bank, N.A. v. Textile Décor USA, Inc.*, Case No. SOM-L-000265-21 (N.J. Super. filed Feb. 23, 2021) ...........................................................................1

**Federal Statutes**

11 U.S.C. § 362(a) ...........................................................................................12, 23

11 U.S.C. § 362(d)(1) ................................................................................... *Passim*

11 U.S.C. § 1112(b) ........................................................................................ 5-7, 28

11 U.S.C. § 523(c) ...............................................................................................22

28 U.S.C. § 1334(c) ...................................................................................5–6, 17–20, 29

28 U.S.C. § 157(b) ...............................................................................................18

DM3\8537082.1

# I.    <u>PRELIMINARY STATEMENT</u>

For over a year, Varun Malik (the "<u>Debtor</u>") and his solely owned S corporation, Textile

Décor USA, Inc. ("<u>Textile Décor</u>," and together with the Debtor, the "<u>State Defendants</u>"), have

fought to prevent the discovery of basic financial records necessary to reveal the scope of a

multimillion-dollar fraud they perpetrated on Fulton Bank, N.A. ("<u>Fulton Bank</u>"), now the

defendant in the above-captioned adversary proceeding (the "<u>Adversary Proceeding</u>").    The

money is gone, the collateral missing, and the Debtor perpetually unavailable.  Having run out of

road in the state court litigation (the "<u>State Court Action</u>") pending before the New Jersey Superior

Court (the "<u>State Court</u>"),[1] the Debtor sought refuge in this Court on the eve of a hard-earned

hearing to compel his deposition and the production of documents needed to reveal the extent of

the fraud (the "<u>Motions to Compel</u>").

The parties' relationship began in March 2018, when Fulton Bank originated a $3,000,000

line of credit and $500,000 term loan with Textile Décor (collectively, the "<u>Loans</u>").  The Loans

were secured by all of Textile Décor's assets (the "<u>Collateral</u>"), which primarily comprised

inventory and receivables to be identified on monthly borrowing-base certificates.  The Debtor

unconditionally guaranteed Textile Décor's obligations, in turn securing his guaranty obligations

with a residential mortgage.[2]  Things went smoothly for a time but quickly derailed in August

2020, when the State Defendants stopped providing borrowing-base certificates without

explanation.  Loan payments stopped the following month, as did substantive communications.

After the issuance of a default notice, the State Defendants responded with claims of being out of

---

[1] *See Fulton Bank, N.A. v. Textile Décor USA, Inc.*, Case No. SOM-L-000265-21 (N.J. Super. filed Feb. 23, 2021). *See* Miller Cert. Ex. A.

[2] Miller Cert. ¶ 14(c).

town, having medical issues, no longer being employable, requests to forgive the debt, and accusations of bias.

In response, Fulton Bank commenced the State Court Action. The State Court Action was initially commenced to assert claims for breach of the loan and guaranty obligations and obtain a writ replevin to recover the Collateral.

The August 2020 borrowing-base certificate—the last that Fulton Bank received—showed over $5 million in combined inventory and receivables, but Fulton Bank had no way to confirm their existence because prior to the filing of the complaint, the State Defendants refused to meet with Fulton Bank or provide it with access to assess its Collateral.

When Fulton Bank tried to collect the receivables shown on the August 2020 borrowing-base certificate following the commencement of the State Court Action, it was surprised to learn from six of the largest account debtors that they had done no business with Textile Décor for years and had no record of the purported debts. Fulton Bank soon realized that it had relied on fictitious receivables to originate the Loans.

When Fulton Bank obtained the writ in March 2021, $5 million had become $236,000 in five months. Reeling from the realization that the relationship had been built on smoke and mirrors, Fulton Bank amended its complaint to assert a claim for fraud and conversion. As stated in the amended complaint, Fulton Bank's losses exceed $3.3 million.

Knowing that they committed a fraud on Fulton Bank, the State Defendants asserted counterclaims alleging that Fulton Bank had violated the Equal Credit Opportunity Act ("ECOA") by requiring the Debtor to guarantee the Loans and failing to offer Textile Décor forbearance because the Debtor is an Indian American. It also asserted equitable claims for breach of the

2

implied covenant of good faith and fair dealing and promissory estoppel under the same allegations.

In the State Court Action, Fulton Bank has reviewed and disclosed over 10,000 pages of documents to comply with the State Defendants' discovery requests in good faith. Fulton Bank does not anticipate the State Court requiring it to provide any additional document to the State Defendants. The State Defendants have stonewalled the production of straightforward financial records such as bank statements, purchase orders, and profit-and-loss statements while seeking to quash even third-party subpoenas, leaving Fulton Bank unable to investigate the fraud and answer basic questions such as where its assets went, which other documents were falsified, and most importantly, whether others were involved. When there were no more briefs to file, continuances to request, or excuses to offer, Textile Décor commenced an assignment for the benefit of creditors, the Debtor commenced the chapter 11 proceeding, and the Debtor asked the State Court to stay the State Court Action as a result of these filings.

The Debtor commenced the above-captioned bankruptcy case (the "Bankruptcy Case") under chapter 11 of title 11 of the U.S. Code—the most expensive chapter—but reported assets worth less than $50,000 and just seven alleged unsecured[3] creditors in his petition (the "Bankruptcy Petition")[4]. The Debtor then asserted claims in the Adversary Proceeding that are *exactly the same* as the State Defendants' counterclaims that have already been litigated for a year in the State Court Action. Ten days earlier, he had caused Textile Décor to assign its assets to Steven Mitnick, Esq. (the "Assignee") for the benefit of creditors (the "Textile ABC"), which the

---

[3] The Debtor characterized Fulton Bank as an unsecured creditor with $0 contingent and disputed liabilities. For the avoidance of doubt, Fulton Bank reserves all rights as to this characterization.

[4] Dkt. No. 1 in the Bankruptcy Case.

DM3\8537082.1

Assignee is proceeding in Somerset County, the same county where the State Court Action is pending.

The Debtor's strategy created a procedural and jurisdictional quagmire well-suited to escape a ruling on discovery, and causing the State Court to pause because of its uncertainty as to Textile's counsel and the role of the Assignee in the State Court Action.[5] This strategy has splintered the proceedings and perverted the process, with the Debtor believing that he is free to pursue his claims directly against Fulton Bank in a new forum, leaving behind a year of discovery disputes and dispositive rulings. The Debtor is under the misbelief that these steps will stay Fulton Bank's claims against the Debtor. Fulton Bank would have to answer the Adversary Proceeding asserting a counterclaim again pleading all of the fraud and conversion facts set forth in the State Court Action and requesting a judgment amount that is non-dischargeable. In essence, the Debtor's strategy forces the parties to start over from scratch.

The current status of the State Court Action is that the discovery end date is set as April 7, 2022. Fulton Bank anticipates a short one to two-month extension in order to take depositions. Fulton Bank has served subpoenas on all of the account debtors, several of which already have provided responses to the subpoenas. Fulton Bank is also waiting for information from the subpoenas served on the reference banking institutions provided that the State Court Action proceeds. Thereafter, Fulton Bank can proceed with the deposition of the Debtor, and then proceed with summary judgment or trial. Clearly, the State Court Action is positioned more closely to conclusion, then having to start over in this Court.

---

[5] Textile Décor's counsel and the Debtor's counsel in the State Court Action is Riker Danzig Scherer Hyland Perretti LLP (the "Riker Firm"). The Riker Firm has moved to be relieved as counsel. The Assignee has advised the State Court that he is not seeking a stay of the action and has no objection to Fulton Bank proceeding with its discovery. *See* Ex. E to the Miller Cert.

DM3\8537082.1

The Court has many tools to dispose of the tortured proceedings and allow the State Court Action to proceed to conclusion in an expeditious manner.  As set forth in detail with substantial legal support, the Court should dismiss the Bankruptcy Case for cause under 11 U.S.C. § 1112(b) because the Debtor planned the filing to avoid producing discovery in State Court and gain an advantage by reasserting his counterclaims in the Adversary Proceeding.

To the extent the Court is not inclined to dismiss the Bankruptcy Case, it should (1) dismiss or abstain from hearing the claims asserted in the  Adversary Proceeding under 28 U.S.C. § 1334(c) because (a) they are non-core and only related to the Bankruptcy Case because the Debtor is a party; (b) they are the claims that have already been litigated for a year in the State Court Action; (c) they came to this Court by way of forum shopping; (d) only the ECOA claim has an independent jurisdictional basis, but it requires no bankruptcy expertise; (e) the State Court is prepared to rule on substantive discovery issues that would likely be resurrected in this Court; and (f) the other requirements for mandatory or permissive abstention are satisfied; and (2) lift the stay under § 362(d)(1) for "cause" because the State Court has greater familiarity with the facts and issues, has progressed through motions to dismiss and ruled on numerous discovery issues, and the Debtor availed himself of the stay's protection in bad faith.    Regardless of which tool the Court may choose, the parties should be returned to proceed with the State Court Action to its conclusion.

## II.    <u>STATEMENT OF FACTS</u>

Fulton incorporates the facts set forth in (a) the *Certification of Saleena Miller in Support of Motion of Fulton Bank, N.A., for the Entry of an Order (A) Dismissing the Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b); or in the Alternative, (B) for (1) Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) to Allow State Court Action to Proceed and (2) Abstention Pursuant to 28 U.S.C. § 1334(c); and (C) for Other Related Relief* (the "<u>Miller Cert.</u>") and (b) the

*Certification of Morris S. Bauer in Support of Motion of Fulton Bank, N.A., for the Entry of an Order (A) Dismissing the Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b); or in the Alternative, (B) for (1) Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) to Allow State Court Action to Proceed and (2) Abstention Pursuant to 28 U.S.C. § 1334(c); and (C) for Other Related Relief* (the "Bauer Cert.") submitted simultaneously herewith as if set forth herein at length.

### III.    LEGAL ARGUMENT

### POINT 1

### THE COURT SHOULD DISMISS THE BANKRUPTCY CASE FOR CAUSE

#### A.    LEGAL STANDARDS

Section 1112(b)(1) of the Bankruptcy Code allows any party in interest to request the dismissal of a chapter 11 petition for "cause." Upon a showing of cause:

> the court *shall* convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.[6]

Section 1112(b)(1) is subject to "a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'"[7] However, "[g]ood faith is a *predicate* to the right to file a petition in bankruptcy, as only the honest but unfortunate debtor is eligible to avail itself of the protections afforded by the Bankruptcy Code."[8] Due to "the equitable nature of

---

[6] 11 U.S.C. § 1112(b) (emphasis added).

[7] *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012). Section 1112(b)(4) enumerates 16 grounds for "cause," but the list is "non-exhaustive." *Am. Cap.*, 688 F.3d at 161.

[8] *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 297 (Bankr. D. Del. 2011) (emphasis added) (internal quotation marks and citation omitted).

6

bankruptcy proceedings[,] . . . a Chapter 11 petition is subject to dismissal for 'cause' under 11 U.S.C. § 1112(b) unless it is filed in good faith."[9]  In these circumstances, "[t]he proponent of an abusive petition does not belong in bankruptcy[,] so it is unnecessary to ask whether dismissal or conversion is in the interest of the creditors" on a motion to dismiss."[10]

When a motion to dismiss puts good faith at issue, "[t]he debtor bears the burden of proving good faith by a preponderance of the evidence."[11]  Courts must conduct a "fact intensive inquiry . . . [that] examines the totality of facts and circumstances."[12]  In the Third Circuit, two factors are "particularly relevant": "(1) whether the petition serves a valid bankruptcy purpose and (2) whether the petition is filed merely to obtain a tactical litigation advantage."[13]

Many cite the following additional list of non-exhaustive list of factors to consider in the totality of the circumstances:

> (1) the debtor has few or no unsecured creditors; (2) there has been a previous bankruptcy petition by the debtor or a related entity; (3) the prepetition conduct of the debtor has been improper; (4) the petition effectively allows the debtor to evade court orders; (5) there are few debts to non-moving creditors; (6) the petition was filed on the eve of foreclosure; (7) the foreclosed property is the sole or major asset of the debtor; (8) the debtor has no ongoing business or employees; (9) there is no possibility of reorganization; (10) the debtor's income is not sufficient to operate; (11) there was no pressure from non-moving creditors; (12) reorganization essentially involves the resolution of a two-party dispute; (13) a corporate debtor was formed and received title to its major assets immediately before the petition; and (14) the debtor filed solely to create the automatic stay.[14]

---

[9] *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999) (emphasis added).

[10] *Id.* at 160 n.8.

[11] *In re LTL Mgmt., LLC*, No. 21-30589, 2022 WL 596617, at *5 (Bankr. D.N.J. Feb. 25, 2022).

[12] *In re 15375 Mem. Corp. v. Bepco, LP*, 589 F.3d 605, 618 (3d Cir. 2009) (internal quotation marks and citation omitted).

[13] *Id.* at 619

[14] *In re Stingfree Techs. Co.*, 427 B.R. 337, 352 (Bankr. E.D. Pa. 2010) (citation omitted).  Others cite similar variations. *See, e.g.*, *In re GVS Portfolio I B, LLC*, No. 21-10690, 2021 WL 2285285, at *7 (Bankr. D. Del. June 4,

The central purposes of bankruptcy "are to preserve going concerns and to maximize the value of the debtor's estate."[15] To serve a valid bankruptcy purpose, a petition "must seek to create or preserve some value that would otherwise be lost—not merely distributed to a different stakeholder—outside of bankruptcy."[16] Further, because the automatic stay "is a consequential benefit of an otherwise good faith filing," merely seeking its protection "cannot establish good faith as a matter of law."[17]

Although "chapter 11 filings triggered by state court proceedings do not *per se* constitute bad faith filings, where a debtor's reorganization effort involves essentially a two-party dispute which can be resolved in state court, and the evidence demonstrates that the filing for bankruptcy relief is intended to frustrate the legitimate efforts of creditors to enforce their rights against the debtor, a finding that the petition was filed in bad faith is generally warranted."[18] Finally, "[w]here the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith."[19] Both individual and corporate chapter 11 petitions are subject to dismissal for bad faith.[20]

---

2021) (citing a 12-factor list); *In re Monsour Med. Ctr., Inc.*, 154 B.R. 201, 208 (Bankr. W.D. Pa. 1993) (citing a 10-factor list).

[15] *In re Int. Telecom Express, Inc.*, 384 F.3d 108, 128–29 (3d Cir. 2004); *In re Stone Fox Cap. LLC*, 572 B.R. 582, 590 (Bankr. W.D. Pa. 2017).

[16] *Int. Telecom*, 184 F.3d at 129.

[17] *15375 Mem. Corp*, 589 F.3d at 620 (emphasis omitted).

[18] *In re Schaffer*, 597 B.R. 777, 792 (Bankr. E.D. Pa. 2019 (internal quotation marks and citation omitted).

[19] *15375 Mem.*, 589 F.3d at 625 (internal quotation marks and citation omitted).

[20] *See, e.g.*, *In re Greenberg*, No. 16-1350, 2017 WL 3816042, at *6 (9th Cir. B.A.P. Aug. 31, 2017) (dismissing an individual chapter 11 case for bad faith where the debtor "clearly . . . inten[ded] to forum shop by invoking the

### B.    THE DEBTOR'S CONDUCT IN THE STATE COURT ACTION REVEALS THAT THE BANKRUPTCY PETITION FILING WAS PRIMARILY A LITIGATION TACTIC

Every metric reveals that this Bankruptcy Case is nothing more than a bad-faith litigation tactic to deprive Fulton Bank of discovery.  After a year of delays and discovery disputes *arising from the Debtor's continuous refusal to provide virtually anything*,[21] Fulton Bank was no longer interested in withdrawing its Motions to Compel as it had twice before for documents and once for depositions in response to false promises to meet and confer or testify.  As the hearing date approached, the Debtor filed a flurry of objections advising that he was left with no choice but to pursue bankruptcy and ABC proceedings while repeatedly asking the State Court to *preemptively* stay the case to ensure that all disputes could be heard in future forums.  He filed the Bankruptcy Petition weeks later on the eve of the hearing, followed immediately by an Adversary Proceeding that *asserts the same claims already pending in the State Court Action*, purportedly leaving his discovery problems behind.

Fulton Bank has received virtually nothing since propounding its request for documents on March 22, 2021,[22] while the Debtor and a corporate representative of Textile Décor have never appeared for depositions first noticed on November 19, 2021.[23]  On February 16, 2022, Fulton Bank filed the Motions to Compel, which were set for hearing on March 4, 2022,[24] and issued subpoenas to four banks that could independently provide account statements relevant to the

---

automatic stay with the filing of his petition and attempting to have the bankruptcy court, rather than the state court, determine the extent and validity of [a mortgage] lien").

[21] Miller Cert. ¶¶ 47–48.

[22] *Id.* ¶¶ 54–55.

[23] *Id.* ¶¶ 47–38.

[24] *Id.* ¶ 64.

DM3\8537082.1

disposition of receivables allegedly paid to Textile Décor and further identify others that may have been complicit in the fraud committed by Textile Décor and the Debtor (the "<u>Bank Subpoenas</u>").[25]

In at least three briefs supporting a flurry of objections to these efforts, the State Defendants represented that they intended to pursue the Bankruptcy Case and ABC to counter "efforts to litigate Defendants into submission"[26] and repeatedly requested a *preemptive* stay on this basis.

For example, in letter briefs filed on February 17 and 24, 2022, in support of six motions to quash the Bank Subpoenas and for related protective orders (the "<u>Quash Briefs</u>"), the State Defendants made the following representation:

> This Motion is necessitated by Plaintiff's continued efforts to litigate Defendants into submission, ***which have resulted in Defendants having no choice but to file an assignment for the benefit of creditors and seek bankruptcy protection***. Defendants are loathed [*sic*] to file the instant motion and seek Court intervention given that Defendants have previously objected to Plaintiff's discovery requests— to both Defendants and non-parties—that seek records beyond the period relevant to this action.[27]

This statement reveals the Debtor's true motive for filing this case—fleeing to this Court to avoid "submission" to Fulton Bank's requests for documents and depositions, *which have been pending for over a year*. They further represented:

> ***This action must be stayed and the Subpoenas, to the extent they are not quashed in their entirety, dealt with in the appropriate forum, be that the bankruptcy court and/or the Chancery Division.*** Defendants are in the process of retaining counsel for this purpose and anticipate those filings in the immediate future.
>
> . . . .
>
> Given that the purpose of the stay under the Bankruptcy Code serves the same purpose enumerated by the ABC Statute, ***it is appropriate for this Court to stay this action in its entirety such that any outstanding matters, including disposition***

---

[25] *Id.* ¶¶ 44.

[26] *See* Ex. A to the Bauer Cert. at 1.

[27] *Id.* at 1.

10

*of the Subpoenas to the extent they are not quashed, may be dealt with before the bankruptcy court and/or the Chancery Division, as appropriate.*[28]

The State Defendants made these requests for a *preemptive bankruptcy stay*, pre-extended to both parties when neither the ABC nor the Bankruptcy Case were pending, imploring the State Court to reserve judgment on *third-party subpoenas* until they could avail themselves of other forums. This blatant forum shopping is a bad-faith litigation tactic.[29]

On February 21, 2022, the Debtor caused Textile Décor to commence the ABC proceeding.[30]  No stay arises automatically because of an ABC, and the assignment left both the assignment estate and the post-assignment entity of Textile Décor without counsel unless appointed by the Assignee.  Until this point, the same counsel jointly represented the State Defendants.

The Debtor then filed a cross-motion (the "<u>Cross-Motion</u>") on February 24, 2022, again representing that the discovery disputes—of his own creation—had driven him to pursue this relief:

> The Plaintiff's primary tactic throughout this action has been to harass, vex, and otherwise litigate Defendants into submission and financial ruin. This is evident from, among others, the eight (8) motions filed herein and six (6) non-party subpoenas issued by Plaintiff seeking wholly irrelevant, confidential, and highly sensitive financial information of not only Textile, but non-party corporations seeking records entirely unrelated to this litigation.  ***Plaintiff has successfully achieved its goal, which is to financially devastate Defendants and force them into submission, liquidation, and bankruptcy, and as such, this matter should be stayed.*** [31]

---

[28] *Id.* at 7–8 (emphasis added).

[29] *In re Argus Grp. 1700*, 206 B.R. 737, 753 (Bankr. E.D. Pa. 1996) ("Dismissal based upon bad faith in filing has been deemed appropriate where the bankruptcy petition was filed as a litigation tactic, a forum shopping device and/or to resolve what is essentially a two-party dispute."); *Monsour Med.*, 154 B.R. at 209 (dismissing a chapter 11 case for bad faith where its filing was blatant forum shopping intended to reverse setbacks suffered in another forum).

[30] Miller Cert. ¶¶ 61–63.

[31] *See* Ex. C to the Bauer Cert. at 6.

11

He also repeated his request for a *preemptive bankruptcy stay* on the basis that the ABC was in

place:

> Additionally, a stay in this case is appropriate as immediately upon the execution and delivery of the Assignment, ***Textile's Counsel effectively lost all authority to act on Textile's behalf pending action by the Assignee and approval by the Chancery Division.*** Absent authorization to act on Textile's behalf, Textile cannot possibly mount any defense to the claims or indeed, present any arguments to this Court, and will necessarily be prejudiced should this action continue unabated. As such, ***a stay is appropriate pending the filing of the ABC proceeding by the Assignee***.
>
> ***Finally, a stay will nonetheless be imposed shortly by operation of law as to Malik due to his impending bankruptcy filing. See 11 U.S.C. § 362(a).*** Defendants have retained counsel for this purpose and anticipate those filings in the immediate future.[32]

The ink barely wet on the deed of assignment,[33] and with no indication of the Assignee's

position, counsel for the Debtor claimed to have "effectively lost all authority to act on Textile's

behalf" while requesting the State Court for a stay on that same behalf to redress a situation entirely

of the Debtor's own making.

On the eve of the March 4, 2022 hearing in the State Court Action, the Debtor commenced

this Bankruptcy Case and the Adversary Proceeding. "[T]iming is a key element" in determining

whether the primary purpose of a chapter 11 filing is a litigation tactic.[34] Courts have dismissed

petitions timed "to avoid a potentially adverse ruling in state court"[35] as well as those evidencing

a desire "to prevail . . . by reversing setbacks [the debtors] have suffered in another forum."[36] Here,

---

[32] *Id.* at 9.

[33] *See* Ex. F to the Bauer Cert.

[34] *In re Crown Village Farm, LLC*, 415 B.R. 86, 93 (Bankr. D. Del. 2009).

[35] *In re Laurel Highlands Found., Inc.*, 473 B.R. 641, 658 (Bankr. W.D. Pa. 2012).

[36] *Monsour Med.*, 154 B.R. at 209.

the Debtor filed the Bankruptcy Petition the day before a hearing that could have finally required him to do what he had refused for a year: appear for deposition and meaningfully respond to a first request for production. After failing to convince the State Court to enter a preemptive stay in advance of that hearing, he filed the Bankruptcy Petition at the eleventh hour.[37]

In *In re Liptak*, the debtor filed an individual chapter 11 petition "on the eve of [his ex-wife's exercise of traditional state-law collection rights without posting an appeal bond."[38] The court found bad faith because "[t]his bankruptcy petition was a remedy of last resort when, a full two years after [the debtor's ex-wife] prevailed on her 'bill of review' action, he could no longer find an effective legal method (other than an appeal bond) for warding off [the] garnishment actions" after the state court declined to issue an emergency restraining order.[39] Another court dismissed an individual chapter 11 petition it determined had been filed "to avoid enforcement of the Chancery Court's specific performance decree and that court's decision regarding the withholding of interest" with respect to a disputed real property transaction.[40]

The present Debtor achieved the same result. After alleging his being driven to bankruptcy by litigating discovery disputes of his own making, he elected to seek relief as an individual debtor with less than $50,000 in assets, while *restarting the litigation from the beginning* by re-asserting the same counterclaims before the State Court in the Adversary Proceeding, which—as previously

---

[37] *See, e.g.*, *In re Derma Pen, LLC*, No. 14–11894, 2014 WL 7269762, at *3–*4 (Bankr. D. Del. Dec. 19, 2014) (holding that "the bankruptcy filing was timed to stop the [pending litigation] with the further purpose of moving the dispute to what the Debtor perceived as a 'friendlier' forum for disposition of the same issues"). Notably, the debtor had also argued that the expense of the litigation had pushed it into bankruptcy, even representing that it had to borrow money for attorneys' fees. *Id.* at *6. The court observed that "filing to avoid the mounting litigation costs falls more on the side of a litigation tactic rather than a need to reorganize," pointing out that "the Debtor has merely exchanged its litigation costs for administrative costs in bankruptcy. *Id.* at *9 n.18

[38] *In re Liptak*, 304 B.R. 820, 838 (Bankr. N.D. Ill. 2004).

[39] *Id.*

[40] *Matter of Young*, 76 B.R. 376, 378 (Bankr. D. Del. 1987).

13

stated, if the Adversary Proceeding were to go forward—will be met with the fraud allegations that were pending in the State Court Action and necessarily the same level of discovery.

On March 4, 2022, the Debtor filed a letter (the "March 4 Letter") reminding the State Court that the bankruptcy stay now prevented his financial records from discovery, now arguing that he was the "real party in interest" for Textile Décor, which meant the court should extend the bankruptcy stay to protect its records as well.[41]    The Debtor made these representations notwithstanding the fact the Assignee had filed a letter three days prior, in which he advised the State Court that he was *not seeking a stay* and *did not object to discovery*[42]

At the March 4, 2022 hearing, which the Assignee did not attend, the Debtor's counsel asked the Court to *permanently extend the bankruptcy stay* to the *post-assignment shell of* Textile Décor, which he *no longer represented*, to ensure that subpoenas for its records would not go un-quashed[43]  The State Court declined to do so and instead continued the hearings to April 8, 2022, so the parties could take any appropriate action to resolve the situation.[44]

There is no conceivable reason why the Debtor or his chapter 11 estate would have valid bankruptcy interest in preventing a third-party bank from disclosing account statements of an asset-less non-debtor affiliate.  Taken together, the Debtor's representations in the State Court Action leave "no doubt that the primary, if not sole, purpose of the filing was a litigation tactic"[45] to splinter the proceedings and weaponize the automatic stay to keep the Debtor's financial records—

---

[41] *See* Ex. D to the Miller Cert.

[42] Miller Cert. ¶ 63; *see also* Ex. E to the Miller Cert.

[43] *See* Ex. F to the Miller Cert. at ll 7–12 (emphasis added).

[44] Miller Cert. ¶ 66.

[45] *15375 Mem.*, 589 F.3d at 625 (internal quotation marks and citation omitted).

DM3\8537082.1

and those of Textile Décor—concealed with the fraud, its associated evidence and the accomplices
kept under wraps.

## C.     THE TOTALITY OF THE CIRCUMSTANCES REVEAL NO VALID PURPOSE FOR THE BANKRUPTCY CASE

Several additional factors demonstrate that the Debtor filed his Bankruptcy Petition in bad

faith. First, although "chapter 11 filings triggered by state court proceedings do not *per*

*se* constitute bad faith filings, where a debtor's reorganization effort involves essentially a two-

party dispute which can be resolved in state court, and the evidence demonstrates that the filing

for bankruptcy relief is intended to frustrate the legitimate efforts of creditors to enforce their rights

against the debtor, a finding that the petition was filed in bad faith is generally warranted."[46]

Further, "[t]ypical bad faith two-party dispute cases may involve delays on the eve of trial

(litigation tactics) [and] forum shopping."[47]  Here, the Debtor aborted the State Court Action the

day before the State Court would have ruled on the Motions to Compel, and then re-asserted his

counterclaims in an Adversary Proceeding before this Court the same day.

Second, "the prepetition conduct of the debtor has been improper." [48]  The Debtor induced

Fulton Bank to provide $3.5 million in financing by fabricating receivables prior to origination,

continued to fabricate them on borrowing-base certificates submitted thereafter, and cannot

explain the disposition of $5 million in collateral shown on the last borrowing-base certificate he

submitted in August 2020.[49]  Additionally, the Debtor continuously delayed the production of

---

[46] *Schaffer*, 597 B.R. at 792 (Bankr. E.D. Pa. 2019 (internal quotation marks and citation omitted).

[47] *In re Sullivan*, 522 B.R. 604, 616 (9th Cir. B.A.P. 2016).

[48] *Stingfree Techs.*, *597* B.R. at 352.

[49] Miller Cert. ¶¶ 32–34.

DM3\8537082.1

discovery in the State Court Action, including by persuading Fulton Bank to withdraw prior Motions to Compel with empty promises to cooperate.

Third, "the petition effectively allows the [Debtor] to evade court orders."[50]  Having run out of discovery objections to raise, the Debtor filed his Bankruptcy Petition on the eve of a hearing that would have allowed the State Court to rule on the Motions to Compel.  Additionally, he re-asserted his own claims in the Adversary Proceeding with a clean discovery slate before this Court after repeatedly trying to stay the State Court Action in advance and knowing full well that the State Court was not going to quash the outstanding subpoenas.

Fourth, "there are few debts to non-moving creditors."[51]  The Bankruptcy Petition shows that the Debtor has only six other unsecured creditors with nominal combined debts of approximately $135,000 in his petition, while facing fraud claims for over $3.3 million.  As one court has observed, "[t]he lack of a meaningful number of unsecured creditors in relation to the indebtedness owed to one major creditor is also a factor in deciding whether the Chapter 11 case was filed in bad faith."[52]  Notwithstanding this fact, he filed under the most expensive bankruptcy chapter while reporting assets worth less than $50,000 in his Bankruptcy Petition.

Sixth, (a) "the debtor has no ongoing business or employees," (b) "there is no possibility of reorganization," and/or (c) "the debtor's income is not sufficient to operate."[53]  Although the Debtor has not yet filed his schedules or statement of financial affairs, his known business—Textile Décor—is subject to an ABC.  Without going-concern value to preserve or meaningful

---

[50] *Stingfree Techs.*, 597 B.R. at 352.

[51] *Id.* at 352.

[52] *In re Lezdy*, 332 B.R. 217, 222 (Bankr. M.D. Fla. 2005).

[53] *Stingfree Techs.*, 597 B.R. at 352.

16

assets with value that cannot be maximized outside bankruptcy, a debtor may not avail itself of the

bankruptcy court to liquidate non-bankruptcy claims.[54]  Courts have also held that where "there is

no property which is to be saved, there are no debts of any significance which need readjustment

and, most importantly, there is no way to establish feasibility of the plan which is to be funded

solely from the possibility of a lawsuit, the Chapter 11 case was not filed in good faith and it is

ripe for dismissal for 'cause.'"[55]

For all these reasons, the Court should dismiss the Bankruptcy Case for cause under 11

U.S.C. § 1112(b) because the Debtor filed in bad faith to avoid producing discovery or appearing

for deposition, while duplicating his claims in a new forum and leaving the same partially litigated

counterclaims behind.

## POINT 2

### IN THE ALTERNATIVE, THE COURT SHOULD (1) ABSTAIN FROM HEARING AND DISMISS THE ADVERSARY PROCEEDING; AND (2) GRANT FULTON BANK RELIEF FROM THE AUTOMATIC STAY FOR THE PURPOSE OF PROCEEDING WITH THE STATE COURT ACTION

## A.    THE COURT SHOULD ABSTAIN FROM HEARING AND DISMISS THE ADVERSARY PROCEEDING

### 1.    Mandatory Abstention

Pursuant to 28 U.S.C. § 1334(c)(2), a party may require a bankruptcy court to abstain

from hearing a proceeding as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court *shall* abstain from hearing such proceeding if an action is

---

[54] *Id.* at 345 (affirming the dismissal of a chapter 11 case filed to liquidate state-law claims in an adversary proceeding).

[55] *Matter of Welwood Corp.*, 60 B.R. 319, 323 (Bankr. M.D. Fla. 1986).

DM3\8537082.1

commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

In the Third Circuit, mandatory abstention is warranted if the following five factors are met:

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.[56]

Whether a proceeding "arises under" title 11 or a case under title 11 depends on whether the action is classified as a "core" or "non-core" proceeding under 28 U.S.C. § 157(b).[57]   If an action either arises under title 11 or a case under title 11, it is a "core" proceeding; if is merely "related" to a case under title 11, it is a "non-core" proceeding.[58]  To determine whether a claim is "core," a court

> must first look to the illustrative list of 'core' proceedings found in § 157(b)(2). It must then conduct [the Third Circuit's] two-step test, according to which a claim will be deemed core "if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.[59]

Courts must examine each claim individually to determine whether a proceeding is "core."[60]  Where the claims before the bankruptcy court are all non-core and all the other § 1334(c)(2) factors are met, the bankruptcy court must abstain from exercising jurisdiction in the

---

[56] *Stoe v. Flaherty*, 436 F.3d 209, 212 (3d Cir. 2006).

[57] *Id.*  at 216.

[58] *Id.* (citing *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004)).

[59] *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008).

[60] *Id.*

DM3\8537082.1

matter.[61]  With respect to whether the action can be "timely adjudicated in state court, the Third

Circuit has held that this factor requires only that the action proceed expeditiously in the state

court, not necessarily more quickly than in the bankruptcy court.[62]  Third Circuit courts "have

repeatedly held that when most or all but one of the requirements for mandatory abstention are

met, careful consideration should be given to whether it would be appropriate to exercise

discretionary abstention under § 1334(c)(1)."[63]

### 2.    Permissive Abstention

Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court may abstain from hearing a

proceeding as follows:

> Except with respect to a case under chapter 15 of title 11, nothing in this section
> prevents a district court in the interest of justice, or in the interest of comity with
> State courts or respect for State law, from abstaining from hearing a particular
> proceeding arising under title 11 or arising in or related to a case under title 11.

In determining whether to exercise its broad discretionary power to abstain from asserting

jurisdiction over a proceeding, a court may consider the following factors:

> (1) the effect on the efficient administration of the bankruptcy estate, (2) the extent
> to which issues of state law predominate, (3) the difficulty or unsettled nature of
> the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of
> the proceeding to the main bankruptcy case; (6) the existence of the right to a jury
> trial; and (7) prejudice to the involuntarily removed defendants.[64]

Courts in this district additionally consider a 12-factor test:

> (1) the effect or lack thereof on the efficient administration of the estate if a court
> recommends abstention; (2) the extent to which state law issues predominate over

---

[61] *Id.*

[62] *See Exide*, 544 F.3d at 218.

[63] *In re Argus Grp. 1700, Inc.*, 206 B.R. 737, 751 (Bankr. E.D. Pa. 1996), *aff'd*, 206 B.R. 757 (E.D. Pa. 1997).

[64] *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 760 (D.N.J. 1996).

bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the court's docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.[65]

Because "the two sets of factors are substantially similar, and courts have stated that not all the factors necessarily need to be considered."[66]  As a result, "courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative."[67]

**3.      Application of the Abstention Doctrines Support the Court Abstaining and Dismissing the Adversary Proceeding**

Mandatory abstention is not available because the Adversary Proceeding contains a federal claim.  However, it is important to note that the Adversary Proceeding would be subject to mandatory abstention but for the presence of the ECOA claim.  Specifically, the remaining two claims arise under New Jersey law, and all three claims are merely "related to" the Bankruptcy Case.  They arise under state common law and federal civil law, do not invoke a substantive bankruptcy right, and indeed could not depend on the existence of the Bankruptcy Case because the Debtor originally asserted them in the State Court Action.

---

[65] *In re G-I Hldgs., Inc.*, 580 B.R. 388, 423 (Bankr. D.N.J. 2018).

[66] *Id.* (internal quotation marks and citation omitted).

[67] *Id.*

DM3\8537082.1

The docket attached as Exhibit A to the Miller Certification likewise shows that the State Court has expeditiously heard and decided a host of pleadings and will continue to do so.

Additionally, many of the factors for permissive abstention weigh in favor of the Court's exercise of discretion.  From the seven-factor test, the first, fifth, and seventh factors are particularly relevant:

1.    The effect on the efficient administration of the bankruptcy estate:  As previously discussed, Fulton Bank holds a fraud claim that will need to be litigated regardless of whether the Court lifts the stay, whether directly in the State Court Action or in a nondischargeability proceeding before this Court.  But both the fraud claim and the Debtor's claims have already been substantially litigated, and restarting that process before this Court would be costly and inefficient.

5.    The degree of relatedness or remoteness of the proceeding to the main bankruptcy case: The Adversary Proceeding is only related to the Bankruptcy Case because the plaintiff is the Debtor.  Both parties' claims would otherwise not be before the Court. Additionally, the Debtor filed his Bankruptcy Petition in bad faith.

7.    Prejudice to the involuntarily removed defendants: Although the Debtor brought his claims directly, Fulton Bank is effectively removed because it was defending the same claims in the State Court Action that are now asserted here.  Because the Debtor did not actually remove the State Court Action, Fulton Bank is left with the risk of litigating in two forums.  It has further suffered considerable prejudice by the denial of discovery and prospect of beginning discovery requests anew.

The two tests overlap, but several factors from the second test also favor Fulton Bank:

DM3\8537082.1

4.      The presence of a related proceeding commenced in state court or other non-bankruptcy court: The Debtor's claims in the Adversary Proceeding duplicate his counterclaims in a parallel proceeding.  But for the bankruptcy filing, the State Court would have ruled on Fulton Bank's Motions to Compel and disposed of the only obstacle in that case.  If the Court abstains from hearing the Adversary Proceeding, then the Debtor can simply continue pursuing his counterclaims that are waiting in the State Court Action.

8.      The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court: Although the Adversary Proceeding invites a nondischargeability determination of Fulton Bank's fraud claim, the Court can lift the stay in conjunction with abstention and allow the State Court to determine the existence of the debt, including the facts that would support a nondischargable claim while reserving the § 523(c) determine to decide in the event the debt is so determined.[68]  There are no other core bankruptcy matters implicated by the State Court Action.

10.      The likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties: Finally, as thoroughly discussed above, the Debtor filed the Bankruptcy Case on the eve of a hearing that could have compelled the discovery he had fought for a year, initiating the Adversary Proceeding the same day while leaving the same claims behind.  These decisions suggest an intention to avoid the jurisdiction of the State Court while restarting the clock on discovery and staying Fulton Bank's claims.

---

[68] *In re Cinelli*, No. 14-1007, 2014 WL 4106030, at *3 (E.D. Pa. Aug. 27, 2014).

DM3\8537082.1

Accordingly, although the Adversary Proceeding is currently postured as a federal civil rights action brought by the Debtor, the Court should see through this veneer and exercise discretion to abstain and dismiss the Adversary Proceeding so that same may proceed in the State Court Action.

## B.   THE COURT SHOULD LIFT THE AUTOMATIC STAY TO ALLOW THE STATE COURT ACTION TO PROCEED

Section 362(d)(1) of the Bankruptcy Code provides:

**(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [§ 362(a)], such as by terminating, annulling, modifying, or conditioning such stay—

**(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

The statute "does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."[69]   Because the language is mandatory, a court that finds cause must lift the stay.[70]   Whether sufficient cause exists is subject to "the sound discretion of the bankruptcy court and is determined by examining the totality of the circumstances."[71]   Where stay relief does not involve an action against property, "courts have placed the burden on the moving party to make an initial *prima facie* showing of 'cause' sufficient to support relief from stay[, after which] . . . the ultimate burden then shifts to the non-moving party . . . to show a lack of cause to grant stay relief."[72]   As no factor is dispositive, "the overall

---

[69] *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).

[70] *In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 208 (3d Cir. 1995).

[71] *Schaffer*, 597 B.R. at 790.

[72] *In re Chatkin*, 465 B.R. 54, 61 (Bankr. E.D. Pa. 2012) (internal quotation marks and citation omitted).  Fulton Bank notes that it is not an unsecured creditor because it holds a mortgage lien on the Debtor's residence.  However, Fulton Bank does not seek stay relief to dispose of its collateral.

DM3\8537082.1

'test' that most courts apply in this situation may best be characterized as a 'balancing of the harms,' and courts require the demonstration of some 'special circumstances' before stay relief will be granted to an unsecured creditor."[73]

As one court has observed:

[C]ourts have allowed modification of the Section 362 stay and its predecessor under the Bankruptcy Act where no great prejudice to either the estate or the debtor would result and where the hardship to the plaintiff caused by the continuance of the stay outweighs the hardship to the debtor caused by stay modification.[74]

Courts often rely on the following test to balance the harms:

(1) whether only issues of state law are involved;
(2) whether judicial economy will be promoted;
(3) whether the litigation will interfere with the bankruptcy case; and
(4) whether the estate can be protected by requiring that any judgment obtained be enforced only through the bankruptcy court.[75]

Others rely on a larger checklist:

1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms.[76]

---

[73] *Id.* at 60.

[74] *In re Chan*, 355 B.R. 494, 498 (Bankr. E.D. Pa. 2006) (citation omitted).

[75] *Id*. (citation omitted).

[76] *In re Mid–Atl. Handling Sys., LLC*, 304 B.R. 111, 124 (Bankr. D.N.J. 2003).

24

As the court explained, "All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay."[77]

Crucially, in the Third Circuit, "[f]acts that would justify dismissal of a bankruptcy case also generally constitute cause for granting relief from the stay under § 362(d)(1).  Accordingly, *'cause' exists to terminate the automatic stay when a chapter 11 petition has been filed in bad faith*."[78]

### 1.    The Balance Of Harms Tips Toward Fulton Bank

Fulton Bank is an aggrieved lender that has simply tried to elicit basic discovery and testimony to determine where the money went for over a year and whether others were complicit in the fraud committed by Textile Décor and the Debtor.  It now faces the prospect of starting that effort from the beginning due to the Debtor's procedural games.  Each of the first four factors cited above favors Fulton Bank:

1.    Whether only issues of state law are involved: Fulton Bank's pending claims for breach of loan and guaranty obligations and fraudulent inducement each arise under New Jersey law.[79]  Of the State Defendants' three counterclaims, which are identical to the claims asserted in the Adversary Proceeding, two arise under New Jersey law and only one arises under federal law.[80]  However, the ECOA claim arises under civil rights law and requires no bankruptcy expertise.

---

[77] *Id.*

[78] *Schaffer*, 597 B.R. at 792 (internal quotation marks and citation omitted) (emphasis added); *see also In re Quad Sys. Corp.*, No. 00-35667F, 2001 WL 1843379, at *6 (E.D. Pa. Mar. 20, 2001) (recognizing that "cause" exists to terminate the stay if "the debtor filed bankruptcy in bad faith"); *In re Dabney*, 45 B.R. 312, 313 (Bankr. E.D. Pa. 1985) ("Debtor misconduct and bad faith may constitute sufficient cause under § 362(d)(1) to entitle a creditor to relief from the stay.") .

[79] *See* Ex. D to the Miller Cert.

[80] *See* Ex. C to the Miller Cert.

DM3\8537082.1

2.      Whether judicial economy will be promoted: Fulton Bank and the Debtor have litigated the State Court Action for over a year, while the Debtor has raised the same claims in the Adversary Proceeding.  Judicial economy will be promoted overall to avoid repeating those efforts and the risk of litigating in two forums, given that Textile Décor remains a party in the State Court Action.

3.      Whether the litigation will interfere with the bankruptcy case: Allowing the State Court Action to proceed would not delay the Bankruptcy Case because the Debtor has restarted that litigation in the Adversary Proceeding.  To the contrary, continuing the State Court Action would allow the Court to avoid wasting time familiarizing itself with the factual and legal issues of a nondischargeability counterclaim.[81]

4.      Whether the estate can be protected by requiring that any judgment obtained be enforced only through the bankruptcy court: The Court may condition the stay relief to allow only a determination of whether the debt exists in the State Court.[82]

The majority of the 12 factors cited above also favor Fulton Bank:

1.      Whether relief would result in a partial or complete resolution of the issues.  If the Debtor prevails in the State Court Action and the Court dismisses the Adversary Proceeding, nothing further will occur.  If Fulton Bank prevails, then the Court can benefit from applying its findings to a determination of nondischargeability.[83]

---

[81] *See Cinelli*, 2014 WL 4106030, at *3.

[82] *See id.* at *4.

[83] *See id.*

26

2.      Lack of any connection with or interference with the bankruptcy case: The State Court Action has no connection to this Bankruptcy Case, and the Court could avoid duplicating it here by dismissing the Adversary Proceeding.

3.      Whether the other proceeding involves the debtor as a fiduciary: The Debtor did not have a fiduciary relationship with Fulton Bank.  The State Court has not found that the Debtor had a fiduciary relationship with Textile Décor.

4.      Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action: The State Court does not have specialized expertise in hearing the subject claims and counterclaims, though five arise under state law.

5.      Whether the debtor's insurer has assumed full responsibility for defending it: This factor is not relevant to the State Court Action.

6.      Whether the action primarily involves third parties: The State Court Action does not primarily involve third parties, but Textile Décor remains party to the State Court Action, and the Assignee could intervene to liquidate its counterclaims.

7.      Whether litigation in another forum would prejudice the interests of other creditors: The Debtor has few other creditors, and the expedience of allowing the State Court Action to proceed would maximize estate resources.

8.      Whether the judgment claim arising from the other action is subject to equitable subordination: The claim would not be subject to equitable subordination, but the Court may condition stay relief by providing in its order that no judgment against the Debtor in the State Court Action will create a lien without further order of this Court.

9.      Whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor: As above, the Court may condition stay relief by providing

27

in its order that no judgment against the Debtor in the State Court Action will create a lien without

further order of this Court.

10.    Whether stay relief would be in the interests of judicial economy and the

expeditious and economical resolution of litigation: As stated above, Fulton Bank and the Debtor

have litigated the State Court Action for over a year, while the Debtor has raised the same claims

in the Adversary Proceeding.  Judicial economy will be promoted overall to avoid repeating those

efforts and the risk of litigating in two forums, given that Textile Décor remains a party in the State

Court Action.

11.    Whether the parties are ready for trial in the other proceeding: The parties are not

ready for trial, but this is primarily the Debtor's own doing through endless discovery disputes.

Additionally, the parties are closer to being ready for trial in the State Court after having litigated

for a year.

12.    The impact of the stay on the parties and the balance of the harms.  The Debtor has

wielded the stay as a bad-faith litigation tactic to avoid producing documents or appearing for

deposition.  He now seeks to reassert his claims in the Adversary Proceeding while leaving the

same counterclaims pending in the State Court Action.  The claims will be litigated in one forum

or the other, such that the harms insure exclusively to Fulton Bank.

For all these reasons, the Court should lift the stay to allow the State Court Action to

proceed.

## CONCLUSION

For the foregoing reasons, Fulton Bank respectfully asks the Court to dismiss the

Bankruptcy Case under 11 U.S.C. § 1112(b) as a bad-faith filing made on the eve of a crucial

hearing.  Alternatively, Fulton Bank respectfully asks the Court to abstain from hearing and

dismiss the Debtor's duplicative Adversary Proceeding under 28 U.S.C. § 1334(c) and lift the stay

to continue the State Court Action under § 362(d)(1).

Respectfully Submitted,

**DUANE MORRIS LLP**
Attorneys for Fulton Bank, N.A.

By: */s/ Morris S. Bauer*
Morris S. Bauer, Esq.

Dated: March 15, 2022