UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 22-11708-CMG |
| **VARUN MALIK,** | Hon. Christine M. Gravelle |
| Chapter 11 Debtor. | Chapter 11 (Subchapter V. Small Business) |

### SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Varun Malik, and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____, 2022.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____, 2022. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: MIDDLEBROOKS SHAPIRO, P.C., 841 MOUNTAIN AVENUE, FIRST FLOOR, SPRINGFIELD, NJ 07081.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____, 2022 IN COURTROOM NO. 3 AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY, TRENTON VICINAGE, 402 EAST STATE STREET, TRENTON, NJ 08608.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

March 29, 2022

Joseph M. Shapiro, Esq.
Middlebrooks Shapiro, P.C.
841 Mountain Avenue, First Floor
Springfield, NJ 07081
973-218-6877
*jshapiro@middlebrooksshapiro.com*
Counsel for the Chapter 11 Debtor

## <u>TABLE OF CONTENTS</u>

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS .............................. 4

**ARTICLE 1** ................................................................................................................ **4**

**HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR** ................................. **4**

    **1.1.**  **Nature of the Debtor's Business.** ......................................................... 4

    **1.2.**  **History of Business Operations of the Debtor** ..................................... 4

    **1.3**  **Filing of the Debtor's Chapter 11 Case.** ............................................ 4

    **1.4.**  **Legal Structure and Ownership.** ........................................................ 4

    **1.5.**  **Debtor's Assets.** .................................................................................. 4

    **1.6.**  **Debtor's Liabilities.** ............................................................................ 5

    **1.7.**  **Current and Historical Financial Conditions.** ................................... 5

    **1.8.**  **Events Leading to the Filing of the Bankruptcy Case.** ...................... 5

    **1.9.**  **Significant Events During the Bankruptcy Case.** .............................. 5

    **1.10.**  **Projected Recovery of Avoidable Transfers** ....................................... 5

**ARTICLE 2** ................................................................................................................ **6**

**THE PLAN** ................................................................................................................ **6**

    **2.1.**  **Unclassified Claims.** .......................................................................... 6

      A.  Administrative Expenses............................................................... 6

      B.  Priority Tax Claims..................................................................... 7

    **2.2**  **Classes of Claims and Equity Interests.** ............................................ 8

      A. Classes of Secured Claims ............................................................ 8

      B. Classes of Priority Unsecured Claims. .......................................... 10

      C. Classes of General Unsecured Claims............................................ 10

      D. Class of Equity Interest Holders. ................................................. 11

    **2.3.**  **Estimated Number and Amount of Claims Objections.** ..................... 12

    **2.4.**  **Treatment of Executory Contracts and Unexpired Leases.** ............... 12

    **2.5.**  **Means for Implementation of the Plan.** ............................................ 12

    **2.6.**  **Payments.** ........................................................................................... 12

    **2.7.**  **Post-Confirmation Management.** ...................................................... 12

    **2.8.**  **Tax Consequences of the Plan.** ......................................................... 12

    **2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**...... 13

**ARTICLE 3** ............................................................................................................... 13

**FEASIBILITY OF PLAN** .................................................................................... 13

    **3.1.**    **Ability to Initially Fund Plan**. .................................................................. 13

    **3.2.**    **Ability to Make Future Plan Payments And Operate Without Further** ............................. 13

    **Reorganization**. .............................................................................................. 13

**ARTICLE 4** ............................................................................................................... 13

**LIQUIDATION ANALYSIS**. ................................................................................ 13

**ARTICLE 5** ............................................................................................................... 14

**DISCHARGE**. ......................................................................................................... 14

**ARTICLE 6** ............................................................................................................... 14

**GENERAL PROVISIONS**. ................................................................................... 14

    **6.1.**    **Title to Assets**. ............................................................................................. 14

    **6.2.**    **Binding Effect.** .......................................................................................... 15

    **6.3.**    **Severability.** ............................................................................................... 15

    **6.4.**    **Retention of Jurisdiction by the Bankruptcy Court.** ........................... 15

    **6.5.**    **Captions.** ..................................................................................................... 15

    **6.6.**    **Modification of Plan.** ................................................................................ 15

    **6.7.**    **Final Decree.** ............................................................................................. 16

**ARTICLE 7** ............................................................................................................... 16

**ATTACHMENTS** ................................................................................................... 16

**ARTICLE 8** ............................................................................................................... 16

**FREQUENTLY ASKED QUESTIONS** ............................................................... 16

**ARTICLE 9** ............................................................................................................... 18

**DEFINITIONS** ........................................................................................................ 18

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Debtor proposes a sixty (60) month plan of reorganization funded by all of the Debtor's projected self-employment and business income and, where necessary, contributions from the Debtor's family. The Debtor proposes annual disbursements to priority and general unsecured creditors. Secured claims will be paid, cured and/or maintained pursuant to the underlying notes, with the exception of the secured claim of Fulton Bank, N.A., to which the Debtor objects and, to the extent it is allowed, which shall be bifurcated into a partially secured claim and a partially unsecured claim. General unsecured creditors will receive annual *pro rata* distributions of the Debtor's disposable household income.

## ARTICLE 1

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.    Nature of the Debtor's Business.

The Debtor is an individual. He is a sales consultant with Glenwood Office Furniture II based in Edison, NJ.  The Debtor is separated from, and maintains a separate household from, his non-debtor spouse. The Debtor currently resides with his father at 21 Maida Road, Edison, NJ 08820. The Debtor currently rents his real property located at 44 Denise Drive, Edison, NJ 08820 to residential tenants.

### 1.2.    History of Business Operations of the Debtor

The Debtor is currently a sales consultant with Glenwood Office Furniture II based in Edison, NJ and operates his Edison, NJ real property as a rental property. Previously, the Debtor owned and operated Textile Décor USA, Inc., which was in the business of wholesale distribution before it ceased operations in late 2021 and is currently liquidating in a New Jersey assignment for the benefit of creditors.

### 1.3    Filing of the Debtor's Chapter 11 Case.

On March 3, 2022, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Trenton, New Jersey before the Honorable Christine M. Gravelle.

### 1.4.    Legal Structure and Ownership.

The Debtor is an individual.

### 1.5.    Debtor's Assets.

The identity and fair market value of the Debtor's estate's assets, including the source and basis for valuation, are set forth at Exhibit A.

**1.6.    Debtor's Liabilities.**

The secured Claims, priority Claims, and unsecured Claims against the Debtor's estate are set forth at Exhibit B.

**1.7.    Current and Historical Financial Conditions.**

The Debtor's total net household income is $3,971.34 per month on average. The Debtor's household's income is derived from his self-employment as a sales consultant with Glenwood Office Furniture II, and from business income from his rental of his Edison, NJ real property to residential tenants. The Debtor also historically, and moving forward through this reorganization, has the ability to rely upon periodic contributions from his family. The Debtor projects sufficient income to support his reorganization. The Debtor's projected disposable monthly income is $1,349.19 as reflected in the Debtor's Schedules I and J, which the Debtor dedicates for a sixty (60) month period under this Plan.

**1.8.    Events Leading to the Filing of the Bankruptcy Case.**

The Debtor was formerly the owner and operator of Textile Décor USA, Inc. ("Textile") until late 2021, when Textile ceased operations. Textile is currently liquidating through a NJ assignment for the benefit of creditors. A dispute arose between Textile and Fulton Bank, N.A., resulting in protracted litigation entitled *Fulton Bank, N.A. vs. Textile Decor USA, Inc. and Varun Malik*, Case No. SOM-L-000265-21 commenced on February 23, 2021. As a result of the Debtor's loss of his income from Textile, and as a result of the costs and expenses associated with the protracted state court litigation, the Debtor is reorganizing through his Chapter 11 case pending before this Court.

**1.9.    Significant Events During the Bankruptcy Case.**

Significant events during the Debtor's bankruptcy case, include:

- On March 3, 2022, the Debtor's emergency Chapter 11 Petition was filed commencing this case (Docket No. 1).
- On March 3, 2022, the Debtor commenced an adversary proceeding against Fulton Bank, N.A. entitled Varum Malik v. Fulton Bank, N.A., Adv. Pro. Case No. 22-01069-CMG.
- On March 28, 2022, the Debtor filed the balance of his Chapter 11 Petition and schedules with this Court (Docket Nos. 22 to 25).

**1.10.    Projected Recovery of Avoidable Transfers**

The Debtor has not yet completed his investigation with regard to prepetition transactions.  The Debtor anticipates completing his investigation by June 30, 2022. If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may

seek to avoid such transfer.

# ARTICLE 2
# THE PLAN

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

## 2.1.  Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any class:

A.     Administrative Expenses

The Debtor must pay all Administrative Expenses in full.   If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.     If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtor after the Petition Date

will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.    If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | N/A |
| Administrative Tax Claim | $0.00 | N/A |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | N/A |
| Professional fees, as approved by the Bankruptcy Court | $20,000.00 | After Bankruptcy Court approval, payment to be made in full within thirty (30) days of entry of the Confirmation Order using exempt assets. |
| Clerk's Office fees | $0.00 | Paid in full on the Effective Date. |
| Other Administrative Expenses | $0.00 | N/A |
| Trustee | $4,000.00 | Upon application under § 330 and after Bankruptcy Court approval, payment to be made in full within thirty (30) days of entry of the Confirmation Order using exempt assets. |
| TOTAL | $24,000.00 | |

B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief. Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service (Income Tax for periods 12/31/2019, 12/31/2020 and 12/31/2021) | $11,430.16 (Claim No. 1-1) | 11/23/2020 (assessments for 2020 and 2021 are currently estimated) | Payment Interval = Annual Begin Date = 04/15/2022 End Date = 04/15/2027 Interest Rate % = 0.00 Annual Payment = $2,286.04 Total Payment = $11,430.16 |

**2.2** **Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.  In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impaired? | Treatment |
|---|---|---|---|---|
| 1 | Secured claim of: Name = PNC Bank Collateral description = 44 Denise Drive Edison, NJ 08820 Allowed Secured Amount = $113,541.22 | No | Yes | **Monthly Payment** = $2,720.23 **Interest Rate %** = 3.50 **Lien Treatment** = Unaffected **Arrearage** = $2,981.06 **Arrearage Treatment** = Cured through annual payment of $596.21 for five (5) years commencing 04/15/2023. |

| | | | | |
|---|---|---|---|---|
| | **Priority of lien =**<br>First<br><br>**Principal owed =**<br>$113,541.22<br><br>**Pre-pet. arrearage =**<br>$2,981.06<br><br>**Total claim =**<br>$113,541.22 | | | |
| 2 | **Secured claim of:**<br>**Name =**<br>HSBC Bank USA, N.A.<br><br>**Collateral description =**<br>44 Denise Drive<br>Edison, NJ 08820<br><br>**Allowed Secured Amount =**<br>$27,961.31<br><br>**Priority of lien =**<br>Second<br><br>**Pre-pet. arrearage =**<br>$0.00<br><br>**Total claim =**<br>$27,961.31 | No | No | **Monthly Payment** = $308.43<br>**Interest Rate %** = 4.73<br>**Lien Treatment** = Unaffected<br>**Arrearage** = $0.00<br>**Arrearage Treatment** = N/A |
| 3 | **Secured claim of:**<br>**Name =**<br>Fulton Bank, N.A.[1]<br><br>**Collateral description =**<br>44 Denise Drive<br>Edison, NJ 08820<br><br>**Allowed Secured Amount =**<br>$268,497.47 | No | Yes | **Monthly Payment** = N/A<br>**Interest Rate %** = N/A<br>**Lien Treatment** = Any portion of the claim remaining after Debtor's objections to the same bifurcated into a $268,497.47 secured portion based upon the extent of equity in the collateral, with the balance of the lien treated as a general unsecured portion. Secured portion to be |

---

[1] Per Section 2.3, the Debtor reserves the right to object to the claim of Fulton Bank, N.A., and to seek expungement, reduction, modification, and/or setoff of that claim

| | | | |
|---|---|---|---|
| **Priority of lien =** Third<br><br>**Pre-pet. arrearage =** N/A<br><br>**Total claim =** $268,497.47 | | | paid off through refinance of and/or loan against the property to be closed within six (6) months of the Effective Date. **Arrearage** = N/A **Arrearage Treatment** = N/A |

**B.  Classes of Priority Unsecured Claims.**

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment. The Debtor does not have any classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code.

**C.  Classes of General Unsecured Claims.**

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following chart identifies the Plan's proposed treatment of Class 4:

| Class # | Description | Impaired | Treatment |
|---|---|---|---|
| 4 | Bank of America (#9364) $9,550.00<br><br>Central Jersey Cardiology, P.C. (#1142) $983.00<br><br>CitiBank (#2604) $13,981.00<br><br>CitiBank (#4692) Unknown<br><br>Discover Financial (#2486) $15,338.00<br><br>Fulton Bank, N.A. [2] $2,731,502.53 | Yes | **Payment Interval** = Annual<br>**Begin Date** = 04/15/2023<br>**End Date** = 04/15/2027<br>**Interest Rate %** = 0.00<br>**Total Payment =** $56,951.40<br>**Total Claims =** $2,836,062.29<br>**Estimated % of Claims Paid =** 2.00%<br>Annual *pro rata* disbursements for five (5) years as follows:<br>04/15/2023: $11,390.28<br>04/15/2024: $11,390.28<br>04/15/2025: $11,390.28<br>04/15/2026: $11,390.28<br>04/15/2027: $11,390.28 |

---

[2] Per Section 2.3, the Debtor reserves the right to object to the claim of Fulton Bank, N.A., and to seek expungement, reduction, modification, and/or setoff of that claim

| | | |
|---|---|---|
| HSBC Bank (#2331)<br>$0.00<br><br>HSBC Bank (#2101)<br>$0.00<br><br>Internal Revenue Service<br>$1,1811.95<br>(Claim 1-1)<br><br>JPMorgan Chase Bank, N.A.<br>s/b/m/t Chase Bank, N.A.<br>$47,012.35<br>(Claim 2-1)<br><br>Pluese, Becker &<br>Saltzman, LLC<br>Unknown<br><br>Riker Danzig Scherer<br>Hyland & Perretti<br>Unknown<br><br>TD Bank, N.A. (#0682)<br>Unknown<br><br>TD Bank, N.A. (#0001)<br>Unknown<br><br>The Leviton Law Firm (#4538)<br>Unknown<br><br>U.S. Small Business<br>Administration (#0003)<br>Unknown | | |

D.  Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The Debtor is an individual and there are not classes of Equity Interest holders.

**2.3**.    **Estimated Number and Amount of Claims Objections.**

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

| Class # | Number of Claims Objected To | Amount of Claims Objected To |
|---------|------------------------------|------------------------------|
| 3 | 1 | Full extent of claim of Fulton Bank, N.A.; estimated at $3,000,000.00 |

**2.4.**    **Treatment of Executory Contracts and Unexpired Leases.**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract.  The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts. The Debtor will assume his executory residential lease of 44 Denise Drive, Edison, NJ 08820 with Gautham Gorla and Greeshma Rajakumara. The unexpired lease to be assumed is annexed as Exhibit D.

**2.5.**    **Means for Implementation of the Plan.**

The Debtor will fund the Plan with his regular income for a period of sixty (60) months, as well as with contribution from family where necessary. On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

**2.6.**    **Payments.**

Whether the Plan is confirmed under §1191(a) or (b), payments to Creditors provided for in the Plan will be made by the Debtor pursuant to §1194(a). The Debtor shall make Plan payments as provided for in the Plan or in the order confirming the Plan.

**2.7.**    **Post-Confirmation Management.**

The Debtor will manage his Plan of reorganization post-confirmation.

**2.8.**    **Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

**2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

Debtor has provided projected financial information. Those projections are listed in Exhibit C.

## ARTICLE 3

## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1.     Ability to Initially Fund Plan**.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.  Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit E.

**3.2.     Ability to Make Future Plan Payments And Operate Without Further Reorganization**.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Exhibit C (referenced in § 2.9, above).

The Debtor's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post- confirmation taxes, of $11,390.28. The final Plan payment is expected to be paid on April 15, 2027.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4

## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as <u>Exhibit F</u>.

**ARTICLE 5**

**<u>DISCHARGE.</u>**

<u>Discharge.</u> If the Plan is confirmed under § 1191(a), on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

If the Plan is confirmed under § 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

**ARTICLE 6**

**<u>GENERAL PROVISIONS.</u>**

**6.1.** **<u>Title to Assets.</u>**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

14

**6.2.**   **Binding Effect.**

If the Plan is confirmed,  the provisions  of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**6.3.**   **Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**6.4.**   **Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear  and  allow  all applications  for  compensation  to  professionals  and  other Administrative Expenses; (iv) to resolve all issues regarding Claims objections,  and issues arising from the assumption/rejection of executory contracts or unexpired leases, and  (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5.**   **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6.**   **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.**   **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7

## ATTACHMENTS

The following documents accompany the Plan:

[X]   Debtor's Assets at Fair Market Value, annexed as Exhibit A.
[X]   Debtor's Liabilities, annexed as Exhibit B.
[X]   Financial Forecast (Projections), annexed as Exhibit C.
[X]   Executory Contracts and Unexpired Leases to be Assumed annexed as Exhibit D.
[X]   Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as Exhibit E.
[X]   Liquidation Analysis, annexed as Exhibit F.

## ARTICLE 8

## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?**   Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?**   In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**   To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is

secured if you have a validly perfected security interest in collateral owned by the Debtor.  If you do not have any collateral, your claim is unsecured.  The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?**  Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan.  If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?**  Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class.  If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?**  Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings.  Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?**  Section 2.2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?**  The Plan is being distributed to all claim holders for their review, consideration and approval.  The deadline by which ballots must be returned is _____, 2022.  Ballots should be mailed to the following address: Middlebrooks Shapiro, P.C., 841 Mountain Avenue, First Floor, Attention: Malik Ballot, Springfield, New Jersey 07081.

**How Do I Determine When and How Much I Will Be Paid?**  As part of this Plan, the Debtor has provided both written and financial summaries of what he anticipates each class of creditors will receive under the Plan.

# ARTICLE 9

## DEFINITIONS

**9.1.**  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**9.2.  Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.  Administrative Convenience Class:**  A class consisting  of  every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.  Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5  Administrative  Tax  Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.  Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.  Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.  Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.  Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets,

credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10. Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11. Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12. Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13. Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14. Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Varun Malik is the Debtor-in-Possession.

**9.15 Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16. Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17. Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18. Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19. Confirmation Hearing**: The hearing to be held on _____, 2022 to consider confirmation of the Plan.

**9.20. Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

19

**9.21.  Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.  Debtor** and **Debtor-in-Possession**: Varun Malik, the debtor-in-possession in this Chapter 11 Case.

**9.23.  Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.  Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.  Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.  Equity Interest**: An ownership interest in the Debtor.

**9.27.  Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.  Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.  IRC**: The Internal Revenue Code

**9.30.  Petition Date**: March 3, 2022, the date the chapter 11 petition for relief was filed.

**9.31.  Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.  Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.  Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.  Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.  Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.  Trustee**: The trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.  Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

**Middlebrooks Shapiro, P.C.**
841 Mountain Avenue, First Floor
Springfield, NJ 07081
973-218-6877
*jshapiro@middlebrooksshapiro.com*
Counsel for the Chapter 11 Debtor

/s/ Joseph M. Shapiro

_____
By: Joseph M. Shapiro, Esq.

Dated: March 29, 2022

## EXHIBIT A – DEBTOR'S ASSETS

*Identity and Fair Market Value of Debtor's Assets and Source of Valuation*

| **Assets** | |
|---|---:|
| a.    Real property | |
|        100% interest in 44 Denise Dr., Edison, NJ 08820 | 410,000.00 |
| b.    Household goods and furnishings | 2,000.00 |
| c.    Electronics | 500.00 |
| d.    Men's clothing | 2,000.00 |
| e.    Men's jewelry | 3,000.00 |
| f.    Deposits of money | |
|        100% interest in Amboy Bank DIP account (#5802) | 2,441.01 |
|        100% interest in Amboy account (#1668) | 0.00 |
| g.    Non-public business interests | |
|        100% interest in HLM Koncept, LLC (closed) | 0.00 |
|        100% (former) interest in Textile Décor USA, Inc. | 0.00 |
|        (liquidating in NJ assignment for the benefit of creditors) | |
| h.    Retirement accounts | |
|        100% interest in ADP 401k account | 64,233.70 |
|        100% interest in TD Ameritrade IRA account | 51,247.77 |
| i.    Security deposit held for residential tenant | 3,300.00 |
| j.    Unemployment compensation due Debtor | 0.00 |
| k.    Insurance policy interests | |
|        New York Life term policy (no cash value) | 0.00 |
| l.    Contingent and unliquidated claims | |
|        Debtor's claims against Fulton Bank, N.A. | Unknown |
| *Total Assets* | **538,722.48** |

## EXHIBIT B – DEBTOR'S LIABILITIES

### *Secured, Priority, and General Unsecured Claims*

| Secured Claims | Amount |
|---|---|
| PNC Bank | 113,541.22 |
| HSBC Bank USA, N.A. | 27,961.31 |
| Fulton Bank, N.A.[1] | 268,497.47 |
| *Subtotal* | **410,000.00** |
| | |
| **Priority Claims** | |
| Internal Revenue Service (Claim 1-1) | 11,430.16 |
| *Subtotal* | **11,430.16** |
| | |
| **General Unsecured Claims** | |
| Bank of America (#9364) | 9,550.00 |
| Central Jersey Cardiology, P.C. (#1142) | 983.00 |
| CitiBank (#2604) | 13,981.00 |
| CitiBank (#4692) | Unknown |
| Discover Bank (Claim 3-1) | 15,517.46 |
| Fulton Bank, N.A.[2] | 2,731,502.53 |
| HSBC Bank (#2331) | 0.00 |
| HSBC Bank (#2101) | 0.00 |
| Internal Revenue Service (Claim 1-1) | 1,1811.95 |
| JPMorgan Chase Bank, N.A. s/b/m/t Chase Bank, N.A. (Claim 2-1) | 47,012.35 |
| Pluese, Becker & Saltzman, LLC | Unknown |
| Riker Danzig Scherer Hyland & Perretti | Unknown |
| TD Bank, N.A. (#0682) | Unknown |
| TD Bank, N.A. (#0001) | Unknown |
| The Leviton Law Firm (#4538) | Unknown |
| U.S. Small Business Administration (#0003) | Unknown |
| *Subtotal* | **2,836,062.29** |

---

[1] The Debtor reserves the right to object to the secured portion of the bifurcated claim of Fulton Bank, N.A., and to seek expungement, reduction, modification, and/or setoff of that claim.

[2] The Debtor reserves the right to object to the unsecured portion of the bifurcated claim of Fulton Bank, N.A., and to seek expungement, reduction, modification, and/or setoff of that claim.

## EXHIBIT C – FINANCIAL FORECAST (PROJECTIONS)

**Income Source**:[1] Sales Consultant, Glenwood Office Furniture II; Real property rental income

| Year | 2022-2023 | 2023-2024 | 2024-2025 | 2025-2026 | 2026-2027 |
|---|---|---|---|---|---|
| **Gross Income** | 84,000.00 | 84,000.00 | 84,000.00 | 84,000.00 | 84,000.00 |
| **Expenses** | (67,809.72) | (67,809.72) | (67,809.72) | (67,809.72) | (67,809.72) |
| **Disposable Income** | 16,190.28 | 16,190.28 | 16,190.28 | 16,190.28 | 16,190.28 |

**Estimated Total: $80,951.40**

---

[1] *See*, Schedule I.  Cash flow projected herein is an estimate.

## LEASE AGREEMENT:

***This Lease Agreement***, made and entered into this    14 TH    day of March, 2022

**Between**    **VARUN MALIK**

having his/her/its office at 44 Denise Drive, Edison NJ 08820

hereinafter referred to as the Landlord

**And**    **GAUTHAM GORLA AND GREESHMA RAJAKUMARA-REDDY**

hereinafter referred to as the Tenant or Tenants.

WITNESSETH: That the said Landlord has let unto the said Tenant and the said Tenant has hired from the said Landlord, the following premises:

44 Denise Drive, Edison, NJ 08820, Middlesex County

on month to month basis to commence from the 15th day of March, 2022 to be used and occupied only for a personal dwelling for the parties named as Tenants. Each lease Month shall start on the 15th Day of the Month and end on the 14th Day of the following Month.

*1st. RENTAL: That the Tenant shall pay the annual rent of $26,400.00 upon the conditions and covenants following:*

*said rent to be paid in equal monthly payments in advance on the first day of each and every month during the term of this lease, as follows: $2,200.00 per month*

*2nd. LATE CHARGES: The Tenant agrees that if any rental payment is not received by the Landlord on or before the 10th day of each month, a late charge of 8% (eight percent) of the monthly rental payment shall be due and payable to the Landlord as additional rent. The Tenant also agrees that if any rental payment is not received by the Landlord on or before the 15th day of each month, an additional late charge of $50.00 (fifty dollars) shall be due and payable to the Landlord as additional rent. Furthermore, the Tenant agrees that if any check submitted by the Tenant for rent shall be dishonored for whatever reason by the bank on which said check is drawn the Tenant shall pay to the Landlord, as additional rent, the sum of $65.00 (sixty-five dollars) in addition to any other charges.*

*3rd REPAIRS: The Tenant has examined the premises and has entered into this lease without any representations on the part of the Landlord as to the condition of the premises. The Tenant shall take good care of the premises and shall at the Tenant's own cost and expense make all repairs and at the end or other expiration of the term, shall deliver up the demised premises in good order or condition, excepting reasonable wear and tear.*

*4th. OBSERVATION OF STATUTES, LAWS, ORDINANCES, RULES & REGULATIONS: The Tenant shall promptly execute and comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and City Government and of any and all of their Departments and Bureaus applicable to said premises, for the correction, prevention, and abatement of nuisances, violations or other grievances, in, upon or connected with said premises during said terms; and shall also promptly comply with and execute all rules, orders, and regulations of the Board of Fire Underwriters, or any other similar body, for the prevention of fires, at the Tenant's own cost and expense.*

*In case the Tenant shall fail or neglect to comply with the aforesaid statutes, ordinances, rules, orders, regulations and requirements or any of them, or in case the Tenant shall fail or neglect to make any necessary repairs, then the Landlord or the Landlord's Agents may enter said premises and make said repairs and comply with any and all of the said statutes, ordinances, rules, orders, regulations or requirements, at the cost and expense of the Tenant and in case of the Tenant's failure to pay therefor, the said cost and expense shall be added to the next month's rent and be due and payable as additional rents, or the Landlord may deduct the same from the balance of any sum remaining in the Landlord's hands. This provision is in addition to the right of the Landlord to terminate this lease by reason of any default on the part of the Tenant.*

*5th. NO ASSIGNMENT OR SUB-LETTING: The Tenant shall not assign this agreement, or underlet or underlease the premises or any part thereof, or occupy, or permit or suffer the same to be occupied for any purpose under penalty of damages and forfeiture.*

*6th. ALTERATIONS & IMPROVEMENTS: No alterations, additions or improvements shall be made in or to the premises without the consent of the Landlord in writing, under penalty of damages and forfeiture, and all additions and improvements made by the Tenant shall belong to the Landlord.*

*7th. DAMAGE BY FIRE OR OTHER CAUSE: In case of damage, by fire or other cause, to the building in which the leased premises are located, without the fault of the Tenant or of Tenant's agent or employees, if the damage is so extensive as to amount practically to the total destruction of the leased premises or of the building, or if the Tenant shall move out of the premises due to the same, or if the Landlord shall within a reasonable time decide not to rebuild, this lease shall cease and come to an end, and the rent shall be apportioned to the time of the damage. In all other cases where the leased premises are damaged without the fault of the Tenant or of Tenant's agents or employee, the Landlord shall repair the damage with reasonable dispatch after notice of damage, and if the damage has rendered the premises untenantable, in whole or in part, this lease shall cease and come to an end, and the rent shall be apportioned to the time of the damage. In determining what constitutes reasonable dispatch consideration shall be given to delays caused by strikes, adjustment of insurance and other causes beyond the Landlord's control.*

*8th. INSPECTIONS: The Tenant agrees that the said Landlord and Landlord's Agents, and other representatives, shall have the right to enter into and upon said premises, or any part thereof, at all reasonable hours for the purpose of examining the same, or making such repairs or alterations therein as may be necessary for the safety and preservation thereof.*

Land Lord Initials: _____    Tenants Initials: _____    Page 1 of 4

**9th.** *RIGHT TO EXHIBIT THE PREMISES:* The Tenant also agrees to permit the Landlord or Landlord's Agents to show the premises to persons wishing to hire or purchase the same; and the Tenant further agrees that the Landlord or Landlord's Agents shall have the right to place notices on the front of said premises, or any part thereof, offering the premises "For Rent" or " For Sale," and the Tenant hereby agrees to permit the same to remain thereon without hindrance or molestation.

**10th.** *REENTRY:* That if the said premises, or any part thereof, shall become vacant during the said term, or should the Tenant be evicted by summary proceedings or otherwise, the Landlord or Landlord's representatives may re-enter the same, either by force or otherwise, without being liable to prosecution therefor; and relet the said premises as the Agent of the said Tenant said receive the rent thereof; applying the same, first to the payment of such expenses as the Landlord may be put to in re-entering and then to the payment of the rent due by these presents; the balance (if any,) to be paid over to the Tenant who shall remain liable for any, deficiency.

**11th.** *BROKEN GLASS:* Landlord may replace, at the expense of Tenant, any and all broken glass in and about the demised premises. Landlord may insure, and keep insured, all plate glass in the demised premises for and in the name of Landlord. Bills for the premiums therefor shall be rendered by Landlord to Tenant at such times as Landlord may elect, and shall be due from, and payable by Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rental. Damage and injury to the said premises, caused by the carelessness, negligence or improper conduct on the part of the Tenant or the Tenant's agents or employees shall be repaired as speedily as possible by the Tenant at the Tenant's own cost and expense.

**12th.** *NO OBSTRUCTIONS:* The Tenant shall neither encumber, nor obstruct the sidewalk in front of, entrance to or halls and stairs of the building, nor allow the same to be obstructed or encumbered in any manner. The Tenant shall not store , keep or allow to be kept on the property of the Landlord, any boat, trailer, truck, plow, motorcycle, shed or debris.

**13th.** *NO SIGNS:* The Tenant shall neither place, nor cause, nor allow to be placed, any sign or signs of any kind whatsoever at, in or about the entrance to said premises nor any other part of same except in or at such place or places as may be indicated by the Landlord and consented to by Landlord in writing. And in case the Landlord or Landlord's representatives shall deem it necessary to remove any such sign or signs in order to paint or to make any other repairs, alterations or improvements in or upon premises or the building wherein same is situated or any part thereof, the Landlord shall have the right to do so, providing the same be removed and replaced at the Landlord's expense whenever the said repairs, alterations or improvements shall have been completed.

**14th.** *LANDLORD'S LIABILITY:* It is expressly agreed and understood by and between the parties to this agreement, that the Landlord shall not be liable for any damage or injury to person or property caused by or resulting from steam, electricity, gas, water, rain, ice or snow, bursting of pipes or any leak from or into any part of the premises, or from any damage or injury resulting or arising from any other cause or happening whatsoever.

**15th.** *DEFAULT:* That if default be made in any of the covenants herein contained, then it shall be lawful for the said Landlord to re-enter the premises, and the same to have again, re-possess and enjoy.

**16th.** *NO LIEN:* This lease shall not be a lien against the premises in respect to any mortgages that are now on or that hereafter may be placed against the premises, and the recording of such mortgage or mortgages shall have preference and precedence and be superior and prior in lien of this lease irrespective of the date of recording and the Tenant agrees to execute any instrument without cost, which may be deemed necessary or desirable to further effect the subordination of this lease to any such mortgage or mortgages, and a refusal to execute such instruments shall entitle the Landlord, or the Landlord's assigns and legal representatives to the option of canceling this lease without incurring any expense or damage, and the term hereby granted is expressly limited accordingly.

**17th.** *SECURITY:* The Tenant has this day deposited with the Landlord the sum of $ 3,300.00  as security for the full and faithful performance by the Tenant of all of the terms said conditions upon the Tenants part to be performed, which said sum shall be returned to the Tenant after the time fixed as the expiration of the term herein, provided the Tenant has fully and faithfully carried out all of the terms, covenants and conditions on the Tenant's part to be performed.  In the event of a bona fide sale, subject to this lease, the landlord shall have the right to transfer the security to the vendee for the benefit of the Tenant and the Landlord shall be considered released by the Tenant from all liability for the return of such security; and the Tenant agrees to look to the new Landlord solely for the return of the said security, and it is agreed that this shall apply to every transfer or assignment made of the security to a new Landlord.  The Tenants security in the above amount shall be located at:
    *(Bank Address Here):*
                **AMBOY BANK**
                **350 George Street**
                **New Brunswick, NJ**

**18th.** *UNENCUMBERED SECURITY:* The security deposited under this lease shall not be mortgaged, assigned or encumbered by the Tenant without the written consent of the Landlord.

**19th.** *FIRE INSURANCE:* It is expressly understood and agreed that if for any reason it shall be impossible to obtain fire insurance on the buildings and improvements on the demised premises in an amount, and in the form, and in fire insurance companies acceptable to the Landlord, the Landlord may, if the Landlord so elects, at any time thereafter terminate this lease and the term thereof, on giving to the Tenant five days notice in writing of landlord's intention so to do and upon the giving of such notice, this lease and the term thereof shall terminate and come to an end.

**20th.** *TERMINATION FOR CAUSE:* It is expressly understood and agreed that in case the demised premises shall be deserted or vacated, or if default be made in the payment of the rent or any part thereof as herein specified, or if, without the consent of the Landlord, the Tenant shall sell, assign, or mortgage this lease or if default be made in the performance of any of the covenants and agreements in this lease contained on the part of the Tenant to be kept and performed, or if the Tenant shall fail to comply with any of the statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and City Government or of any and all their Departments and Bureaus, applicable to said premises, or if the Tenant shall file or there be filed against Tenant a petition in bankruptcy or arrangement, or Tenant be adjudicated bankrupt, or make an assignment for the benefit of creditors or take advantage of any insolvency act, the Landlord may, if the Landlord so elects, at any time thereafter terminate this lease and the term hereof, on giving to the Tenant five days' notice in writing of the Landlord's intention so to do, and this lease and the term hereof shall expire and come to an end on the date fixed in such notice as if the said date were the date originally fixed in this lease for the expiration hereof. Such notice may be given by mail to the Tenant addressed to the demised premises.

**21st.** *WATER:* The Tenant shall pay for his/her own water. If the water is billed to the Landlord, then the Tenant shall pay to the Landlord the rent or charge, which may, during the demised term, be assessed or imposed for the water used or consumed in or on the said premises, whether determined by meter or otherwise, as soon as and when the same may be assessed or imposed, and will also pay the expenses for the setting of a water meter in the said premises should the latter be required. If such rent or charge or expenses are not so paid the same shall be added to the next month's rent thereafter to become due,  as additional rent.

**22nd.** *INSURANCE INCREASE:* The Tenant will not, nor will the Tenant permit other persons to do anything in the premises, or bring anything into the premises, or permit anything to be brought into the premises or to be kept therein, which will in any way increase the rate of fire insurance on the demised premises, nor use the demised premises or any part thereof, nor allow or permit their use for any, business or purpose which would cause an increase in the rate of fire insurance on the building or premises.  The Tenant agrees to pay on demand, as additional rent,  any such increase.

**23rd.** *ABANDONMENT OF PROPERTY:*  If after default in payment of rent or violation of any other provision of this lease, or upon the expiration of this lease, the Tenant moves out or is dispossessed and fails to remove any  fixtures or other property prior to such default, removal, expiration of lease, or vacates the demised premises prior to the issuance of the final order or execution of the warrant, then and in that event, the said fixtures and property shall be deemed abandoned by the Tenant and shall become the property of the Landlord.

**24th. NON WAIVER**: *The failure of the Landlord to insist upon strict performance of any of the covenants or conditions of this lease or to exercise any option herein conferred in any one or more instances, shall not be construed as a waiver or relinquishment for the future of any such covenants, conditions or options, but the same shall be and remain in full force and effect.*

**25th. TENANTS LIABILITY**: *In the event that the relation of the Landlord and Tenant may cease or terminate by reason of the re-entry of the Landlord under the terms and covenants contained in this lease or by the ejectment of the Tenant by summary proceedings or otherwise, or after the abandonment of the premises by the Tenant, it is hereby agreed that the Tenant shall remain liable and shall pay in monthly payments the rent which accrues subsequent to the re-entry by the Landlord, and the Tenant expressly agrees to pay as damages for the breach of the covenants herein contained, the difference between the rent reserved and the rent collected and received, if any, by the landlord, during the remainder of the unexpired term, such difference or deficiency between the rent herein reserved and the rent collected, if any, shall become due and payable in monthly payments during the remainder of the unexpired term, as the amounts of such difference or deficiency shall from time to time be ascertained.*

**26th. EMINENT DOMAIN**: *If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall, at the Landlords option, cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim against Landlord for the value of any unexpired term of said lease, and no part of any award shall belong to the tenant.*

**27th. GOVERNMENTAL EMERGENCY**: *This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no way be affected, impaired or excused because the Landlord is unable to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repairs, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if the Landlord is prevented or delayed from so doing by reason of governmental preemption in connection with a National or Governmental Emergency declared by the President of the United States or any local official or in connection with any rule, order or regulation of any department or subdivision thereof of any governmental agency or by reason of the conditions of supply and demand which have been or are affected by war or other emergency.*

**28th. POSSESSION**: *The Landlord shall not be liable for failure to give possession of the premises upon the commencement date by reason of the fact that the premises are not ready for occupancy, or due to a prior Tenant wrongfully holding over or any other person wrongfully in possession or for any other reason; in such event the rent shall not commence until possession is given or is available, but the term herein shall not be extended.*

**29th. LEASE SUBORDINATE TO MORTGAGE**: *This lease is subject and is hereby subordinated to all present and future mortgages, deeds of trust and other encumbrances affecting the demised premises or the property of which said premises are a part. The Tenant agrees to execute, at no expense to the Landlord, any instrument which may be deemed necessary or desirable by the Landlord to further effect the subordination of this lease to any such mortgage, deed of trust or encumbrances.*

**30th. PETS**: *The Tenant shall not keep any animals on or upon the premises. For example, animals include, but are not limited to, Dogs, Cats, Birds, Fish, Insects, Hamsters, Gerbils, Snakes, Guinea Pigs, Etc.*

**31st. RECAPTURE UPON SALE**: *If the premises leased hereunder or of which the leased premises are a part, shall be sold during the term hereof, the Tenant shall vacate the premises, remove all the Tenant's property and deliver up peaceable possession within 60 days of written demand by the Landlord and the Tenant shall give up possession upon the date fixed in said demand.*

**32nd. QUIET ENJOYMENT**: *The Landlord covenants and represents that the Landlord is the owner of the premises herein leased and has the right and authority to enter into, execute and deliver this lease; and does further covenant that the Tenant on paying the rent and performing the conditions and covenants herein contained, shall and may peaceably and quietly have, hold and enjoy the leased premises for the term aforementioned, subject to the conditions of this lease.*

**33rd. ATTORNEYS FEES**: *The Tenant shall pay, as additional rent, all attorneys fees and other expenses incurred by the Landlord in enforcing or obtaining payment of, any of the obligations under this lease.*

**34th. VIOLATIONS**: *The Tenant agrees that if the Tenant shall breach any covenant of this lease or any rule or regulation set forth by the Landlord under Paragraph #38 herein, the Landlord may, at the Landlord=s option, declare the Tenant in breach of this lease and proceed under any rights the Landlord may have and/or the Landlord may choose to impose a charge upon the Tenant of $100.00 for each violation, which fine shall be due and payable as rent. If there is a continuing violation the charge may also be continuing and additional charges may be assessed at the Landlord=s option.*

**35th. UTILITIES**: *As long as the Tenant shall not be in default under any of the provisions of this Lease, the Landlord agrees to furnish insofar as the existing facilities provide, the following services and utilities specifically stated below which Landlord shall pay for, repair and maintain:  NONE.*

*The Tenant shall furnish, pay for, repair and maintain all services and utilities which are not specifically the responsibility of the Landlord as above stated. All services and utilities shall be furnished, paid for, repaired and maintained by the Tenant. The following list of utilities and services which if not otherwise stated, are among the responsibility of the Tenant. By way of example and not by way of limitation: heat, hot and cold water, snow removal, electricity, gas, janitor services, laundry room, elevator facilities, ventilation and air conditioning, trash and garbage collection, snow plowing, landscaping and outdoor maintenance, master TV antenna system, phone, propane and sewer.*

*If, as a result of Tenant's failure to make any repairs required of him under this Paragraph or Paragraph 3 herein, or to pay for such repairs and maintenance it becomes necessary for Landlord to do so, the Landlord shall submit to Tenant a bill for such repairs or maintenance, as additional rental, and shall be paid within thirty days of receipt of the notice.*

**36th. INSURANCE**: *The Tenant shall provide to the Landlord evidence of the Tenants Homeowners Insurance or Apartment Dwellers Insurance or comparable insurance. The Tenant shall keep this policy in effect during the entire term, including all extensions of this lease and the Landlord shall be named as additional insured. The coverage shall at least be $300,000.00 Liability and $25,000.00 personal property.*

**37th. NOTICE**: *All notices to be given to the Tenant or Landlord must be given either by personal service or by certified mail return receipt requested. All such notices shall be addressed to the Tenant at the demised premises and addressed to the Landlord at the address listed in this lease.*

**38th. RULES AND REGULATIONS OF LANDLORD**: *The Landlord may, from time to time, promulgate reasonable rules and regulation that the tenant must follow.*

**39th. INCREASE IN TAXES**: *As additional rental, hereunder the Tenant shall pay to the Landlord  N/A    % (percent) of any increase in real property taxes on the building within which the demised premises are located over and above the real estate taxes paid for the base year . . If this lease shall be renewed the base year for increase in taxes shall remain the same. This additional rental shall be paid upon written notice from the Landlord and, at the option of the Landlord, in twelve equal monthly installments, or in one lump sum at the end of any calendar year.*

**40th. BINDING AGREEMENT**: *It is understood and agreed by both parties, that the covenants and agreements herein contained are binding on the parties hereto and upon their respective successors, heirs, executors, administrators and assigns.*

**41st. INTERPRETATION OF AGREEMENT**: *It is further expressly agreed that the words used in the singular shall include words in the plural where the text of this instrument so requires. Furthermore this agreement shall not be construed against the Landlord despite the fact that Landlord may be deemed to be the drafter of this agreement.*

**42nd. ENTIRE AGREEMENT**: *This lease contains the entire contract between the parties. No additions, changes or modifications, renewals or extensions hereof, shall be binding unless reduced to writing and signed by the Landlord and the Tenant.*

Land Lord Initials: _____   Tenants Initials: _____   Page **3** of 4

**43rd. CONFORMATION WITH LAWS AND REGULATIONS:** *The Landlord may pursue the relief or remedy sought in any invalid clause, by conforming the said clause with the provisions of the statutes or the regulations of any governmental agency in such case made and provided as if the particular provisions of the applicable statutes or regulations were set forth herein at length. If any portion of this lease is held invalid, the remaining portions of this lease shall remain in full force and effect.*

**44th TRUTH IN RENTING BOOKLET:** *The tenant acknowledges that he or she has received a copy of the Truth In Renting Booklet at the time of the signing of this Lease.*

**45th RECYCLING PROGRAM:** *The tenant is required to recycle aluminum, paper, cardboard and plastic containers. These recyclables must be rinsed clean and deposited in the designated area at regular intervals as required by the garbage collection facility, condominium association or municipality.*

**46th GARBAGE DISPOSAL:** *The tenant is required to place all garbage in the designated garbage area and to be brought to the curb or other designated area at regular intervals as required by the garbage collection facility or municipality . In the event there is a dumpster on the premises then the dumpster shall not be used to dispose of cardboard boxes or other recyclable materials. Disposal of large items such as appliances and/or furniture, etc. is not permitted.*

**47th KEYS:** *The tenant is required to deliver a copy of the keys to the apartment to the landlord. The landlord must always have a copy of the keys to the apartment. In the event the tenant changes the locks for any reasons, the tenant is required within one day to deliver a copy of the new keys to the apartment to the landlord.*

**48th PARKING:** *The tenant is only permitted to park vehicles in the designated areas as set forth by the condominium association. All visitors are required to park as designated by the condominium association. All vehicles must be properly insured, inspected and registered. All violators will be towed at the owner 's expenses. Parking is a privilege and if parking rules are not followed parking privileges may be revoked at any time, at the sole discretion of the landlord . The tenant must advise the landlord, in writing, of the year, make, model, color and license plate number of the vehicle which the tenant intends to park on the premises.*

**49th RENEWAL OF LEASE:** *If the tenant wishes to renew the lease, he or she must notify the landlord in writing, on or before thirty days prior to the end of the lease term, time being of the essence. The tenant may renew the lease for an additional six months at the same monthly rent. In the event the tenant wishes to renew the lease after the first renewal term expires which would be October 31, 2008 the tenant must notify the landlord in writing, on or before thirty days prior to the end of the lease term, time being of the essence. At that time, the parties may enter into new and separate negotiations. In the event, the landlord submits a new lease to the tenant, at any time during the last two months of the existing lease term, then the tenant shall return the signed and accepted lease within fourteen days from service, time being of the essence. However, the lease shall not be valid until signed by the landlord. The submission of a proposed lease by the landlord shall not be deemed as an offer to rent. In the event, the tenant fails to sign and return the lease within the time prescribed, then the tenancy shall terminate on the last day of the existing lease. The tenant shall deliver peaceable possession to the landlord on the last day of the existing lease term.*

**50th APPLICATION FOR TENANCY:** *The Landlord has relied on the accuracy of the information provided in the Tenant's application for tenancy. In the event the Tenant completed an application for tenancy, in any form, and submitted false, misleading, inaccurate, or incomplete information to the Landlord, then at the Landlord's option, the Landlord may hold the Tenant in breach and exercise any rights that the Landlord has under law or this Lease.*

ADDITIONAL CLAUSES:

*The tenant has inspected the premises and finds the same to be in excellent condition. The tenant accepts the premises as is condition. Tenant agrees to maintain PSE&G Protection plan for all the appliances including Furnace, Air Conditioner etc at his cost for the entire period of lease. Any cost incurred due to breakage of such items shall be Tenants full responsibility. Tenant must provide land lord with the evidence of Tenants Homeowners Insurance for the entire period of lease per clause 36 of this lease before the possession.*

*In an event of any sort of repair or maintenance required by the land lord for the property, first $100 of the expense shall be tenants responsibility.*

*Tenant agrees to abide with the rules and regulations of the Village Gate society including any parking requirements.*

*Landlord may terminate the lease by giving one month notice since this is month to month lease.*

**IN WITNESS WHEREOF**, the parties have set their hands this  14 TH   day of March, 2022.

Witness:

_____          _____ Tenant
                                          Gautham Gorla

_____          _____ Tenant
                                          Greeshma Rajakumara-Reddy

_____          _____ Landlord
                                          VARUN MALIK

Land Lord Initials: _____          Tenants Initials: _____

### EXHIBIT E – CASH ON HAND ON EFFECTIVE DATE

| | |
|---|---|
| Estimated cash on hand on the Effective Date: | 25,396.76 |
| **Less:** | |
|     Amount of projected Administrative Expenses payable on effective date of Plan | (24,000.00) |
| | |
| The sources of the cash the Debtor will have on hand by the Effective Date are estimated as follows: | |
|     Disposable self-employment income | $5,396.76 |
|     Family contribution | $20,000.00 |
| | |
| Total cash in the Debtor's bank account now | 2,441.01 |

## EXHIBIT F - LIQUIDATION ANALYSIS

### *Debtor's Estimated Liquidation Value of Assets*

| Assets | | |
|---|---|---|
| a. | Real property | |
| | 100% interest in 44 Denise Dr., Edison, NJ 08820 | 410,000.00 |
| b. | Household goods and furnishings | 2,000.00 |
| c. | Electronics | 500.00 |
| d. | Men's clothing | 2,000.00 |
| e. | Men's jewelry | 3,000.00 |
| f. | Deposits of money | |
| | 100% interest in Amboy Bank DIP account (#5802) | 2,441.01 |
| | 100% interest in Amboy account (#1668) | 0.00 |
| g. | Non-public business interests | |
| | 100% interest in HLM Koncept, LLC (closed) | 0.00 |
| | 100% (former) interest in Textile Décor USA, Inc. | 0.00 |
| | (liquidating in NJ assignment for the benefit of creditors) | |
| h. | Retirement accounts | |
| | 100% interest in ADP 401k account | 64,233.70 |
| | 100% interest in TD Ameritrade IRA account | 51,247.77 |
| i. | Security deposit held for residential tenant | 3,300.00 |
| j. | Unemployment compensation due Debtor | 0.00 |
| k. | Insurance policy interests | |
| | New York Life term policy (no cash value) | 0.00 |
| l. | Contingent and unliquidated claims | |
| | Debtor's claims / counterclaims against Fulton Bank, N.A. | Unknown |
| **Total Assets at Liquidation Value** | | **538,722.48** |
| Less: | | |
| Secured creditor claims | | |
| | PNC Mortgage | (113,772.00) |
| | DMI/HSBC Bank USA, N.A. | (27,526.00) |
| | Fulton Bank, N.A.[1] | (268,702.00)[2] |
| **Less:** | | |
| Hypothetical 10% Chapter 7 trustee fees and expenses | | (53,872.24) |
| **Less:** | | |
| Projected Chapter 11 Administrative Expenses | | (24,000.00) |
| **Less:** | | |
| Priority claims, excluding Administrative Expense claims | | |
| | Internal Revenue Service (priority portion) | (11,430.16) |
| **Less:** | | |
| Debtor's claimed exemptions | | (148,156.47) |
| | | |
| (1) | Balance for unsecured claims | (109,736.39) |
| | | |
| (2) | Total dollar amount of unsecured claims | (2,836,062.29)[3] |
| | | |
| ***Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:*** | | 0.00% |
| | | |
| ***Total Projected Disposable Income To Be Paid Under the Plan:*** | | 56,951.40 |
| | | |
| ***Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:*** | | 2.00% |

---

[1] Debtor reserves the right to object to the claim of Fulton Bank, N.A., and to seek expungement, reduction, modification, and/or setoff of that claim.

[2] Projected secured portion of approximately $3,000,000.00 Fulton Bank, N.A. claim against the Debtor's real property once bifurcated into secured and unsecured portions.

[3] Inclusive of unsecured portion of bifurcated Fulton Bank, N.A. claim.