**MIDDLEBROOKS SHAPIRO, P.C.**
841 Mountain Avenue, First Floor
Springfield, New Jersey 07081
(973) 218-6877
(973) 218-6878 (fax)
Joseph M. Shapiro, Esq.
*jshapiro@middlebrooksshapiro.com*
Attorneys for Chapter 11 Debtor, Varun Malik

| | |
|---|---|
| In re:<br><br>**VARUN MALIK**,<br><br>Chapter 11 Debtor<br>and Debtor-in-Possession. | Case No.: 22-11708-CMG<br><br>Chapter 11<br><br>Honorable Christine M. Gravelle |

### OBJECTION TO MOTION TO STRIKE SUBCHAPTER V ELECTION

Varun Malik (the "Debtor"), by and through his counsel Middlebrooks Shapiro, P.C., by way of objection to the motion to strike the Debtor's election to proceed as a Subchapter V Small Business Debtor filed on behalf of Fulton Bank, N.A., hereby states as follows:

### PROCEDURAL HISTORY

On March 3, 2022 (the "Petition Date" or the "Order for Relief"), the Debtor filed an emergency "bare bones" voluntary Chapter 11 petition with this Court (the "Petition"). *See*, Docket No. 1.

On March 3, 2022, this Court entered an Order which permitted the Debtor until March 29, 2022 to file all missing documents required by Fed. R. Bankr. P. 1007: "If all required documents are filed with the Clerk before the hearing date [on March 29, 2022], this Order to Show Cause will be vacated and no appearance is required." (the "March 3rd Order"). *See*, Docket No. 6.

1

On March 28, 2022, in compliance with the March 3rd Order, the Debtor filed all required Petition documents with the Court including an amended Official Form 101, "Voluntary Petition for Individuals Filing for Bankruptcy", which included the Debtor's Subchapter V election at Part 3, Paragraph 13 (the "Form 101"). *See*, Docket No. 23. *See*, Docket Nos. 22, 23, 24, 25 and 26.

On March 29, 2022, this Court vacated its March 3rd Order and the Court required no appearance at the March 29th hearing. *See*, Docket.

**OBJECTION**

**The Subchapter V Debt Limit Relates to The Order for Relief**

March 3, 2022 is both the Petition Date and the date of the Order for Relief in this case. *See*, 11 U.S.C. § 301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter."). A debtor's eligibility to proceed under Chapter 11, Subchapter V, 11 U.S.C. §§ 1181 - 1195 ("Subchapter V") is measured from the "**date of the filing of the petition or the date of the order**". 11 U.S.C. § 1182. On March 3, 2022, Section 1182, entitled "Definitions" stated as follows:

In this subchapter:

(1) Debtor.--The term "debtor"--

(A) subject to subparagraph (B), means a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts **as of the date of the filing of the petition or the date of the order** for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor; and

(B) does not include--

2

>> (i) any member of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $7,500,000 (excluding debt owed to 1 or more affiliates or insiders);
>
> (ii) any debtor that is a corporation subject to the reporting requirements under section 13 or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m, 78o(d)); or
>
> (iii) any debtor that is an affiliate of an issuer, as defined in section 3 of the Securities Exchange Act of 1934 (15 U.S.C. 78c).
>
> (2) Debtor in possession.--The term "debtor in possession" means the debtor, unless removed as debtor in possession under section 1185(a) of this title.

*Id.*

Eligibility is <u>not</u> measured from the date of a debtor's election for Subchapter V. *Id.* In Chapter 11, as in Chapter 13, eligibility based upon a debt limit determined from a debtor's schedules and measured from the date of the filing of the petition. *See*, *In re Baker*, 625 B.R. 27, 32 (Bankr. S.D. Tex. 2020) ("A debtor's eligibility for Subchapter V relief must be determined based on the information contained within debtor's schedules on the petition date.") (*citing* 11 U.S.C. § 101(51D)). *See*, *e.g.*, 11 U.S.C. § 109(e) ("Only an individual with regular income that owes, **on the date of the filing of the petition**, noncontingent, liquidated, unsecured debts of less than … may be a debtor under chapter 13 of this title".) (emphasis added).

The order for relief controls throughout Subchapter V. Subchapter V relies upon the order for relief in many contexts, including determining the deadline for a debtor to file a plan. *See*, 11 U.S.C. § 1221 ("The debtor shall file a plan not later than 90 days after **the order for relief** under this chapter …".) (emphasis added). *See*, *In re Trepetin*, 617 B.R. 841, 843 (Bankr. D. Md. 2020) ("[T]he date of the order for relief in any bankruptcy case, including a converted case, is important in determining the rights and duties of the debtor and its creditors."). *See*, *also*, *In re Keffer*, 628

3

B.R. 897, 903 (Bankr. S.D.W. Va. 2021) ("It is crucial to remember that the deadlines run from the date of the order for relief in the bankruptcy case. *Trepetin*, 617 B.R. at 843. The date of the order for relief 'is important in determining the rights and duties of the debtor and its creditors' because it 'triggers a number of events and deadlines in a bankruptcy case.' *Trepetin*, 617 B.R. at 844-45".).

Conversely, there is no statutory time limit for a debtor to elect to proceed under Subchapter V. Election can be made "by the debtor as a matter of course at any time before the case is closed". *See*, Fed. R. Bankr. P. 1009(a). *See, also, In re Progressive Sols., Inc.*, 615 B.R. 894, 900–01 (Bankr. C.D. Cal. 2020) ("This Court concludes that an amendment to a Bankruptcy Petition can be made at any time as a matter of course at any time before the case is closed.").

As of the Petition Date and Order for Relief, the debt limit for eligibility for a debtor to proceed under Subchapter V was $7,500,000. *Id.* The Debtor timely complied with the Court's March 3rd Order and filed all required Petition documents in advance of the March 29th Order, which included the Debtor's contemporaneous amendment of Form 101 to include his election for Subchapter V as permitted under Fed. R. Bankr. P. 1009. *See*, Docket No. 22. That timely amendment was not made in bad faith and did not unduly prejudice any party in this case. *See, In re Body Transit, Inc.*, 613 B.R. 400, 408 (Bankr. E.D. Pa. 2020) ("In a substantial number of reported decisions in this Circuit, courts have held that the ability to amend provided by Rule 1009 is subject to a party in interest's right to object if the amendment is made in bad faith or would unduly prejudice the party."). (internal citations omitted). *See, also, In re Bonert*, 619 B.R. 248, 253 (Bankr. C.D. Cal. 2020) ("Applying the standard set forth in *Body Transit*, the Court finds that re-designation is warranted if not sought in bad faith and provided that no party will be unduly prejudiced. *Body Transit*, 613 B.R. at 408. The Debtors have satisfied this standard."). Under

Section 1182, $7,500,000 was the debt limit as of the Petition Date / Order for Relief in this case on March 3, 2022. 11 U.S.C. § 1182(1)(A). Accordingly, $7,500,000 is the debt limit that applies to this case. Therefore, the Debtor is eligible to elect Subchapter V based on the information contained within Debtor's schedules as of the date of the Petition and the Order for Relief.

**The Debtor's Qualifying Commercial and Business Activity as of the Petition Date**

Since the date of the Petition and Order for Relief, the Debtor has engaged in business activity as an independent contractor, specifically, activity as a sales consultant with Glenwood Office Furniture, II in Hillside, New Jersey ("Glenwood"). *See*, Docket No. 22, Schedule I. Consulting as an independent contractor, a sole proprietor, for Glenwood constitutes the Debtor's "the delivery of services in exchange for profit" and is the essence of a debtor's engagement in commercial or business activity. *See*, *e.g.*, *In re Blue*, 630 B.R. 179, 190 (Bankr. M.D.N.C. 2021) ("Debtor is currently engaged in commercial or business activities as contemplated by § 1182(1)(A). At a minimum, Debtor's consulting for RHA and Technology Express constitutes such activities. … These services provide a material contribution to Debtor's income"). In addition to his consulting activity, the Debtor also engages in leasing his Edison, NJ real property to residential tenants (the "Edison Property"). *See*, Docket No. 22, Schedule I. Finally, on the Petition Date, the Debtor's former company, Textile Décor USA, Inc. ("Textile"), was and continues to be actively liquidated through a pending assignment for the benefit of creditors in New Jersey Superior Court under New Jersey statute. *See*, Docket No. 22, Schedule A/B, Part 4, Paragraph 19. *See*, *also*, N.J.S.A. § 2A:19-1 to 50.

The term "commercial or business activities" under Section 1182 is not defined and "exceptionally broad" and "encompassing". *See*, *infra*. As examined and explained by the United States Bankruptcy Court for the District of Colorado:

5

The Court concurs and concludes that the plain or ordinary meaning (i.e., the meaning understood by a typical speaker of the English language) of the phrase "commercial or business activities" is exceptionally broad.

The Court decides from review of the text, and applying ordinary or plain meaning, that the term "commercial or business activities" means any private sector actions related to buying, selling, financing, or using goods, property, or services, undertaken for the purpose of earning income (including by establishing, managing, or operating an incorporated or unincorporated entity to do so). "Commercial or business activities" may be contrasted with sovereign or governmental activities which a private-sector actor may not perform. Furthermore, consumer consumption transactions generally are not considered to be "commercial or business activities" (at least from the perspective of the consumer debtor) since such transactions are not undertaken to earn income. *See Sullivan*, 626 B.R. at 329–34 (suggesting that "consumer debt" is not "commercial or business" debt). So, in the end, "commercial or business activities" covers a lot.

Textual clues in Section 1182(1)(A) also support such an expansive view of the "commercial or business activities" requirement. For example, the statute contains a parenthetical which excludes from eligibility "a person whose primary activity is the business of owning single asset real estate." At least two lessons can be gleaned from that parenthetical. First, qualifying "business activity" generally can include "owning" something (other than "single asset real estate") such as owning equity in a company or owning a fleet of taxis. Second, Congress used the word "primary" as a qualifier in the parenthetical but not the main part of the text. The use of "primary" in one place but not the other suggests that "commercial or business activities" do not need to be the "primary" activities of a debtor. It will be enough if the debtor engaged in some "commercial or business activities" provided that all the other elements of Section 1182(1)(A) are met.

**Congress chose to use an extremely broad phrase: "commercial or business activities," without further qualifiers.** The absence of qualifiers does not suggest, however, that the judiciary should impose its own limits or exclusions where Congress has imposed none. Instead, under the "general-terms canon" of statutory interpretation, "the presumed point of using general words is to produce general coverage — not to leave room for courts to recognize ad hoc exceptions .... [I]n the end, general words are general words, and they must be given general effect." Antonin Scalia and Bryan A. Garner, R*eading Law: The Interpretation of Legal Texts 101* (Thompson/West 2012) [hereinafter, "Reading Law"]. Utilization of general words "demonstrates breadth." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (*quoting Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

In any event, the Court derived the foregoing understandings of the phrase "commercial or business activities" primarily from the text and considerations of the language used by Congress. However, the Court also has considered multiple

6

other sources, including dictionaries, statutes, and case law, which all lead to the conclusion **that the phrase "commercial or business activities" is very broad and encompassing**.

*In re Ikalowych*, 629 B.R. 261, 276–77 (Bankr. D. Colo. 2021) (emphasis added). Based upon the Debtor's commercial and business activities with Glenwood, the Edison Property, and Textile as of the Petition Date and the Order for Relief qualify the Debtor for Subchapter V as of the Petition Date and Order for Relief.

### Textile Debt are Subject to the Subchapter V Eligibility Analysis

Congress intended for debtors to be eligible for Subchapter V whether they were engaged in qualifying "activities" as of the petition date, whether or not those "activities" were continuing in business through a Chapter 11 reorganization or winding down defunct operations through a Chapter 11 liquidation. *See*, *In re Offer Space, LLC*, 629 B.R. 299, 307 (Bankr. D. Utah 2021) ("Congress elected to use the much more broad and inclusive term 'activities.' Therefore, as described above, the Debtor's actions on the Petition Date were such that it was 'engaged in commercial or business activities.'"). *See*, *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 238 (Bankr. S.D. Tex. 2021) ("The court noted that Congress did not elect to use the term 'operations' in Section 1182(1)(A). And that 'activities' and 'operations' are not interchangeable."). This Court permits debtors to elect Subchapter V even if they are no longer operating and are liquidating and wind down their business activities.

The Debtor assigned Textile to an assignee in advance of the Petition Date in order to wind down its activities and liquidate its business. *See*, Docket Nos. 1 and 22. The majority of the debt being reorganized in the Debtor's case relates to the debtor's operation of Textile. *See*, Docket No. 22, Schedule E/F. The Debtor is actively engaged in the ongoing process of winding down Textile. That process continues contemporaneously with this Chapter 11 case, as the assignee continues to

act to winddown and liquidate Textile and its assets in place of the Debtor. *See*, N.J.S.A. § 2A:19-9 and 13. The Debtor, while no longer in possession or control of Textile or its assets, remains obligated to engage in the assignment process as Textile's former principal. The Debtor has a statutory obligation to continue to provide the assignee and the estate's professionals documents and information, where necessary, to facility the winddown and liquidation of Textile and its assets and, in some instances, to assist the assignee with continuation of the business. *See*, *e.g.*, N.J.S.A. § 2A:19-9, 14 and 15.

Fulton Bank, N.A. has represented to this Court that it is actively involved in Textile's state court assignment, working with and assisting the assignee with that ongoing process. Fulton Bank, N.A. has also advised this Court that it's pursuing ongoing, expansive discovery in its state court action against Textile and intends to add further and additional claims and defendants to that action. Fulton Bank, N.A. is simultaneously using the expansive provisions of Fed. R. Bankr. P. 2004 to seek more discovery related to its efforts despite its pending proceeding against Textile, contested matters in this Court, and anticipated nondischargeabilty action in this Court. As Textile's winddown and liquidation is an ongoing matter, with which both Fulton Bank, N.A. and the Debtor remain intertwined, the Textile debts are subject to the Subchapter V analysis.

## **CONCLUSION**

Based upon the foregoing reasons, the Debtor respectfully requests that this Court deny the Motion with prejudice and permit the Debtor to proceed as a Subchapter V debtor.

Respectfully submitted,

**MIDDLEBROOKS SHAPIRO, P.C.**
841 Mountain Avenue, First Floor
Springfield, New Jersey   07081
(973) 218-6877
(973) 218-6878 (fax)
Attorneys for Chapter 11 Debtor, Varun Malik

/s/ Joseph M. Shapiro

_____
By: Joseph M. Shapiro, Esq.

Dated: April 18, 2022

9