**MIDDLEBROOKS SHAPIRO, P.C.**
841 Mountain Avenue, First Floor
Springfield, New Jersey   07081
(973) 218-6877
Joseph M. Shapiro, Esq.
*jshapiro@middlebrooksshapiro.com*
Counsel to Chapter 11 Debtor and Debtor-
in-Possession, Varun Malik

|  |  |
|---|---|
| In re: | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY |
| **VARUN MALIK**, | Honorable Christine M. Gravelle |
| Chapter 11 Debtor and Debtor-in-Possession. | Chapter 11 |
|  | Case No.: 22-11708-CMG |

**CERTIFICATION OF JOSEPH M. SHAPIRO, ESQ. IN SUPORT OF MOTION
FOR ORDER MODIFYING FED. R. BANKR. P. 2004 SUBPOENA ISSUED BY
FULTON BANK, N.A. DIRECTED TO VARUN MALIK PURSUANT TO D.N.J.
LBR 2004-1(d) AND 11 U.S.C. § 105(a); ENTERING A PROTECTIVE ORDER IN
LIGHT OF PENDING PROCEEDINGS; AND GRANTING RELATED RELIEF**

Joseph M. Shapiro, Esq.**,** of legal age, hereby certifies as follows:

1.      I am a Partner with Middlebrooks Shapiro, P.C., which is counsel to the above-captioned Chapter 11 Debtor and Debtor-in-Possession Varun Malik (the "Debtor").

2.      As such, I have personal knowledge of the facts set forth herein.

3.      I make this certification in support of the Debtor's Motion to Quash the Bankruptcy Rule 2004 Subpoena filed on behalf of creditor Fulton Bank, N.A. and directed to the Debtor.

4.      On October 8, 2021, Fulton Bank, N.A. filed an amended complaint (the "Amended Complaint") against the Debtor in its state court action against the Debtor and Textile Décor USA, Inc. ("Textile") entitled *Fulton Bank, N.A. v. Textile Décor USA, Inc.*

*and Varun Malik*, Case No. SOM-L-265-21 (the "State Court Action"). A true and correct

copy of the amended complaint in the State Court Action is annexed as  Exhibit A.

5.       In its Amended Complaint, Fulton Bank, N.A. asserts the following counts

against the Debtor and Textile: (I) Breach of loan agreements as to Textile; (II) Breach of

guaranty agreement as to the Debtor; and (III) Fraud as to Textile and the Debtor

(collectively, the "State Court Claims"). *See*, *Id.*

6.       On April 1, 2022, Fulton Bank, N.A. emailed a subpoena under Fed. R.

Bankr. P. 2004 for testimony and production to the Debtor's counsel directed to the Debtor

and returnable April 20, 2022 (the "Subpoena"). A true and correct copy of the Subpoena

is annexed hereto as Exhibit B.

7.       Fulton Bank, N.A. continues to litigate its State Court Claims against both

Textile and the Debtor in the pending State Court Action and in the Assignment Proceeding

while litigating before this Court. A true and correct copy of correspondence docketed in

the State Court Action dated April 18, 2022 is annexed as Exhibit C.

I certify under penalty of perjury that the foregoing is true and accurate to the best

of my knowledge.

/s/ Joseph M. Shapiro

_____

Joseph M. Shapiro, Esq.

Dated: April 19, 2022

# Exhibit

# "A"

**Robert J. Brener, Esq. (ID# 042671992)**
**Morris S. Bauer, Esq. (ID# 039711990)**
**Matthew M. Caminiti, Esq. (ID# 212782018)**
**DUANE MORRIS LLP**
One Riverfront Plaza
1037 Raymond Boulevard, Suite 1800
Newark, New Jersey 07102-5429
*Attorneys for Plaintiff, Fulton Bank, N.A.*

|  |  |
|---|---|
| FULTON BANK, N.A., | : SUPERIOR COURT OF NEW JERSEY |
| | : LAW DIVISION: SOMERSET COUNTY |
| Plaintiff, | : |
| | : DOCKET NO: SOM-L-265-21 |
| vs. | : |
| | : |
| | : <u>Civil Action</u> |
| TEXTILE DÉCOR USA, INC., and | : |
| VARUN MALIK, | : **AMENDED COMPLAINT** |
| | : |
| Defendants. | : |
| | : |

Plaintiff, Fulton Bank, N.A. ("Fulton"), by its attorneys Duane Morris LLP, alleges the

following by way of Amended Verified Complaint against Defendants, Textile Décor USA, Inc.

and Varun Malik:

## <u>THE PARTIES</u>

1.     Fulton is a banking association with a place of business at 117 West End Avenue,

Somerville, New Jersey 08876.

2.     Defendant, Textile Décor USA, Inc. ("Textile Décor"), is a New Jersey corporation

maintaining addresses at both 20 B Commerce Drive, Franklin Township, New Jersey 08873, and

60 Jiffy Road in Somerset, New Jersey 08874.

3.     Defendant, Varun Malik ("Malik") is the President of Textile Décor and a resident

of New Jersey with addresses at 44 Denise Drive, Edison, New Jersey 08820 and 21 Maida Road,

Edison, New Jersey 08820.

## **FACTUAL ALLEGATIONS**

### **The Loan Agreements**

4.      On March 30, 2018, Textile Décor executed a Loan Agreement with Fulton, which was modified on November 29, 2018 by way of a Loan Modification Agreement (the "Modification" and jointly referred to with the Loan Agreement as the "Loan Agreements").

5.      Under the terms of the Loan Agreements, Textile Décor opened both a Five-Hundred Thousand Dollar ($500,000) Term Loan (the "Term Loan") and a Three-Million Dollar ($3,000,000) revolving Line of Credit (the "Line of Credit") with Fulton.

6.      The Loan Agreements designate Malik as an unconditional Guarantor on both the Term Loan and Line of Credit.

7.      True and accurate copies of the executed Loan Agreement, Loan Modification Agreement, and corresponding Loan Note are attached hereto as **Exhibit A**, **Exhibit B**, and **Exhibit C**.

8.      Article 3.3 of the Loan Agreement provides that as collateral for the Loans, Textile Décor grants Fulton a security interest in all property described as "Collateral" in a corresponding Security Agreement.

9.      A true and accurate copy of the Security Agreement is attached hereto as **Exhibit D**.

10.      Under Section 1.1 of the Security Agreement, Textile Décor provides as "Collateral" the following:

> [A]ll of [Textile Décor's] personal property and assets whether now owned or hereafter acquired, created or arising and wherever located including all accounts, chattel paper, documents, instruments, inventory, general intangibles, equipment, fixtures, deposit accounts, goods, letter of credit rights, supporting obligations, investment property, commercial tort claims, all property of debtor,

now or hereafter in Secured Party's possession, and proceeds (including, without limitation, insurance proceeds), whether cash or non-cash, of all of the foregoing property.

11.     To secure the "Collateral", Textile Décor assigned and granted Fulton, as secured party, a continuing lien on and security in the Collateral.

12.     Articles 5 and 6 of the Loan Agreement stipulate that Textile Décor is responsible for numerous affirmative and negative covenants, among them the submission of monthly Borrowing Base Certificates reporting Textile Décor's accounts receivable values, accounts payable values, and the inventory status of Textile Décor's collateral.

13.     Article 3.4 of the Loan Agreement permits Fulton to "perform field exams to confirm compliance with all terms [] and [to confirm] verification of the Borrowing Base Certificate information."

14.     The Loan Note also imposes numerous responsibilities upon Textile Décor, among them the obligation to remit monthly payments in the amount of $8,333.33 in repayment of the Term Loan.

15.     These monthly payments are to be paid on the 30th day of each month beginning on April 30, 2018, with the entire balance of principal and interest due and payable in full on March 30, 2023.

16.     In the event Textile Décor accesses the Line of Credit, Textile Décor must remit additional monthly payments according to the amount borrowed.

17.     Article 7 of the Loan Agreement provides that Textile Décor's failure to perform any of the obligations contained in either the Loan Agreement or Loan Note constitutes an event of default.

3

18.     Upon the occurrence of default, the parties agree that Fulton may avail itself of several potential remedies at its option, among them the ability to declare the entire amounts of the Term Loan and the Line of Credit to be immediately due and payable.

19.     The remedies also include a right for Fulton to "peaceably by its own means or with judicial assistance enter [Textile Décor's] premises and take possession of the Collateral without prior notice to [Textile Décor] or the opportunity for a hearing." (emphasis added).

20.     The Loan Agreement further provides that upon default, Textile Décor shall "pay for [Fulton]'s costs of collection including a reasonable attorney's fee."

**Defendants Default on the Loan Agreements**

21.     On April 10, 2018, Textile Décor drew down $2,666,306.83 of its available $3,000,000 Line of Credit.

22.     Subsequently, Textile Décor was generally compliant with its reporting duties and requirements and proceeded to make the minimum monthly payments owed on both the Term Loan and the Line of Credit until mid-2020.

23.     Thereafter, Textile Décor failed to file its monthly Borrowing Base Certificate for the month of August 2020 as required by the Loan Agreements.

24.     At the close of September 2020, Textile Décor failed to provide its required monthly Borrowing Base Certificate for the month of September 2020.

25.     On October 7, 2020, Textile Décor provided its August 2020 Borrowing Base Certificate.  This Certificate was not only submitted more than a month late, but also lacked crucial details regarding inventory date of purchase, inventory country of origin, and inventory location. Further, Textile Décor did not sign the August 2020 Borrowing Base Certificate, as it had done on all the previous months' submissions.

26.    A true and accurate copy of the August 2020 Borrowing Base Certificate is attached hereto as **Exhibit E**.

27.    The August 2020 Borrowing Base Certificate indicated that as of August 31, 2020, Textile Décor had total accounts receivables of $2,947,534.43 available as Collateral, as well as $2,289,154.00 in inventory available as Collateral.

28.    Accompanying the Borrowing Base Certificate was an August 31, 2020 Inventory Valuation document listing and valuing all inventory currently held by Textile Décor at that time.

29.    The August 31, 2020 Inventory Valuation designated a total inventory asset value of $2,289,154.21 for use as Collateral.  A true and accurate copy of the August 31, 2020 Inventory Valuation is attached hereto as **Exhibit F**.

30.    Upon the October 7, 2020 receipt of the August 2020 Borrowing Base Certificate and Inventory Valuation, Fulton immediately responded to Textile Décor requesting further details as to the specific location of inventory items, dates of purchase, inventory country of origin, storage locations, and transit details.

31.    No response to this request was ever received nor was the requested information ever provided.

32.    On October 27, 2020, Fulton learned from Textile Décor's insurer that Textile Décor had failed to renew the insurance policies it carried on its accounts receivables.  Not only was this generally concerning, but these policies were also required as part of the underlying loan approval process.

33.    At the close of October 2020 Textile Décor failed to remit the monthly payment it owed under the Term Loan, and thereafter failed to remit the payments it owed under both the Term Loan and the Line of Credit in November 2020 and December 2020.,.

5

34.      During this time Textile Décor also failed to provide its required Borrowing Base Certificates for the months of October, November, and December 2020.

35.      As of December 11, 2020, Textile Décor owed outstanding principal balances of $251,555.33 on the Term Loan and $3,003,710.45 on the Line of Credit, along with interest at the default rate, late fees, attorneys' fees, and other costs as provided in the loan documents.

36.      On January 8, 2021, by letter, Fulton notified Textile Décor that it owed payment in full under the Loan Agreement as a result of Textile Décor's compound failures to: (1) make payments; (2) provide Borrowing Base Certificates; (3) provide inventory lists; or (4) provide accounts receivable and accounts payable records.

37.      Notwithstanding Fulton's demand, Textile Décor failed to make payment.

38.      Since the January 2021 default and demand notice, Textile Décor has failed to provide Fulton with monthly Borrowing Base Certificates and Inventory Valuations.  Textile Décor has also failed to make any payments, monthly or otherwise, to Fulton.

39.      As of July 20, 2021, the outstanding principal balance on the Term Loan is $249,420.85, with interest owed in the amount of $10,193.63 and continuing to accrue.

40.      The outstanding principal balance on the Line of Credit is $2,994,653.70 with interest owed in the amount of $116,136.42 and continuing to accrue.

41.      Textile Décor also owes Fulton Bank fees and charges, including late fees and attorneys' fees.

42.      In sum, as of July 20, 2021, Defendants owe Fulton Bank the total sum of $3,370,404.60 plus accruing interest, fees, and charges.

DM1\12259463.1

<u>**Fulton Discovers Defendants' Fraud**</u>

43.     Upon Defendants' default under the Loan Agreements, Fulton exercised its rights thereunder by not only commencing the within lawsuit, but also seeking to realize on the Collateral.

44.     Section 7.4 of the Security Agreement provides that "at any time after the occurrence of an Event of Default, and without notice to Textile Décor, Fulton may direct any persons who are indebted to Textile Décor on any Collateral consisting of accounts receivable to make payment directly to Fulton of the amounts due."

45.     Pursuant to Section 7.4 of the Security Agreement, on March 3, 2021, Fulton sent letters to fifteen (15) entities listed on Textile Décor's August 2020 Borrowing Base Certificate as owing money to Textile Décor.  By way of the March 3, 2021 letters, Fulton identified for each account debtor the amount that Textile Décor maintained such account debtor owed to the company and demanded that each account debtor pay such debts due to Textile Décor directly to Fulton.

46.     From approximately mid-March 2021 through April 2021, six of the fifteen Account Debtors (collectively the "Purported Account Debtors") advised that they owed no debt to Textile Décor.  The Purported Account Debtors did not simply dispute the amounts owed to Textile Décor, **they advised that they had not conducted, and were not conducting, business with Textile Décor during the relevant time period**.

47.     In response to Fulton's March 3, 2021 letter to Ocean State Jobbers ("Ocean State") demanding the sum of $259,543.20 (the amount identified on the August 2020 Borrowing Base Certificate as being owed by Ocean State to Textile Décor), on March 13, 2021, Fulton received an email from Tracy Baran ("Baran"), Ocean State's General Counsel.  Baran advised that Ocean

State had last conducted business with Textile Décor in 2018.  Baran further advised that Ocean

State had received four invoices from Textile Décor in 2018 and paid same in full.  True and

accurate copies of Fulton's March 3, 2021 letter to Ocean State and Baran's March 13, 2021 email

are attached hereto as **Exhibit G**.

48.     In response to Fulton's March 3, 2021 letter to Burlington Coat Factory

("Burlington") demanding the sum of $230,580.30 (the amount identified on the August 2020

Borrowing Base Certificate as being owed by Burlington to Textile Décor), by email dated March

22, 2021, Colleen Kelly ("Kelly") of Burlington advised Fulton that Burlington had no open

purchase orders or unpaid invoices with Textile Décor and that the last time they issued payment

to Textile Décor was in **August 2015**.  True and accurate copies of Fulton's March 3, 2021 letter

to Burlington and Kelly's March 22, 2021 email are attached hereto as **Exhibit H**.

49.     In response to Fulton's March 3, 2021 letter to Variety Wholesalers ("Variety")

demanding the sum of $116,639.70 (the amount identified on the August 2020 Borrowing Base

Certificate as being owed by Variety to Textile Décor), by letter dated March 23, 2021, Dean

Williamson, Esq. ("Williamson"), Variety's General Counsel, advised Fulton that Variety had not

engaged in any transactions with Textile Décor **since 2014**.  True and accurate copies of Fulton's

March 3, 2021 letter to Variety and Williamson's March 23, 2021 letter are attached hereto as

**Exhibit I**.

50.     In response to Fulton's March 3, 2021 letter to Bealls Inc. ("Bealls") demanding

the sum of $219,218.86 (the amount identified on the August 2020 Borrowing Base Certificate as

being owed by Bealls to Textile Décor), by email dated April 16, 2021, Rachel Bell ("Bell"),

Bealls' Accounts Payable Relations Supervisor, advised Fulton that the last invoice paid to Textile

Décor was dated April 8, 2019 and confirmed that no further purchases were made by Bealls from

Textile Décor since June 20, 2019.  True and accurate copies of Fulton's March 3, 2021 letter to Bealls and Bell's April 16, 2021 email are attached hereto as **Exhibit J**.

51.    In response to Fulton's March 3, 2021 letter to Army & Air Force ("Army") demanding the sum of $98,382.04 (the amount identified on the August 2020 Borrowing Base Certificate as being owed by Army to Textile Décor), by email dated April 16, 2021, Debra Jumper ("Jumper"), Army's Accounts Payable Supervisor, advised Fulton that a full payment history between Army and Textile Décor spanning the period of 2017 to 2021 reflected $413.11 in 2018, $18.11 in 2019 and $237.48 in 2020.  True and accurate copies of Fulton's March 3, 2021 letter to Army and Jumper's April 16, 2021 email are attached hereto as **Exhibit K**.

52.    In response to Fulton's March 3, 2021 letter to Ross Stores ("Ross") demanding the sum of $266,990.50 (the amount identified on the August 2020 Borrowing Base Certificate as being owed by Ross to Textile Décor), by email dated April 20, 2021, Sarah Quinton ("Quinton") of Ross advised Fulton that no current sums are due to Textile Décor.  Quinton further advised that they had not conducted any business with Textile Décor **since 2010**.  True and accurate copies of Fulton's March 3, 2021 letter to Ross and Quinton's April 20, 2021 email are attached hereto as **Exhibit L**.

53.    Textile Décor represented to Fulton in the August 2020 Borrowing Base Certificate that the Purported Account Debtors owed $1,191,354.60 of the $2,947,534.43 of outstanding receivables owing to Textile Décor as of August 31, 2020.  See **Exhibit E**.  **Yet, as set forth above, all but one of the Purported Account Debtors confirmed that no amounts were owed to Textile Décor, that they were not presently conducting business with the Defendant, and had not done so during the relevant time period.**  The one Purported Account Debtor that had

done business with Textile Décor resulted in less than $700 received by Textile Décor over a four year period, far less than Textile Décor had represented it was owed.

54.     Upon receiving the aforementioned responses from the Purported Account Debtors, Fulton reviewed each of Textile Décor's Borrower Base Certificates from loan origination until the August 2020 Borrowing Base Certificate and found that Textile Décor has repeatedly misrepresented the amounts owed by the Purported Account Debtors.

55.     Prior to loan origination, in December 2017, Textile Décor had provided Fulton with a list of then outstanding accounts receivables, a true and accurate copy of which is attached hereto as **Exhibit M**.  This list set forth accounts receivables owed by the Purported Account Debtors and stated that the then outstanding accounts receivable due from the Purported Account Debtors aggregated $812,322 of the then total outstanding accounts receivable of $2,626,382.  The December 2017 list of outstanding accounts receivables is wholly inconsistent with the responses from the Purported Account Debtors referenced above.

56.     Similarly, the March 2018 Borrowing Base Certificate also set forth false statements concerning accounts receivables purportedly owed by the Purported Account Debtors. A true and accurate copy of the March 2018 Borrowing Base Certificate is attached hereto as **Exhibit N**.

57.     A comparison of the December 2017 accounts receivable list, the March 2018 Borrowing Base Certificate, the August 2020 Borrowing Base Certificate, and the information provided by the Purported Account Debtors, as referenced above, is as follows:

| Name of Purported Account Debtors | False Representations in December 2017 A/R List Provided by Textile Décor | False Representations in March 2018 Borrowing Base Certificate | False Representations in August 2020 Borrowing Base Certificate, which set forth | Response from the Purported Account Debtors |
|---|---|---|---|---|

| | | | **accounts receivables as of August 31, 2020** | |
|---|---|---|---|---|
| Army & Air Force | $71,208 | $71,221 | $98,382.04 (identified as A/R past due by 31-60 days) | Full payment history with Textile from 2017 to 2021 totaling $668.70. |
| Bealls | $242,358 | $128,835 | $219,218.86 (identified as A/R past due by 31-90 days) | No business conducted with Textile since 2019. |
| Burlington | $86,464 | $168,033 | $230,580.30 (identified as A/R past due by 31-90 days) | No business conducted with Textile since August 2015 and no unpaid invoices. |
| Ocean State | $38,720 | $0 | $259,543.20 (identified as A/R past due by 31-90 days) | No business conducted with Textile since 2018 and all invoices were paid. Thus, Alleged Judgment Debtor's info is consistent with the March 2018 Borrowing Base Certificate only. |
| Variety | $120,370 | $71,008 | $116,639.70 (identified as A/R past due by 1-30 days) | No business conducted with Textile since 2014. |
| Ross | $253,202 | $95,448 | $266,990.50 (identified as A/R past due by 1-60 days) | No business conducted with Textile since 2010. |

11

58.     A comparison of Textile Décor's representations and the information provided by the Purported Account Debtors indicates that since prior to loan origination, Textile Décor, through its representative Malik, repeatedly misrepresented the amounts owed by the Purported Account Debtors.

59.     Sophisticated counsel represented Defendants at loan origination when the Defendants made these misrepresentations, and at the closing on the loans.  Defendants' sophisticated counsel issued an opinion letter attesting to the validity of the loan documents.

60.     Under the Loan Agreement, which was entered into on March 30, 2018, Textile Décor, through Malik, represented that "[a]ll financial information and other data supplied by Borrower to Bank . . . is true, correct and complete in all material respects as of the Closing Date, and the Borrower acknowledges that the Bank has relied upon such financial statements in its decision to make the Loan."

61.     Months later, on November 29, 2018, Textile Décor, through Malik, signed the Loan Modification where "[t]he Borrower certifi[ed] that . . . all of its representations and warranties in the Loan Documents, as amended by this Agreement, are . . . true and correct as of the date of this Agreement."

62.     Throughout the life of the loan, each of the Borrowing Base Certificates were signed by Malik, except for the final one in August 2020.  By signing same, Malik certified as follows: "I affirm to the best of my knowledge and belief that the above information is a correct representation of the line of credit borrowing base and acknowledge [Fulton's] reliance upon this information to make advances."   The "above information" included the falsified accounts receivables.

63.      Fulton relied to its detriment on the false representations made by Textile Décor and Malik, which they repeatedly swore to under oath, in deciding to provide the underlying loans and continuing to make the line of credit loan available to the borrower.

**Collateral Conversion**

64.      The August 2020 Borrowing Base Certificate, attached hereto as **Exhibit E**, provides that as of August 31, 2021, Textile Décor's accounts receivable aggregated $2,947,534.43 and its inventory aggregated $2,289,154.00.

65.      Less than one year later, as of February 28, 2021, Textile Décor represented that its accounts receivable aggregated $123,728.09 and its inventory aggregated approximately $113,000.  A true and accurate copy of a listing of inventory and accounts receivables of Textile Décor as of February 28, 2021 is attached hereto as **Exhibit O**.

66.      As of March 31, 2021, Textile Décor's bank account at Fulton reflected a negative account balance of $556.51.  From the period of September 2020 through March 2021, Textile Décor made deposits in its bank account at Fulton in the sum of $159,571.48.

67.      As a result, during the period subsequent to August 2020, Textile Décor either dissipated or improperly converted in excess of $5,000,000 of Fulton's collateral without making any payments to Fulton or, most likely, never had the accounts receivable and inventory that it represented it had.

**FIRST COUNT**
**(Breach of Loan Agreements as to Textile Décor)**

68.      Fulton repeats and realleges each of the above allegations as if set forth fully herein.

69.      The Loan Agreements bear interest at a floating rate equal to the one-month LIBOR as determined by the Lender plus two hundred twenty-five (225) base points.

13

70.     The Loan Note provides that if payment is not timely made and remains overdue for a period of ten (10) days, a late fee in the amount of five percent (5%) of the delinquent payment will be charged to the Borrower.

71.     The Loan Note provides that following default, the Term Loan Note shall bear interest at a rate that is five percent (5%) per annum in excess of the rate at the time of the default.

72.     There is no pre-payment penalty under the Loan Note.

73.     Under the Loan Note, Fulton is entitled to collect all expenses and costs including, but not limited to, attorneys' fees incurred in enforcing its rights.

74.     Textile Décor defaulted under the terms of the Loan Note by failing to remit payments and Borrowing Base Certificates.

WHEREFORE, plaintiff, Fulton Bank, N.A., demands judgment against the Defendant, Textile Décor USA, Inc., as follows:

A.  Principal due and owing under the Loan Agreements;

B.  Interest, default interest and late charges due and owing under the Loan Agreements;

C.  Attorneys' fees and costs; and

D.  Such other and further relief as the Court deems just and proper.

## SECOND COUNT
### (Breach of Guaranty Agreement as to Malik)

75.     Fulton repeats and realleges each of the above allegations as if set forth fully herein.

76.     Malik executed and delivered to Fulton a Guaranty Agreement whereby he guaranteed payment of all obligations of Textile Décor under the Loan Agreements.

77.     A true and accurate copy of the Guaranty Agreement is attached hereto as **Exhibit P**.

14

78.     The Guaranty Agreement provides that Fulton is entitled to all expenses and costs including, but not limited to, attorneys' fees, incurred in enforcing or collecting any obligations due under the Loan Agreements and Guaranty Agreement.

79.     Pursuant to the Guaranty Agreement, and by virtue of Textile Décor's default, the entire balance due under the Loan Agreements is now due and owing from Malik to Fulton.

80.     Fulton has made demand upon Malik for payment of the above-described obligations, but he has failed to pay the amounts due.

81.     Malik's failure to make payment of the above-described obligation constitutes a default under the Guaranty Agreement.

WHEREFORE, Plaintiff, Fulton Bank, N.A., demands judgment against the Defendant, Varun Malik, as follows:

A.  Principal due and owing under the Loan Agreements;

B.  Interest, late charges, and default interest due and owing under the Loan Agreements;

C.  Attorneys' fees and costs; and

D.  Such other and further relief as the Court deems just and proper.

### THIRD COUNT
### (Fraud as to Textile Décor and Malik)

82.     Fulton repeats and realleges each of the above allegations as if set forth fully herein.

83.     Prior to Fulton entering into the Loan Agreements with Defendants through and including delivery of the August 2020 Borrowing Base Certificate to Fulton, Textile Décor, through its principal Malik, repeatedly misrepresented the accounts receivables due and owing from its account debtors.

84.   The amount of accounts receivables due and owing from Textile Décor's account debtors was material information, which Fulton relied upon in entering into the Loan Agreements and continuing to make the line of credit available to Textile Décor.

85.   At all times relevant hereto, Textile Décor and Malik had full knowledge that their representations to Fulton were false as Textile Décor had not conducted business with the Purported Account Debtors for many years, but, nonetheless, represented in the August 2020 Borrowing Base Certificates, and for years prior, that the Purported Account Debtors owed monies to Textile Décor.

86.   Textile Décor and Malik intended Fulton to rely on their misrepresentations and falsified Textile Décor's business records to induce Fulton to provide it with the subject loan and to ensure Fulton would continue to make the line of credit available to Textile Décor.

87.   Fulton relied on the false business records and Borrowing Base Certificates as Malik repeatedly swore to the veracity of the information under oath.

88.   As a result of Textile Décor's conduct, Fulton has been damaged.

WHEREFORE, Plaintiff, Fulton Bank, N.A., demands judgment against the Defendants, Textile Décor USA, Inc., and Varun Malik, as follows:

A.   Consequential and Punitive Damages,

B.   Attorneys' fees and costs; and

C.   Such other and further relief as the Court deems just and proper.

**DUANE MORRIS LLP**
*Attorneys for Plaintiff, Fulton Bank, N.A.*


By: /s/ *Robert J. Brener*
　　　　Robert J. Brener

DATED:  October 8, 2021

## DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that pursuant to <u>Rule</u> 4:25-4, Robert J. Brener, Esq., is hereby designated as trial counsel for Plaintiff, Fulton Bank, N.A., in this matter.


**DUANE MORRIS LLP**
*Attorneys for Plaintiff, Fulton Bank, N.A.*


By: */s/ Robert J. Brener*
Robert J. Brener

DATED:  October 8, 2021


## CERTIFICATION

Pursuant to <u>Rule</u> 4:5-1, I hereby certify that, to my knowledge, the matter in controversy is not the subject of any other litigation or of any other arbitration and that no such other litigation or arbitration is contemplated.  I further certify that, to my knowledge, no other party should be joined in this action.

I further certify that Confidential Personal Identifiers have been redacted from documents now submitted to the Court and will be redacted from all documents in the future, in accordance with <u>Rule</u> 1:38-7(b).

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willingly false, I am subject to punishment.


*/s/ Robert J. Brener*
Robert J. Brener

Dated: October 8, 2021

DM1\12259463.1

# Exhibit

## "B"



Joseph M. Shapiro <jshapiro@middlebrooksshapiro.com>

---

## Varun Malik

1 message

---

**Bauer, Morris S.** <MSBauer@duanemorris.com>                         Fri, Apr 1, 2022 at 4:35 PM
To: "Joseph M. Shapiro" <jshapiro@middlebrooksshapiro.com>
Cc: "McGee, Maggie (USTP)" <Maggie.McGee@usdoj.gov>

Dear Mr. Shapiro:


Attached please find Rule 2004 Subpoena and attached document request relating to the Debtor, Varun Malik.


Thank you,


Mo Bauer




For more information about Duane Morris, please visit http://www.DuaneMorris.com


Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

---

📄 **Rule 2004 Subpoena and Rider (Varun Malik).PDF**
612K

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of  New Jersey

In re   Varun Malik
_____
        Debtor

Case No.    22-11708 (CMG)

Chapter    11

### SUBPOENA FOR RULE 2004 EXAMINATION

To: Varun Malik, 21 Maida Road, Edison, New Jersey 08820
*(Name of person to whom the subpoena is directed)*

[X] *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure D.N.J. LBR 2004-1.

| PLACE | DATE AND TIME |
|---|---|
| Duane Morris LLP<br>One Riverfront Plaza<br>1037 Raymond Blvd., Suite 1800<br>Newark, New Jersey 07102 | April 20, 2022 @ 10:00 a.m. |

The examination will be recorded by this method:    via court reporter

[X] *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attached Rider

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  4-1-22

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

OR

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Fulton Bank, N.A._____ , who issues or requests this subpoena, are:

Morris Bauer, Esq., Duane Morris LLP, One Riverfront Plaza, 1037 Raymond Blvd., Suite 1800, Newark, NJ 07102, (973) 424-2037

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (*date*) _____ ; or

☐ I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## **RIDER**

1   Tax Returns for years: 2018, 2019, 2020 and 2021;

2   Bank Statements for years 2018, 2019, 2020, 2021 and 2022, including your
bank accounts, if any, with Citibank, Habib American Bank, Amboy Bank;

3   Copies of documents relating to the sale, transfer, purchase or acquisition of
your ownership or any other type of interest you may have in any real estate,
stock or other type of ownership interest, including with respect to HLM
Koncept LLC, 44 Denise Drive, Edison, NJ, 1 Skytop Road, Edison, NJ, 21
Maida Road, Edison, NJ, RDM Concepts Holdings, Inc., 21 Model Town,
Panipat, India, Malik Fabrics Private Limited;

4   Copies of any personal financial statements provided to any persons during
the years 2018, 2019, 2020, 2021 and 2022; and,

5   Copies of any loan applications loan documents or guarantees in which you
were a party to during the years 2019, 2020 and 2021, including U.S. Small
Business Administration, TD Bank and HSBC.

# Exhibit

## "C"

## SM LAW, PC

Steven J. Mitnick, Attorney at Law ▪ smitnick@sm-lawpc.com
Marc D. Miceli, Of Counsel ▪ mmiceli@sm-lawpc.com

P.O. Box 530 ▪ 49 Old Turnpike Road ▪ Oldwick, NJ 08858
P: 908.572.7275 ▪ F: 908.572.7271
*sm-lawpc.com*

April 18, 2022

*Via E-Courts:*
Chambers of the Honorable Kevin M. Shanahan
Superior Court of New Jersey
Somerset County
20 North Bridge St.
Somerville, NJ 08876-1262

RE:   FULTON BANK, N.A. v. TEXTILE DÉCOR USA, INC. AND VARUN MALIK
        Docket No. SOM-L-265-21

Dear Judge Shanahan:

The undersigned serves as Assignee for the Benefit of Creditors of Textile Décor USA, Inc., pursuant to a Deed of Assignment for the Benefit of Creditors executed on February 21, 2022.   Please be advised that I will not be filing an Answer or other responsive pleading in this matter and have advised counsel for Fulton Bank, N.A. that their remedy is to file a Proof of Claim in the Assignment proceeding. Fulton Bank, N.A. has agreed to proceed until they obtain a judgment in this matter.

Please be further advised that I am working in cooperation with counsel for Fulton Bank, N.A. in joint discovery attempts and will continue to cooperate to obtain discovery.

Thank you for the Court's courtesies in this matter.

Respectfully submitted,

STEVEN MITNICK, ESQ.

SM/la
Cc: Counsel for Fulton Bank, N.A.