| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> *Caption In Compliance With D.N.J. LBR 9004-1(b)* <br><br> **DUANE MORRIS LLP** <br> Morris S. Bauer, Esq. <br> One Riverfront Plaza <br> 1037 Raymond Boulevard, Suite 1800 <br> Newark, NJ 07102-5429 <br> Telephone: (973) 424-2037 <br> E-mail: msbauer@duanemorris.com <br><br> *Counsel for Fulton Bank, N.A.* | |
| In Re: <br><br> **VARUN MALIK**, <br><br> Debtor. | Case No. 22-11708 CMG <br><br> Judge: Hon. Christine M. Gravelle <br><br> Chapter 11 <br><br> Related to Dkt. No. 71 |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION OF
FULTON BANK, N.A., TO APPLICATION IN SUPPORT OF THE
DEBTOR'S MOTION FOR ORDER QUASHING FED. R. BANKR. P. 2004
SUBPOENAS ISSUED BY FULTON BANK, N.A., TO HABIB AMERICAN
BANK AND GLENWOOD OFFICE FURNITURE II PURSUANT TO D.N.J.
<u>LBR 2004-1(d) AND 11 U.S.C. § 105(a) AND FOR RELATED RELIEF</u>**

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ...................................................................................1

II. RELEVANT BACKGROUND .....................................................................................1

III. ARGUMENT................................................................................................................10

    A. LEGAL STANDARDS .................................................................................... 10

    B. THE GLENWOOD SUBPOENA HAS NO BEARING ON THE STATE COURT ACTION AND DOES NOT SEEK TO HARASS THE DEBTOR................................................................................................... 13

    C. THE MOTION IS MOOT AS TO HABIB'S DOCUMENT PRODUCTION................................................................................................ 15

IV. CONCLUSION............................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Fulton Bank, N.A. v. Textile Décor USA, Inc.*
  Case No. SOM-L-265-21 (N.J. Super. filed Feb. 23, 2021) ................................................... 1-2

*In re Cambridge Analytics LLC*
  600 B.R. 750 (Bankr. S.D.N.Y. 2019) ................................................................................. 12

*In re Glitnir banki hf.*
  No. 08–14757, 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ................................... 12

*In re Lev*
  Nos. 05–35847, 06–2945, 2008 WL 207523 (Bankr. D.N.J. Jan. 23, 2008) ......................... 11

*In re Millennial Lab Hldgs. II, LLC*
  562 B.R. 614 (Bankr. D. Del. 2016) .................................................................................... 11

*In re Schultz*
  436 B.R. 170 (Bankr. M.D. Fla. 2010) ................................................................................ 13

*In re Summit Glob. Logtics*
  No. 08–11566, 2008 WL 1446722 (Bankr. D.N.J. Apr. 9, 2008) ......................................... 15

*In re Wash. Mut., Inc.*
  408 B.R. 45 (Bankr. D. Del 2005) ....................................................................................... 11

*Owoc v. Unemployment Compensation Bd. of Review*
  809 A.2d 441 (Commw. Ct. 2002) ........................................................................................ 6

*Sali v. Zwanger & Perisi Radiology Grp., LLP*
  No. 19 CV 275, 2022 WL 1085508 (E.D.N.Y. Jan. 10, 2022) ......................................... 12-13

*Snyder v. Soc'y Bank*
  181 B.R. 40 (S.D.Tex.1994), *aff'd sub nom.*, *In re Snyder*, 52 F.3d 1067 (5th
  Cir. 1995) ............................................................................................................................ 11

**STATUTES**

43 PA. CONS. STAT. 753(l)(2)(B) .................................................................................................. 6

43 PA. CONS. STAT. 802(h) ........................................................................................................... 6

11 U.S.C. § 105(a) ............................................................................................................. 1, 6, 10

11 U.S.C. § 341(a) ........................................................................................................................ 5


11 U.S.C. § 362(d)(1) ..................................................................................................................9

15 U.S.C. §§ 1691–91f ................................................................................................................4

**OTHER AUTHORITIES**

12 C.F.R. § 202.7 .........................................................................................................................4

FED. R. BANKR. P. 2004 ............................................................................................1, 6, 11–12, 14–15

FED. R. BANKR. P. 7026 .............................................................................................................12

FED. R. CIV. P. 26(c)(1) ..............................................................................................................12

FED. R. CIV. P. 45(d)(3)(A)(iii) ..................................................................................................12

FED. R. CIV. P. 9014(c) ..............................................................................................................12

FED. R. CIV. P. 9016 ...................................................................................................................12

Local Rule 2004(d) .....................................................................................................................12

Rule 2004-1(d) ............................................................................................................................10

DM3\8681809.3

Fulton Bank, N.A. ("Fulton Bank") submits this memorandum in support of its objection (the "Objection") to the Debtor's *Motion for Order Quashing Fed. R. Bankr. P. 2004 Subpoenas Issued by Fulton Bank, N.A. Pursuant to D.N.J. LBR 2004-1(d) and 11 U.S.C. § 105(a) and for Related Relief* (the "Motion")[1] filed by Varun Malik (the "Debtor") in the above-captioned chapter 11 bankruptcy case (the "Bankruptcy Case") with respect to subpoenas issued to Glenwood Office Furniture II ("Glenwood Office") and Habib American Bank ("Habib"). In support of its Objection, Fulton Bank respectfully represents as follows:

## I. PRELIMINARY STATEMENT

The Debtor seeks to impede discovery on behalf of himself and any third party that receives a subpoena. Fulton Bank's requests are modest, limited, and designed to verify the Debtor's statements about his own finances under oath, assess his eligibility for discharge, identify estate assets for recovery and assess the primary sources of plan funding in the absence of candor. It is no burden of the Debtor for third parties to respond, and indeed none have objected. More importantly, the value of the information to creditors and the estate significantly outweighs the cursory objections of the Debtor. He once had assets, but they have now vanished. Fulton Bank has a vested interest in both testing material representations of a Debtor charged with fraud and locating assets to recover for the estate.

## II. RELEVANT BACKGROUND

On February 23, 2021, Fulton Bank filed a Verified Complaint[2] against the Debtor and Textile Décor USA, Inc. ("Textile Décor") in the New Jersey Superior Court for Somerset County

---

[1] Dkt. No. 71.

[2] A true and correct copy of the Verified Complaint is available at Dkt. No. 65-3, attached as Exhibit A to the *Certification of Morris S. Bauer in Support of Motion of Fulton Bank, N.A., to Strike the Debtor's Election to Proceed as a Subchapter V Small Business Debtor* previously filed with this Court at Dkt. No. 65-2 [hereinafter Prior

(the "State Court"), asserting claims for replevin and breach of contract against Textile Décor and a claim for breach of contract against the Debtor (the "State Court Action").[3] The State Court Action arises from the following agreements (collectively, together with any ancillary and related documents, and as may be amended from time to time, the "Loan Documents"):

    a.    Loan Agreement dated March 30, 2018 (the "Loan Agreement"[4]), granting Textile Décor a borrowing-base line of credit in the original principal about of $3 million (the "BBLOC") and a term loan in the original principal amount of $500,000 (the "Term Loan," and together with the BBLOC, the "Loan");

    b.    Note dated March 30, 2018, evidencing the Term Loan (the "Term Loan Note"[5]);

    c.    Borrowing Base Line of Credit Note dated March 30, 2018, evidencing the BBLOC (the "BBLOC Note"[6]);

    d.    Security Agreement dated March 30, 2018, granting Fulton Bank a lien in all personal property and assets of Textile Décor to secure its Loan obligations (the "Security Agreement"[7]);

    e.    Guaranty Agreement dated March 30, 2018 (the "Guaranty"[8]) pursuant to which the Debtor unconditionally guaranteed payment and performance of all present and future obligations of Textile Décor to Fulton Bank;

---

Bauer Cert.]. For a summary of the facts and circumstances underlying the State Court Action, see the Certification of Saleena Miller previously filed with this Court at Dkt. No. 13-15.

[3] *Fulton Bank, N.A. v. Textile Décor USA, Inc.*, Case No. SOM-L-265-21 (N.J. Super. filed Feb. 23, 2021).

[4] A true and correct copy of the Loan Agreement is available at Dkt. No. 65-4, attached as Exhibit B to the Prior Bauer Cert.

[5] A true and correct copy of the Term Loan Note is available at Dkt. No. 65-5, attached as Exhibit C to the Prior Bauer Cert.

[6] A true and correct copy of the BBLOC Note is available at Dkt. No. 65-6, attached as Exhibit D to the Prior Bauer Cert.

[7] A true and correct copy of the Security Agreement is available at Dkt. No. 65-7, attached as Exhibit E to the Prior Bauer Cert.

[8] A true and correct copy of the Guaranty is available at Dkt. No. 65-8, attached as Exhibit F to the Prior Bauer Cert.

    f.      Mortgage dated March 30, 2018, granting the Debtor a mortgage lien in real property located at 44 Denise Dr., Edison, NJ 08820 (the "Denise Drive Property") to secure the Debtor's Guaranty obligations (the "Mortgage"[9]); and

    g.      Loan Modification Agreement dated November 29, 2018, revising the BBLOC Loan be due on call rather than expire after one year (together with the Consent of Guarantor attached thereto, the "Loan Modification"[10]).

On March 12, 2021, the Debtor submitted a certification in the State Court Action (the "March 2021 Debtor Cert.") in which he averred as follows: "Due to decreased sales and the other financial issues the business was faced with, as well as the toll the stress from this situation caused on my health, in February 2021, Textile stopped operating."[11]

On March 16, 2021, Michele M. Dudas, then counsel for Textile Décor, emailed counsel for Fulton Bank as follows: "My clients received the attached Letter of Intent from Ravi Uppal, who is the individual I believe attempted to contact the Bank last week. We in no way represent Mr. Uppal, but advised we would pass this information along."[12] Attached to her reply was a Letter of Intent dated March 15, 2021 the ("LOI"), proposing a sale transaction in which Mr. Uppal would form an entity to purchase Fulton Bank's rights, title, and interests in the assets of Textile Décor and including a provision that would release the Debtor, Textile Décor, and the purchasing entity from liability under the Loan Documents.[13] Fulton Bank neither solicited nor executed the LOI.

---

[9] A true and correct copy of the Mortgage is available at Dkt. No. 65-9, attached as Exhibit G to the Prior Bauer Cert.

[10] A true and correct copy of the Loan Modification is available at Dkt. No. 65-10, attached as Exhibit H to the Prior Bauer Cert.

[11] See March 2021 Debtor Cert. ¶ 27. A true and correct copy of the March 2021 Debtor Cert. is available at Dkt. No. 65-11, attached as Exhibit I to the Prior Bauer Cert.

[12] A true and correct copy of the email dated March 16, 2021, from Michele M. Dudas to Morris S. Bauer is available at Dkt. No. 89-7, attached as Exhibit E to the Bauer Cert.

[13] A true and correct copy of the LOI is available at Dkt. No. 89-8, attached as Exhibit F to the Bauer Cert.

3

On March 23, 2021, the State Court issued a Writ of Replevin directing the county sheriff to collect and deliver to Fulton Bank all collateral of Textile Décor described in the Security Agreement.[14]

On April 12, 2021, the Debtor and Textile Décor jointly filed an Answer and Affirmative Defenses to Complaint and Counterclaims (the "Answer")[15] in which they asserted counterclaims against Fulton Bank, alleging a violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–91f ("ECOA") or 12 C.F.R. § 202.7 ("Regulation B") and related claims for breach of the implied covenant of good faith and fair dealing and promissory estoppel (the "Counterclaims").[16]

On July 21, 2021, Fulton Bank sought leave to amend its Verified Complaint after discovering that the Debtor had falsified receivables to obtain the Loan and in post-closing borrowing-base certificates, filing the amended version on October 8, 2021, to assert a fraud claim against both defendants (the "Amended Complaint").[17] On February 1, 2022, the State Court entered an order limiting Fulton Bank's fraud claim to fraud in the inducement (the "Fraud Claim Order").[18]

On March 3, 2022, the Debtor petitioned for relief under chapter 11 of title 11 of the U.S. Code, 11 U.S.C. §§ 101–1527 (the "Bankruptcy Code").

---

[14] A true and correct copy of the Writ of Replevin is available at Dkt. No. 65-12, attached as Exhibit J to the Prior Bauer Cert.

[15] A true and correct copy of the Answer is available at Dkt. No. 65-13, attached as Exhibit K to the Prior Bauer Cert.

[16] Answer ¶¶ 37–52.

[17] A true and correct copy of the Amended Complaint is available at Dkt. No. 65-15, attached as Exhibit M to the Prior Bauer Cert.

[18] A true and correct copy of the Fraud Claim Order is available at Dkt. No. 89-3, attached as Exhibit A to the Bauer Cert.

Fulton Bank filed Claim No. 8 against the Debtor's estate in the liquidated amount of $4,026,933.42 arising from the Debtor's Guaranty obligations plus contingent, unliquidated amounts for consequential and punitive damages on account of the fraud claim.

The U.S. Small Business Administration (the "SBA") filed Claim No. 6 against the Debtor's estate for "money loaned" as a general unsecured claim in the amount of $2,026,799.65 (the "SBA Claim").[19] Attached to the SBA Claim are loan documents showing that the debt arises from the Debtor's personal guarantee of an Economic Injury Disaster Loan ("EIDL") issued to Textile Décor as follows:

i. Note dated June 25, 2020, in the original principal amount of $150,000, and subject to no guarantee by the Debtor;

ii. 1st Modification of Note dated August 16, 2021, increasing the original principal balance to $500,000 and personally guaranteed by the Debtor pursuant to an Unconditional Guarantee (Disaster Loans) of the same date; and

iii. 2nd Modification of Note dated December 16, 2021, further increasing the original principal balance to $2 million and personally guaranteed by the Debtor pursuant to an Amended Unconditional Guarantee (Disaster Loans) of the same date.

Notwithstanding these EIDL disbursements, the Debtor previously disclosed that Textile Décor has not operated since February 2021 in the March 2021 Debtor Cert.[20] On March 31, 2022, the Debtor attended the telephonic meeting of creditors conducted pursuant to 11 U.S.C. § 341(a) (the "341 Meeting") and again testified that Textile Décor has had no income or operations since

---

[19] The SBA also filed Claim No. 7 in the secured amount of $108,731.81, arising from an EIDL issued to Vinta Supply Co. Inc. and guaranteed by Victor Soto, but this claim appears to be asserted against the Debtor's estate in error.

[20] *See* March 2021 Debtor Cert. ¶ 27.

5

February 2021,[21] and that he had applied for unemployment[22] benefits in December 2020 and received them in mid-2021.[23]

On April 4, 2022, Fulton Bank served a *Subpoena for Rule 2004 Examination* (together with the Rider attached thereto, the "Glenwood Subpoena")[24] on Glenwood Office, scheduling an in-person examination for April 19, 2022, at 10:00 a.m. and requesting production of the following materials:

1  Copies of all emails, text messages and correspondence between Glenwood Office and/or Ravi Uppal and Varun Malik and/or Textile Decor USA, Inc. during the period of January 1, 2020 and the present;

2  Copies of all emails, text messages and correspondence between Glenwood Office and/or Ravi Uppal and Nagesh Malik and/or HN International Group, Inc. during the period of January 1, 2020 and the present;

3  Copies of any all documents, including evidence of payments, W-4 or other documents between Glenwood Office and Varun Malik; and,

4  Copies of any and all documents relating to payments made to Glenwood Office by Nagesh Malik, Harbans Malik, HN International Group, Inc.[25]

Also on April 4, 2022, Fulton Bank served a *Subpoena for Rule 2004 Examination* (together with the Rider attached thereto, the "Habib Subpoena," and together with the Glenwood

---

[21] Audio Recording of 341 Meeting, 28:15–29:53.

[22] Given that "[u]nemployment compensation benefits are not available to entrepreneurs who have closed their doors, nor, to the established business person who suddenly finds that the family's pride in their corner deli was not enough to keep the store open," it is unclear how the Debtor was eligible for these benefits. *Owoc v. Unemployment Compensation Bd. of Review*, 809 A.2d 441, 443 (Commw. Ct. 2002); *see also* 43 PA. CONS. STAT. 753(l)(2)(B); 43 PA. CONS. STAT. 802(h).

[23] Audio Recording of 341 Meeting, 39:50–40:43.

[24] A true and correct copy of the Glenwood Subpoena is available at Dkt. No. 71-2, attached as Exhibit A to the *Certification of Joseph M. Shapiro, Esq., in Sup[p]ort of Motion for Order Quashing Fed. R. Bankr. P. 2004 Subpoenas Issued by Fulton Bank, N.A., Pursuant to D.N.J. LBR 2004-1(d) and 11 U.S.C. § 105(a) and for Related Relief* [hereinafter Shapiro Cert.].

[25] *See* Glenwood Subpoena at Rider.

6

Subpoena, the "Subpoenas") on Habib,[26] scheduling an in-person examination for April 19, 2022, at 2:00 p.m. and requesting production of the following materials:

> 1    Copies of all bank statements from March 1, 2017 through the present for any and all accounts held by Varun Malik, Textile Decor USA Inc. or in which Varon Malik is an authorized signatory at Habib American Bank; and,
>
> 2    Copies of all checks, wires, payments or transfers (i) drawn on all Varun Malik or Textile Decor USA Inc. accounts or any accounts in which Varun Malik is an authorized signatory and (ii) deposited into those accounts from March 1, 2017 through the present.

Each of these requests are directly relevant to the identification of estate assets, the Debtor's eligibility for discharge in whole or in part, and the Debtor's ability to fund a confirmable plan.

The Debtor disclosed his debtor-in-possession account and a savings account at Amboy Bank in Schedule A/B, as well as his 100% ownership interest in Textile Décor and a 10% ownership interest in "HLM Koncept, LLC (closed)" [27] ("HLM"). When Textile Décor was operating, it held accounts at Habib American Bank ("Habib"). At the 341 Meeting, the Debtor testified, "I don't remember," when asked whether he had maintained any personal bank accounts at Habib from 2019–22.[28] He also testified that he formerly owned HLM with his brother, Nagesh Malik; that HLM had sold a commercial warehouse property for $6 million in early 2020; that his share was $300,000; and that he had used the money to pay off debts.[29] However, he later testified that he had actually sold his interest in HLM to his brother in April or May 2020 in connection

---

[26] A true and correct copy of the Habib Subpoena is available at Dkt. No. 71-2, attached as Exhibit B to the Shapiro Cert.

[27] Schedule A/B, Dkt. No. 22 at Pts. 17–18.

[28] Audio Recording of 341 Meeting, 1:11:47–1:11:57.

[29] *Id.* 16:39–19:17.

7

with the warehouse sale.[30] The U.S. Trustee ordered the Debtor to provide an accounting of the funds and documents reflecting the share transfer.[31]

The Debtor attended the 341 Meeting while driving in his car, did not have his petition or schedules in front of him, and frequently struggled with answering basic questions. For example, when Fulton Bank whether the Debtor had submitted an application to obtain the EIDL, whether he was guarantor or borrower, whether he had received $1.5 million in 2021, and comparable inquiries, the Debtor responded with seven instances of "I'll have to check and get back to you."[32] He provided further non-responses to substantially similar questions about a loan with TD Bank, N.A., such as why he took it out and—again—whether he was borrower or guarantor.[33] The U.S. Trustee disclosed that she was "very concerned about this testimony" and instructed the Debtor to amend this schedule to disclose the missing information.[34]

The Debtor further testified at the 341 Meeting that he intended to fund his subchapter V plan,[35] now withdrawn pursuant to the Court's order striking his subchapter V election,[36] with contributions from his father, Harbans Lal Malik, in the amount of $2,000–3,000 per month; that his father owns the Maida Road Property where the Debtor lives; and that his father was retired but previously held textile and real estate investment businesses in India.[37] He could not explain

---

[30] *Id.* 30:53–32:39; *see also id.* 19:18–20:15

[31] *Id.* 32:40–34:40; *see also id.* 19:18–19:31.

[32] *Id.* 1:12:09–1:14:50.

[33] *Id.* 1:14:51–1:15:54.

[34] *Id.* 1:16:02–1:16:53.

[35] Dkt. No. 35.

[36] Dkt. No. 82.

[37] Audio Recording of 341 Meeting, 42:41–46:54.

8

how his father would obtain the funds to make the contributions and testified that he wanted to ty making it work from his own earnings first.[38]

The Debtor represented that he was employed as a sales consultant at Glenwood Office in Schedule I.[39]  At the 341 Meeting, he testified that his start date was February 25, 2022, that he was an independent contractor, and that he was paid by commission for sales.[40]  He also testified that Mr. Uppal was an owner of Glenwood Office, that his father did not know Mr. Uppal, that he was not sure whether his brother knew Mr. Uppal, and that he was not aware of either his father or brother providing loans to Glenwood Office.[41]

The U.S. Trustee ultimately continued the 341 Meeting, in part because the Debtor had made a subchapter V election and filed his schedules just three days prior, but a new date for the continued 341 Meeting has not yet been scheduled.[42]

On April 7, 2022, the Court entered an order granting Fulton Bank relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1) "to proceed with the State Court Action against the Debtor and pursue any and all other claims against the Debtor to the fullest extent without limitation, including any appeals relating to the State Court Action" and clarifying that the stay does not extend to Textile Décor.[43]

---

[38] *Id.*

[39] Dkt. No. 22 at Pt. 1.

[40] Audio Recording of 341 Meeting, 38:11–42:05.

[41] *Id.* 57:40–1:02.

[42] *Id.* 1:18:18–1:21:06.

[43] Dkt. No. 51.

9

On April 18, 2022, Habib produced the documents and information requested in the Habib Subpoena. The same day, after Habib had already made the requested production, the Debtor filed the Motion, seeking to quash the Glenwood Office Subpoena and the Habib Subpoena, or in the alternative, for modification of the Subpoenas and entry of an order "protecting the Debtor and the targeted parties from further harassment and undue burden," each pursuant to Rule 2004-1(d) of the Court's local rules (the "Local Rules") and the Court's equitable powers under 11 U.S.C. § 105(a).[44]

### III.    ARGUMENT

#### A.    LEGAL STANDARDS

Rule 2004(b) of the Federal Rules of Bankruptcy Procedure (the "Rules") provides that an examination thereunder "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." In a chapter 11 case, "the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan."[45]

---

[44] *See* Motion, Dkt. No. 74-1 at 5.

[45] FED. R. BANKR. P. 2004(b).

10

This Court has "recognize[d] that Rule 2004 examinations are broad, unfettered and in the nature of fishing expeditions."[46]  Indeed, "[l]egitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred."[47]

The Debtor primarily relies on the "pending proceeding rule" in support of his request, under which some "courts have also recognized that Rule 2004 examinations may be inappropriate where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee."[48]  As one court has explained, "[w]here a party requests a Rule 2004 examination and an adversary proceeding or other litigation in another forum is pending between the parties, the relevant inquiry is whether the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding."[49]  Courts focus this inquiry on whether the "primary motive" of the 2004 examination is to obtain information "to use in litigation for another cause of action."[50]  In other words, "the possible use of information obtained through a Rule 2004 examination in collateral litigation pending in a different forum is not sufficient reason to deny an examination if it is not sought for the purpose of circumventing the federal rules of civil or bankruptcy procedure."[51]

---

[46] *In re Lev*, Nos. 05–35847, 06–2945, 2008 WL 207523, at *3 (Bankr. D.N.J. Jan. 23, 2008).  A true and correct copy of this opinion is available at Dkt. No. 89-6, attached as <u>Exhibit D</u> to the Bauer Cert.

[47] *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del 2005) (internal quotation marks and citation omitted).

[48] *Id.* (internal quotation marks and citation omitted).

[49] *Id.* at 51.

[50] *Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D.Tex.1994), *aff'd sub nom.*, *In re Snyder*, 52 F.3d 1067 (5th Cir. 1995).

[51] *In re Millennial Lab Hldgs. II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016).

DM3\8681809.3

Fulton Bank notes that there is no Third Circuit opinion requiring the Court to apply the pending proceeding rule. To the extent the Court chooses to do so, parties with legitimate claims asserted in prepetition litigation are not precluded from pursuing Rule 2004 examinations "to further their interests as creditors of the Debtor."[52] For example, parties who "have been regular and meaningful participants in this case since pretty much its inception" and who have "taken positions on matters central to the bankruptcy case and the estate" may validly seek 2004 examinations on "matters that are relevant to their status as creditors," particularly in furtherance of "examining potential claims that might exist for the . . . estate."[53]

Local Rule 2004(d) authorizes the Court to quash or modify Rule 2004 subpoenas but does not indicate the applicable standard. Standing to modify or quash third-party subpoenas is restricted to parties "seeking to protect a personal privilege or right."[54] Courts "consider whether the information itself is private, confidential, privileged, or highly sensitive" in making the determination, and "the claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoena was served."[55] If a privacy right exists, courts "weigh the relevance or probative value of the documents being sought against the privacy interests."[56]

---

[52] *In re Cambridge Analytics LLC*, 600 B.R. 750, 753 (Bankr. S.D.N.Y. 2019).

[53] *Id.*

[54] *Sali v. Zwanger & Perisi Radiology Grp., LLP*, No. 19 CV 275, 2022 WL 1085508, at *17 (E.D.N.Y. Jan. 10, 2022) (internal quotation marks and citation omitted); *see also* FED. R. CIV. P. 45(d)(3)(A)(iii) (applied in bankruptcy proceedings by FED. R. CIV. P. 9016); FED. R. CIV. P. 26(c)(1) (applied in adversary proceedings by FED. R. BANKR. P. 7026 (applied in contested matters by FED. R. CIV. P. 9014(c))). A true and correct copy of *Sali* is available at Dkt. No. 89-9, attached as Exhibit G to the Bauer Cert.

[55] *Sali*, 2022 WL 1085508, at *17–18 (internal quotation marks and citation omitted).

[56] *Id.* at *16.

However, "a party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevance or undue burden."[57]

Finally, if the respondent has already "complied with the subpoena[] and produced responsive documents," then the Court should dismiss a motion to quash as moot.[58]

**B.   THE GLENWOOD SUBPOENA HAS NO BEARING ON THE STATE COURT ACTION AND DOES NOT SEEK TO HARASS THE DEBTOR**

Fulton Bank directed Glenwood Office to provide (a) correspondence with the Debtor, Textile Décor, his brother, or his brother's business over a limited period and (b) documents reflecting payments Glenwood Office received from his father, brother, or brother's business or paid to the Debtor. Three of the four requests do not involve the Debtor, who cannot have a right of privilege or privacy in the subject communications or payment information. Glenwood Office has not objected to the subpoena, and the Debtor cannot assert arguments of undue burden or relevance on its behalf.

More importantly, the information Fulton Bank seeks is directly relevant to the Debtor's eligibility for a discharge and ability to fund a plan. He testified that he had not worked since December 2020, and Glenwood allegedly hired him six days before the petition date. As one court explained, "[a]n individual is not absolutely barred from filing a Chapter 11 petition solely because he is not engaged in any business[,] . . . [but a]n individual debtor's unemployment is a factor that the Court may consider, however, in determining whether he lacked good faith in seeking Chapter

---

[57] *Id.* at *19; *see also In re Glitnir banki hf.*, No. 08–14757, 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. Aug. 19, 2011) (holding that third-party subpoenas "do not subject Movants to an undue burden because they do not require the Movant to do anything").. A true and correct copy of this opinion is available at Dkt. No. 89-10, attached as Exhibit H to the Bauer Cert.

[58] *Id.* at *17.

11 relief."[59] Fulton Bank merely seeks to confirm that the Debtor and/or his direct family members with ties to this case and Textile Décor did not "sponsor" his last-minute employment to render him eligible for a chapter 11 discharge and that the Debtor did not make false oaths in connection with the same.

Fulton Bank has a legitimate bankruptcy interest in investigating the relationship among Mr. Uppal, the Debtor, and (if any) the Debtor's financially entangled father and brother. Mr. Uppal contacted Fulton Bank a few weeks after the State Court Action initiated and—through counsel that did not represent him—submitted an unsolicited LOI that contemplated a sale transaction including a release of the Debtor and Textile Décor. Approximately one year later, the Debtor became employed by Mr. Uppal's business after a long period of unemployment a few days before petitioning for chapter 11 relief. Given that millions of dollars are unaccounted for, including the proceeds of both Fulton Bank's loan and the EIDL, these connections more than satisfy the type of "fishing expedition" for which Rule 2004 is intended, particularly given the limited scope and nature of the requests.

The Debtor testified at the 341 Meeting that his father did not know Mr. Uppal, he wasn't sure whether his brother did, and neither of them provided loans to Glenwood Office. If this is true, then two of the requests in the Glenwood Subpoena should be very easy to fulfill, as there would likely be no communications or payments to disclose. Additionally, written communications between the Debtor and Glenwood Office/Mr. Uppal from approximately a year before the State Court Action filing through the present will shed insight into the nature of their relationship, which will in turn aid Fulton Bank in assessing the Debtor's candor. Evidence documenting a few months of payments to the Debtor would additionally help confirm the

---

[59] *In re Schultz*, 436 B.R. 170, 176 (Bankr. M.D. Fla. 2010).

Debtor's representations about his employment and provide clarity on a major source of anticipated plan funding.

## C.   THE MOTION IS MOOT AS TO HABIB'S DOCUMENT PRODUCTION

As stated above, Habib has already produced the documents requested in its subpoena. The Motion is moot with respect to this production because there is now nothing to quash. Even if it had not done so, the primary purpose of seeking these bank statements in the Bankruptcy Case is to identify the disposition of assets and whether there are any potential sources of recovery for the estate. Indeed, the "particular purpose for which Rule 2004 and its predecessor provisions under the Bankruptcy Act were promulgated. . . is to allow a Trustee, or others interested in accomplishing the same ends, to discover and investigate how to bring to light possession of assets of the debtor that might be intentionally concealed or overlooked in ignorance or haste."[60] Fulton Bank included in the Habib Subpoena a broad request for any account held by the Debtor and any requiring his authorized signature in furtherance of that goal.

Fulton Bank is the largest creditor in the case. The liquidated portion of its claim arises from the Debtor's breach of the Guaranty and exceeds $4 million. Regardless of whether Fulton Bank also has a contingent, unliquidated claim for fraudulent inducement, its breach claim alone eclipses those of other creditors. Accordingly, Fulton Bank has a substantial interest in recovering estate assets—particularly by identifying potential claims of the estate, such as avoidance actions—as well as assessing the Debtor's eligibility for a discharge, and determining whether the Debtor can fund a confirmable plan. Far from being a nominal party in interest seeking to circumvent New Jersey discovery procedures to prove its claims in the State Court Action, Fulton

---

[60] *In re Summit Glob. Logtics*, No. 08–11566, 2008 WL 1446722, at *2 (Bankr. D.N.J. Apr. 9, 2008). A true and correct copy of this opinion is available at Dkt. No. 89-11, attached as <u>Exhibit I</u> to the Bauer Cert.

Bank has actively participated in all matters central to the Bankruptcy Case and is indeed the only non-Debtor participant that has filed *any motions or objections at all*, save a single objection by TD Bank to the subchapter V plan submitted the day before the order striking the Debtor's election was entered.[61]

Fulton Bank does not pretend the information it seeks has zero relevance in the State Court Action. However, Fulton Bank respectfully asserts that the Habib statements are critical to identifying and tracing potential estate assets, such as revenues from account debtors directed to external financial institutions to avoid detection by the lender, and particularly in combination with any personal statement of the Debtor. Notwithstanding the existence of the State Court Acton, the primary purpose of the Habib Subpoena is to discover such assets of the estate for recovery. Additionally, as Habib has already produced the requested materials, the Debtor's Motion is moot as to this production.

### IV.  CONCLUSION

For the foregoing reasons, Fulton Bank respectfully asks the Court to deny the Debtor's Motion.

Respectfully Submitted,

**DUANE MORRIS LLP**
Attorneys for Fulton Bank, N.A.

By: */s/ Morris S. Bauer*
Morris S. Bauer, Esq.

Dated: May 3, 2022

---

[61] *See* Dkt. No. 81. The former subchapter V trustee also filed an application for compensation. Dkt. No. 78.