| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> *Caption In Compliance With D.N.J. LBR 9004-1(b)* <br><br> **DUANE MORRIS LLP** <br> Morris S. Bauer, Esq. <br> One Riverfront Plaza <br> 1037 Raymond Boulevard, Suite 1800 <br> Newark, NJ 07102-5429 <br> Telephone: (973) 424-2037 <br> E-mail:  msbauer@duanemorris.com <br><br> *Counsel for Fulton Bank, N.A.* | |
| In Re: <br><br> **VARUN MALIK**, <br><br>  Debtor. | Case No. 22-11708 CMG <br><br> Judge: Hon. Christine M. Gravelle <br><br> Chapter 11 <br><br> Related to Dkt. No. 74 |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION OF
FULTON BANK, N.A., TO MOTION FOR ORDER MODIFYING FED. R.
BANKR. P. 2004 SUBPOENA ISSUED BY FULTON BANK, N.A. DIRECTED
TO VARUN MALIK PURSUANT TO D.N.J. LBR 2004-1(d) AND 11 U.S.C. §
105(a); ENTERING A PROTECTIVE ORDER IN LIGHT OF PENDING
PROCEEDINGS; AND GRANTING RELATED RELIEF**

# <u>TABLE OF CONTENTS</u>

**Page**

I.    PRELIMINARY STATEMENT ..............................................................................................1

II.    RELEVANT BACKGROUND ............................................................................................2

III.    ARGUMENT ..................................................................................................................12

    A.    LEGAL STANDARDS ......................................................................... 12

    B.    FULTON BANK'S PRIMARY MOTIVE IS TO FURTHER ITS INTERESTS AS CREDITOR OF THE DEBTOR .............................................. 15

    C.    THE REQUESTED PRODUCTION HAS GOOD CAUSE AND DOES NOT IMPOSE AN UNDUE BURDEN ON THE DEBTOR .............................. 16

IV.    CONCLUSION ................................................................................................................17

i

## TABLE OF AUTHORITIES

**Cases**

*In re Cambridge Analytics LLC*, 600 B.R. 750 (Bankr. S.D.N.Y. 2019) .....................................13

*Fulton Bank, N.A. v. Textile Décor USA, Inc.*, Case No. SOM-L-265-21 (N.J. Super. filed Feb. 23, 2021)............................................................................................2, 16

*In re Lev*, Nos. 05-35847, 06-2945, 2008 WL 207523 (Bankr. D.N.J. Jan. 23, 2008) ........................................................................................................................12, 14

*In re Millennial Lab Hldgs. II, LLC*, 562 B.R. 614 (Bankr. D. Del. 2016) ...................................13

*Owoc v. Unemployment Compensation Bd. of Review*, 809 A.2d 441 (Commw. Ct. 2002) ..............................................................................................................................6

*Snyder v. Soc'y Bank*, 181 B.R. 40 (S.D.Tex.1994), *aff'd sub nom.*, *In re Snyder*, 52 F.3d 1067 (5th Cir.1995) ................................................................................................13

*In re Wash. Mut., Inc.*, 408 B.R. 45 (Bankr. D. Del 2005) ...........................................................12

**Statutes**

43 PA. CONS. STAT. 753(l)(2)(B) ...................................................................................................6

43 PA. CONS. STAT. 802(h) ............................................................................................................6

11 U.S.C. § 105(a) ................................................................................................................1, 6, 11

11 U.S.C. § 341(a) ..........................................................................................................................5

11 U.S.C. § 362(d)(1) ...................................................................................................................11

15 U.S.C. §§ 1691–91f ...................................................................................................................4

**Other Authorities**

12 C.F.R. § 202.7 ............................................................................................................................4

FED. R. CIV. P. 26(c)(1)................................................................................................................14

FED. R. CIV. P. 45(d)(3)(A)(iv) ...................................................................................................14

FED. R. BANKR. P. 7026 .............................................................................................................14

FED. R. BANKR. P. 9014(c)..........................................................................................................14

FED. R. BANKR. P. 9016 .............................................................................................................14

ii

FED. R. BANKR. P. 2004 ....................................................................................................... *passim*

D.N.J. L.B.R. 2004(d) ...........................................................................................................11, 14

Fulton Bank, N.A. ("Fulton Bank") submits this memorandum in support of its objection (the "Objection") to the *Motion for Order Modifying Fed. R. Bankr. P. 2004 Subpoena Issued by Fulton Bank, N.A., Directed to Varun Malik Pursuant to D.N.J. LBR 2004-1(d) and 11 U.S.C. § 105(a); Entering a Protective Order in Light of Pending Proceedings; and Granting Related Relief* (the "Motion")[1] filed by Varun Malik (the "Debtor") in the above-captioned chapter 11 bankruptcy case (the "Bankruptcy Case").  In support of its Objection, Fulton Bank respectfully represents as follows:

## I.      PRELIMINARY STATEMENT

Creditors hold millions in claims against the Debtor, but his estate barely exists.  The disposition of loan proceeds is unknown, his explanations are incomplete or cryptic, and he now seeks to limit disclosure of basic records such as personal tax returns, personal financial statements, and bank statements that would provide a window into his affairs.  Together with records documenting any transfers of interests in certain real properties and businesses, this information would help identify avoidance claims, test the Debtor's discharge eligibility, and assess available funding for a plan.  Fulton Bank has a substantial interest in these goals because Fulton Bank is the Debtor's largest creditor and an active participant in these proceedings.  The Debtor suggests that the existence of pending proceeding should limit the Debtor Subpoena (defined below), but the rule does not bar legitimate creditors from seeking information directly relevant to the bankruptcy case.

---

[1] Dkt. No. 74.

## II.    RELEVANT BACKGROUND

On February 23, 2021, Fulton Bank filed a Verified Complaint[2] against the Debtor and Textile Décor USA, Inc. ("Textile Décor") in the New Jersey Superior Court for Somerset County (the "State Court"), asserting claims for replevin and breach of contract against Textile Décor and a claim for breach of contract against the Debtor (the "State Court Action").[3]

The State Court Action arises from the following agreements (collectively, together with any ancillary and related documents, and as may be amended from time to time, the "Loan Documents"):

    a.    Loan Agreement dated March 30, 2018 (the "Loan Agreement"[4]), granting Textile Décor a borrowing-base line of credit in the original principal about of $3 million (the "BBLOC") and a term loan in the original principal amount of $500,000 (the "Term Loan," and together with the BBLOC, the "Loan");

    b.    Note dated March 30, 2018, evidencing the Term Loan (the "Term Loan Note"[5]);

    c.    Borrowing Base Line of Credit Note dated March 30, 2018, evidencing the BBLOC (the "BBLOC Note"[6]);

    d.    Security Agreement dated March 30, 2018, granting Fulton Bank a lien in all personal property and assets of Textile Décor to secure its Loan obligations (the "Security Agreement"[7]);

---

[2] A true and correct copy of the Verified Complaint is available at Dkt. No. 65-3, attached as Exhibit A to the *Certification of Morris S. Bauer in Support of Motion of Fulton Bank, N.A., to Strike the Debtor's Election to Proceed as a Subchapter V Small Business Debtor* previously filed with this Court at Dkt. No. 65-2 [hereinafter Prior Bauer Cert.]. For a summary of the facts and circumstances underlying the State Court Action, see the Certification of Saleena Miller previously filed with this Court at Dkt. No. 13-15.

[3] *Fulton Bank, N.A. v. Textile Décor USA, Inc.*, Case No. SOM-L-265-21 (N.J. Super. filed Feb. 23, 2021).

[4] A true and correct copy of the Loan Agreement is available at Dkt. No. 65-4, attached as Exhibit B to the Prior Bauer Cert.

[5] A true and correct copy of the Term Loan Note is available at Dkt. No. 65-5, attached as Exhibit C to the Prior Bauer Cert.

[6] A true and correct copy of the BBLOC Note is available at Dkt. No. 65-6, attached as Exhibit D to the Prior Bauer Cert.

[7] A true and correct copy of the Security Agreement is available at Dkt. No. 65-7, attached as Exhibit E to the Prior Bauer Cert.

e.     Guaranty Agreement dated March 30, 2018 (the "Guaranty"[8]) pursuant to which the Debtor unconditionally guaranteed payment and performance of all present and future obligations of Textile Décor to Fulton Bank;

f.     Mortgage dated March 30, 2018, granting the Debtor a mortgage lien in real property located at 44 Denise Dr., Edison, NJ 08820 (the "Denise Drive Property") to secure the Debtor's Guaranty obligations (the "Mortgage"[9]); and

g.     Loan Modification Agreement dated November 29, 2018, revising the BBLOC Loan be due on call rather than expire after one year (together with the Consent of Guarantor attached thereto, the "Loan Modification"[10]).

On March 12, 2021, the Debtor submitted a certification in the State Court Action (the "March 2021 Debtor Cert.") in which he averred as follows: "Due to decreased sales and the other financial issues the business was faced with, as well as the toll the stress from this situation caused on my health, in February 2021, Textile stopped operating."[11]

On March 23, 2021, the State Court issued a Writ of Replevin directing the county sheriff to collect and deliver to Fulton Bank all collateral of Textile Décor described in the Security Agreement.[12]

---

[8] A true and correct copy of the Guaranty is available at Dkt. No. 65-8, attached as Exhibit F to the Prior Bauer Cert.

[9] A true and correct copy of the Mortgage is available at Dkt. No. 65-9, attached as Exhibit G to the Prior Bauer Cert.

[10] A true and correct copy of the Loan Modification is available at Dkt. No. 65-10, attached as Exhibit H to the Prior Bauer Cert.

[11] See March 2021 Debtor Cert. ¶ 27.  A true and correct copy of the March 2021 Debtor Cert. is available at Dkt. No. 65-11, attached as Exhibit I to the Prior Bauer Cert.

[12] A true and correct copy of the Writ of Replevin is available at Dkt. No. 65-12, attached as Exhibit J to the Prior Bauer Cert.

DM3\8678885.2

On April 12, 2021, the Debtor and Textile Décor jointly filed an Answer and Affirmative Defenses to Complaint and Counterclaims (the "Answer")[13] in which they asserted counterclaims against Fulton Bank, alleging a violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–91f ("ECOA") or 12 C.F.R. § 202.7 ("Regulation B") and related claims for breach of the implied covenant of good faith and fair dealing and promissory estoppel (the "Counterclaims").[14]

On July 21, 2021, Fulton Bank sought leave to amend its Verified Complaint after discovering that the Debtor had falsified receivables to obtain the Loan and in post-closing borrowing-base certificates, filing the amended version on October 8, 2021, to assert a fraud claim against both defendants (the "Amended Complaint").[15]  On February 1, 2022, the State Court entered an order limiting Fulton Bank's fraud claim to fraud in the inducement (the "Fraud Claim Order").[16]

On March 3, 2022, the Debtor petitioned for relief under chapter 11 of title 11 of the U.S. Code, 11 U.S.C. §§ 101–1527 (the "Bankruptcy Code").

Fulton Bank filed Claim No. 8 against the Debtor's estate in the liquidated amount of $4,026,933.42 arising from the Debtor's Guaranty obligations plus contingent, unliquidated amounts for consequential and punitive damages on account of the fraud claim.

---

[13] A true and correct copy of the Answer is available at Dkt. No. 65-13, attached as Exhibit K to the Prior Bauer Cert.

[14] Answer ¶¶ 37–52.

[15] A true and correct copy of the Amended Complaint is available at Dkt. No. 65-15, attached as Exhibit M to the Prior Bauer Cert.

[16] A true and correct copy of the Fraud Claim Order is available at Dkt. No. 89-12, attached as Exhibit A to the *Certification of Morris S. Bauer in Support of Motion of Fulton Bank, N.A., to Extend Time to (A) Object to the Debtor's Discharge and (B) Challenge the Dischargeability of Certain Debts* [hereinafter Bauer Cert.].

4

The U.S. Small Business Administration (the "SBA") filed Claim No. 6 against the Debtor's estate for "money loaned" as a general unsecured claim in the amount of $2,026,799.65 (the "SBA Claim"). [17] Attached to the SBA Claim are loan documents showing that the debt arises from the Debtor's personal guarantee of an Economic Injury Disaster Loan ("EIDL") issued to Textile Décor as follows:

i.  Note dated June 25, 2020, in the original principal amount of $150,000, and subject to no guarantee by the Debtor;

ii.  1st Modification of Note dated August 16, 2021, increasing the original principal balance to $500,000 and personally guaranteed by the Debtor pursuant to an Unconditional Guarantee (Disaster Loans) of the same date; and

iii.  2nd Modification of Note dated December 16, 2021, further increasing the original principal balance to $2 million and personally guaranteed by the Debtor pursuant to an Amended Unconditional Guarantee (Disaster Loans) of the same date.

Notwithstanding these EIDL disbursements, the Debtor previously disclosed that Textile Décor has not operated since February 2021 in the March 2021 Debtor Cert.[18] On March 31, 2022, the Debtor attended the telephonic meeting of creditors conducted pursuant to 11 U.S.C. § 341(a) (the "341 Meeting") and again testified that Textile Décor has had no income or operations since

---

[17] The SBA also filed Claim No. 7 in the secured amount of $108,731.81, arising from an EIDL issued to Vinta Supply Co. Inc. and guaranteed by Victor Soto, but this claim appears to be asserted against the Debtor's estate in error.

[18] *See* March 2021 Debtor Cert. ¶ 27.

February 2021,[19] and that he had applied for unemployment[20] benefits in December 2020 and received them in mid-2021.[21]

On April 1, 2022, Fulton Bank served a *Subpoena for Rule 2004 Examination* on the Debtor via his counsel (together with the Rider attached thereto, the "Debtor Subpoena"),[22] scheduling an in-person examination for April 20, 2022, at 10:00 a.m. and requesting production of the following materials:

1        Tax Returns for years: 2018, 2019, 2020 and 2021;

2        Bank Statements for years 2018, 2019, 2020, 2021 and 2022, including your bank accounts, if any, with Citibank, Habib American Bank, Amboy Bank

3        Copies of documents relating to the sale, transfer, purchase or acquisition of your ownership or any other type of interest you may have in any real estate, stock or other type of ownership interest, including with respect to HLM Koncept LLC, 44 Denise Drive, Edison, NJ, 1 Skytop Road, Edison, NJ, 21 Maida Road, Edison, NJ, RDM Concepts Holdings, Inc., 21 Model Town, Panipat, India, Malik Fabrics Private Limited;

4        Copies of any personal financial statements provided to any persons during the years 2018, 2019, 2020, 2021 and 2022; and,

5        Copies of any loan applications loan documents or guarantees in which you were a party to during the years 2019, 2020 and 2021, including U.S. Small Business Administration, TD Bank and HSBC.[23]

---

[19] Audio Recording of 341 Meeting, 28:15–29:53.

[20] Given that "[u]nemployment compensation benefits are not available to entrepreneurs who have closed their doors, nor, to the established business person who suddenly finds that the family's pride in their corner deli was not enough to keep the store open," it is unclear how the Debtor was eligible for these benefits. *Owoc v. Unemployment Compensation Bd. of Review*, 809 A.2d 441, 443 (Commw. Ct. 2002); *see also* 43 PA. CONS. STAT. 753(l)(2)(B); 43 PA. CONS. STAT. 802(h).

[21] Audio Recording of 341 Meeting, 39:50–40:43.

[22] A true and correct copy of the Debtor Subpoena is available at Dkt. No. 74-2, attached as Exhibit B to the *Certification of Joseph M. Shapiro, Esq., in Sup[p]ort of Motion for Order Modifying Fed. R. Bankr. P. 2004 Subpoena Issued by Fulton Bank, N.A., Directed to Varun Malik Pursuant to D.N.J. LBR 2004-1(d) and 11 U.S.C. § 105(a); Entering a Protective Order in Light of Pending Proceedings; and Granting Related Relief* [hereinafter Shapiro Cert.].

[23] *See* Debtor Subpoena at Rider.

Each of these requests are directly relevant to the disposition or identification of estate assets and liabilities, the Debtor's eligibility for discharge in whole or in part, and the Debtor's ability to fund a confirmable plan.

The Debtor disclosed his debtor-in-possession account and a savings account at Amboy Bank in Schedule A/B, as well as his 100% ownership interest in Textile Décor and a 10% ownership interest in "HLM Koncept, LLC (closed)" [24] ("HLM").   When Textile Décor was operating, it held accounts at Habib American Bank ("Habib").   At the 341 Meeting, the Debtor testified, "I don't remember," when asked whether he had maintained any personal bank accounts at Habib from 2019–22.[25]   He also testified that he formerly owned HLM with his brother, Nagesh Malik; that HLM had sold a commercial warehouse property for $6 million in early 2020; that his share was $300,000; and that he had used the money to pay off debts.[26]   However, he later testified that he had actually sold his interest in HLM to his brother in April or May 2020 in connection with the warehouse sale.[27]   The U.S. Trustee ordered the Debtor to provide an accounting of the funds and documents reflecting the share transfer.[28]

At the 341 Meeting, the Debtor testified that he was seeking an extension to file both his 2020 and his 2021 tax returns.[29]   In Schedule E/F, the Debtor scheduled priority unsecured tax claims held by the Internal Revenue Service (the "IRS") in the amount of $11,430.16, the New

---

[24] Schedule A/B, Dkt. No. 22 at Pts. 17–18.

[25] Audio Recording of 341 Meeting, 1:11:47–1:11:57.

[26] *Id.* 16:39–19:17.

[27] *Id.* 30:53–32:39; *see also id.* 19:18–20:15.

[28] *Id.* 32:40–34:40; *see also id.* 19:18–19:31.

[29] *Id.* 21:58–24:04.

DM3\8678885.2

Jersey Division of Taxation Activity (the "NJ DTA") in an unknown amount, and the New Jersey

Department of Labor and Workforce Development (the "NJ DLWD") in an unknown amount.[30]

The Court entered an *Order to Show Cause Why the Case Should Not Be Dismissed for Failure to*

*File Documents or Extend Time* on March 30, 2022, in part because the Debtor failed to submit

his tax return, and it remains set for hearing on May 10, 2022.[31]

The Debtor scheduled two unsecured claims held by Citibank, N.A. ("Citibank") in the

amount of $13,981.00 and an unknown amount in Schedule E/F,[32] and he identified two Citibank

checking accounts held in his name or for his benefit that were closed on March 11, 2022, in his

Statement of Financial Affairs.[33]  In a certification filed in the State Court Action on June 29, 2021

(the "June 2021 Debtor Cert."), the Debtor averred that Textile Décor had $2.8 million in

outstanding Citibank loans "prior to March 2018" and that he had "sought to refinance the Citibank

Loan with plaintiff Fulton Bank."[34]

The Debtor further scheduled two unsecured claims held by HSBC Bank USA, N.A.

("HSBC") in Schedule E/F for "Credit Card" and "Line of Credit" in $0.00 amounts,[35] and he

included a claim jointly held by HSBC and its current mortgage servicer, Dovenmuehle Mortgage

Inc. ("DMI"), in Schedule D in the amount of $27,526.00, secured by the Denise Drive Property

---

[30] Schedule E/F, Dkt. No. 22 at Pts. 2.1–2.3.

[31] Dkt. No. 38.

[32] Schedule E/F, Dkt. No. 22 at Pts. 4.4–4.5.

[33] Statement of Financial Affairs, Dkt. No. 22 at Pt. 20.

[34] June 2021 Debtor Cert. ¶¶ 2–3. A true and correct copy of the June 2021 Debtor Cert. is available at Dkt. No. 65-14, attached as Exhibit L to the Prior Bauer Cert.

[35] Schedule E/F, Dkt. No. 22 at Pts. 4.8–4.9.

and arising from a "Home Equity Line" opened in May 2007 that was last active on February 4, 2022.[36]

On March 28, 2022, the Debtor filed a *Change of Address* notice showing that he formerly resided at the Denise Drive Property but now resides at 21 Maida Road, Edison, NJ (the "Maida Road Property").[37]  On March 29, 2022, he filed a certification with this Court (the "March 2022 Debtor Cert.") in which he averred that he operates the Denise Drive Property as a rental property, attaching a Lease Agreement dated March 14, 2022, among the Debtor as landlord and Gautham Gorla and Greeshma Rajakumara-Reddy as tenants that commences a month-to-month tenancy at the Denise Drive Property effective March 15, 2022 (the "Lease Agreement").[38]  He also testified at the 341 Meeting that his wife owns 1 Skytop Road, Edison, NJ (the "Skytop Road Property") and lives there with their two children.[39]

T.D. Bank, N.A. ("TD Bank") filed two proofs of claim against the Debtor's estate: (a) Claim No. 4 for "Personal Guaranty of Business Debt" as a general unsecured claim in the amount of $81,034.70 and (b) Claim No. 5 for "Credit Card" as a general unsecured claim in the amount of $18,040.44.

The Debtor attended the 341 Meeting while driving in his car, did not have his petition or schedules in front of him, and frequently struggled with answering basic questions.  For example, when Fulton Bank whether the Debtor had submitted an application to obtain the EIDL, whether he was guarantor or borrower, whether he had received $1.5 million in 2021, and comparable

---

[36] Schedule D, Dkt. No. 22 at Pt. 2.1.

[37] Dkt. No. 26.

[38] *See* March 2022 Debtor Cert., Dkt. No. 36 at ¶¶ 34, 39; *id.* at Exhibit H, Lease Agreement, Dkt. No. 36-8 at 147–52.

[39] Audio Recording of 341 Meeting, 10:01–12:03.

DM3\8678885.2

inquiries, the Debtor responded with seven instances of "I'll have to check and get back to you."[40]

He provided further non-responses to substantially similar questions about a loan with TD Bank,

such as why he took it out and—again—whether he was borrower or guarantor.[41]  The U.S. Trustee

disclosed that she was "very concerned about this testimony" and instructed the Debtor to amend

this schedule to disclose the missing information.[42]  Additionally, when the U.S. Trustee asked the

Debtor whether he had signed Fulton Bank's Guaranty, he testified, "Ma'am, I have to see that

document.  But no to the best of my knowledge."[43]  However, on June 29, 2021, the Debtor

submitted a certification in the State Court Action (the "June 2021 Debtor Cert.") in which he

admitted to executing the Guaranty as follows: "I was advised by Fulton that I was required to

guaranty the Loan or it would not be provided, *so I did so.*"[44]

The Debtor further testified at the 341 Meeting that he intended to fund his subchapter V

plan,[45] now withdrawn pursuant to the Court's order striking his subchapter V election,[46] with

contributions from his father, Harbans Lal Malik, in the amount of $2,000–3,000 per month; that

his father owns the Maida Road Property where the Debtor lives; and that his father was retired

but previously held textile and real estate investment businesses in India.[47]  He could not explain

---

[40] *Id.* 1:12:09–1:14:50.

[41] *Id.* 1:14:51–1:15:54.

[42] *Id.* 1:16:02–1:16:53.

[43] *Id.* 49:04–50:19.

[44] June 2021 Debtor Cert. ¶ 5 (emphasis added). A true and correct copy of the June 2021 Debtor Cert. is available at Dkt. No. 65-14, attached as Exhibit L to the Prior Bauer Cert.

[45] Dkt. No. 35.

[46] Dkt. No. 82.

[47] Audio Recording of 341 Meeting, 42:41–46:54.

how his father would obtain the funds to make the contributions and testified that he wanted to try making it work from his own earnings first.[48]  RDM Concepts Holdings, Inc. ("RDM") is a New York corporation with "c/o Harbans Lal Malik" listed as its service of process name.[49]  Upon information and belief, Textile Décor distributed moneys to RDM.  Upon information and belief, Malik Fabrics Private Limited is a textile business at one time owned or operated by Harbans Lal Malik in Panipat, India.

The U.S. Trustee ultimately continued the 341 Meeting, in part because the Debtor had made a subchapter V election and filed his schedules just three days prior, but a new date for the continued 341 Meeting has not yet been scheduled.[50]

On April 7, 2022, the Court entered an order granting Fulton Bank relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1) "to proceed with the State Court Action against the Debtor and pursue any and all other claims against the Debtor to the fullest extent without limitation, including any appeals relating to the State Court Action" and clarifying that the stay does not extend to Textile Décor.[51]

On April 19, 2022, the Debtor filed the Motion, requesting a protective order to prevent Fulton Bank from using the Debtor Subpoena to further its claims in the State Court Action pursuant to Rule 2004-1(d) of the Court's local rules (the "Local Rules") and the Court's equitable powers under 11 U.S.C. 105(a).[52]

---

[48] *Id.*

[49] A true and correct copy of the "Entity Information" page for RDM from the New York Department of State Division of Corporations is available at Dkt. No. 89-5, attached as <u>Exhibit C</u> to the Bauer Cert.

[50] Audio Recording of 341 Meeting, 1:18:18–1:21:06.

[51] Dkt. No. 51.

[52] *See* Motion, Dkt. No. 74-1 at 5.

DM3\8678885.2

## III.    ARGUMENT

### A.    LEGAL STANDARDS

Rule 2004(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Rules</u>") provides that an

examination thereunder "may relate only to the acts, conduct, or property or to the liabilities and

financial condition of the debtor, or to any matter which may affect the administration of the

debtor's estate, or to the debtor's right to a discharge." In a chapter 11 case, "the examination may

also relate to the operation of any business and the desirability of its continuance, the source of

any money or property acquired or to be acquired by the debtor for purposes of consummating a

plan and the consideration given or offered therefor, and any other matter relevant to the case or

to the formulation of a plan."[53]

Although the Debtor asks the Court to "restrain Fulton Bank's examination to a narrow

scope of Bankruptcy Rule 2004,"[54] this Court has "recognize[d] that Rule 2004 examinations are

broad, unfettered and in the nature of fishing expeditions."[55] Indeed, "[l]egitimate goals of Rule

2004 examinations include discovering assets, examining transactions, and determining whether

wrongdoing has occurred."[56] The Debtor primarily relies on the "pending proceeding rule" in

support of his request, under which "courts have also recognized that Rule 2004 examinations may

be inappropriate where the party requesting the Rule 2004 examination could benefit their pending

litigation outside of the bankruptcy court against the proposed Rule 2004 examinee."[57] As one

---

[53] FED. R. BANKR. P. 2004(b).

[54] Motion, Dkt. No. 74-1 at 3–4.

[55] *In re Lev*, Nos. 05–35847, 06–2945, 2008 WL 207523, at *3 (Bankr. D.N.J. Jan. 23, 2008). A true and correct copy of this opinion is available at Dkt. No. 89-6, attached as <u>Exhibit D</u> to the Bauer Cert.

[56] *In re Wash. Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del 2005) (internal quotation marks and citation omitted).

[57] *Id.* (internal quotation marks and citation omitted).

DM3\8678885.2

court has explained, "[w]here a party requests a Rule 2004 examination and an adversary proceeding or other litigation in another forum is pending between the parties, the relevant inquiry is whether the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding."[58]  Courts focus this inquiry on whether the "primary motive" of the 2004 examination is to obtain information "to use in litigation for another cause of action."[59]  In other words, "the possible use of information obtained through a Rule 2004 examination in collateral litigation pending in a different forum is not sufficient reason to deny an examination if it is not sought for the purpose of circumventing the federal rules of civil or bankruptcy procedure."[60]

Fulton Bank notes that there is no Third Circuit opinion requiring the Court to apply the pending proceeding rule.  To the extent the Court chooses to do so, parties with legitimate claims asserted in prepetition litigation are not precluded from pursuing Rule 2004 examinations "to further their interests as creditors of the Debtor."[61]  For example, parties who "have been regular and meaningful participants in this case since pretty much its inception" and who have "taken positions on matters central to the bankruptcy case and the estate" may validly seek 2004 examinations on "matters that are relevant to their status as creditors," particularly in furtherance of "examining potential claims that might exist for the . . . estate."[62]

---

[58] *Id.* at 51.

[59] *Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D.Tex.1994), *aff'd sub nom.*, *In re Snyder*, 52 F.3d 1067 (5th Cir.1995) (mem.)

[60] *In re Millennial Lab Hldgs. II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016).

[61] *In re Cambridge Analytics LLC*, 600 B.R. 750, 753 (Bankr. S.D.N.Y. 2019).

[62] *Id.*

DM3\8678885.2

Local Rule 2004(d) authorizes the Court to quash or modify Rule 2004 subpoenas but does not indicate the applicable standard.  To the extent the Debtor seeks a "protective order protecting the Debtor from undue burden and harassment," Rule 26(c)(1) of the Federal Rules of Civil Procedure (the "Civil Rules"), applied in adversary proceedings by Rule 7026 (excluding certain other sections of Civil Rule 26), applied in contested matters by Rule 9014(c), provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."

To the extent the Debtor argues that Fulton Bank "must demonstrate[] good cause for the documents and the information it seeks in the Subpoena," the analysis is governed by Civil Rule 45(d)(3)(A)(iv), applied in bankruptcy proceedings by Rule 9016, which authorizes the Court to modify a subpoena if it "subjects a person to undue burden."  When a motion seeks to quash or modify a subpoena alleging undue burden, "the subpoena's issuer must show good cause for the Rule 2004 examination[, after which] . . . the objecting party must convince the court of the impropriety of the Rule 2004 examination."[63]  Courts assess the existence of good cause by considering "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed," in addition to "the value of the information to the issuing party in comparison to the burden imposed on the subpoenaed party."[64]

---

[63] *Lev*, 2008 WL 207523, at *4 (internal quotation marks and citations omitted).

[64] *Id.* (internal quotation marks and citation omitted).

B.    **FULTON BANK'S PRIMARY MOTIVE IS TO FURTHER ITS INTERESTS AS A CREDITOR OF THE DEBTOR**

Fulton Bank is the largest creditor in the case.  The liquidated portion of its claim arises from the Debtor's breach of the Guaranty and exceeds $4 million.  Regardless of whether Fulton Bank also has a contingent, unliquidated claim for fraudulent inducement, its breach claim alone eclipses those of other creditors.  Accordingly, Fulton Bank has a substantial interest in recovering estate assets—particularly by identifying potential claims of the estate, such as avoidance actions—assessing the Debtor's eligibility for a discharge, and determining whether the Debtor can fund a confirmable plan.  Far from being a nominal party in interest seeking to circumvent New Jersey discovery procedures to prove its claims in the State Court Action, Fulton Bank has actively participated in all matters central to the Bankruptcy Case and is indeed the only non-Debtor participant that has filed *any motions or objections at all*, save a single objection by TD Bank to the subchapter V plan submitted the day before the order striking the Debtor's election was entered.[65]

Fulton Bank primarily seeks to identify fraudulent transferees and the Debtor's financial relationships with family members and other institutions because these are possible sources of recovery for the estate.  The information sought in the Debtor Subpoena is directly relevant to the identification and return of estate assets for the benefit of all creditors, the availability of the discharge, and the ability of the Debtor to fund a confirmable plan.  His subchapter V plan, now withdrawn, proposed a 2% distribution to the unsecured pool supported with contributions from his father.  Creditors deserve an opportunity to determine whether additional estate assets exist and

---

[65] *See* Dkt. No. 81.  The former subchapter V trustee also filed an application for compensation.  Dkt. No. 78.

to assess whether the Debtor's father is a fraudulent transferee or could be a viable source of plan funding.

Additionally, Fulton Bank seeks personal financial records of the Debtor, but its fraud claim arises from falsified receivables of *Textile Décor* that would be reflected in its own accounts. Further, requests 1, 2, 4, and 5 in the Debtor Subpoena are records from 2018 or later, but records from after March 30, 2018 (the date the Debtor executed the Loan Documents), cannot establish liability for fraudulent inducement.   The remaining request for records relating to the Debtor's transfer of interests in real estate, stock, or other ownership interests in certain properties and businesses is not limited in time, but such transfers seek to identify assets of the estate and have little bearing on the State Court Action.

Accordingly, despite the existence of the State Court Action, the information sought in the Debtor Subpoena does not merit limitation by the pending procedure rule.

## C.    THE REQUESTED PRODUCTION HAS GOOD CAUSE AND DOES NOT IMPOSE AN UNDUE BURDEN ON THE DEBTOR

As described above, each of the requests in the Debtor Subpoena is directly relevant to the identification and recovery of estate assets, the Debtor's eligibility for a discharge, and the Debtor's ability to fund a confirmable plan.  The Debtor has failed to answer basic questions about his finances under oath and has shown an alarming lack of knowledge or candor about the nature and disposition of multimillion-dollar business loans as well as an alleged $6 million sale transaction—one of which occurred a mere three months prior to the petition date and the other approximately one year prior to the petition date.  The available record shows that he has received or administered substantial sums in recent years, but these funds are no longer in his possession. Each of Fulton Bank's requests seek to fill this gap.

Tax returns, personal financial statements, and bank statements are essential to building a clear picture of the Debtor's assets and expenditures, particularly in light of the Debtor's faulty memory.  The SBA, TD Bank, and HSBC are all creditors of the estate that have provided loans to the Debtor or Textile Décor about which the Debtor has offered little or no information.  Citibank held the Debtor's prior accounts, Amboy Bank holds current accounts, and he could not recall whether he ever held an account at Habib American Bank.  Each of these requests is limited records from 2018 or later and should pose no hardship to produce.

The only request not limited by time is for a limited type of record—those identifying transfers of the Debtor's interests in HLM, which he claims was sold for $6 million (about which the U.S. Trustee has also inquired); his rental property; his current residence; his wife's residence; and certain businesses held or believed to be held by his father, the purported source of funding for a plan.  Presumably, transfers of the Debtor's interests—if any—in a handful of specific real properties and businesses would be infrequent, and records documenting the same should be easy to identify and produce.

All the requests in the Debtor Subpoena are directly relevant to the Bankruptcy Case. Neither the existence of a pending proceeding nor bald assertions of undue burden allow the Debtor to shield his assets.  He chose to avail himself of relief under the Bankruptcy Code, which provides rights to not only debtors but creditors as well.

## IV.    CONCLUSION

For the foregoing reasons, Fulton Bank respectfully asks the Court to deny the Debtor's Motion.

DM3\8678885.2

Respectfully Submitted,

**DUANE MORRIS LLP**
Attorneys for Fulton Bank, N.A.

By: */s/ Morris S. Bauer*
Morris S. Bauer, Esq.

Dated: May 3, 2022

DM3\8678885.2