| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>*Caption In Compliance With D.N.J. LBR 9004-1(b)*<br><br>**DUANE MORRIS LLP**<br>Morris S. Bauer, Esq.<br>One Riverfront Plaza<br>1037 Raymond Boulevard, Suite 1800<br>Newark, NJ 07102-5429<br>Telephone: (973) 424-2037<br>E-mail:  msbauer@duanemorris.com<br><br>*Counsel for Fulton Bank, N.A.* | |
| In Re:<br><br>**VARUN MALIK**,<br><br>        Debtor. | Case No. 22-11708 CMG<br><br>Judge: Hon. Christine M. Gravelle<br><br>Chapter 11<br><br>Related to Dkt. No. 133 |

**OBJECTION OF FULTON BANK, N.A., TO THE DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF FOX ROTHSCHILD LLP AS SPECIAL COUNSEL TO THE DEBTOR *NUNC PRO TUNC* TO JULY 29, 2022**

Fulton Bank, N.A. ("Fulton Bank") submits this objection (the "Objection") to the *Debtor's Application for Entry of an Order Authorizing the Employment and Retention of Fox Rothschild LLP as Special Counsel to the Debtor* Nunc pro Tunc *to July 29, 2022* (the "Fox Retention Application")[1] filed by Varun Malik (the "Debtor") in the above-captioned chapter 11 bankruptcy case (the "Bankruptcy Case"). In support of its Objection, Fulton Bank respectfully represents as follows:

---

[1] Dkt. No. 133.

### I. PRELIMINARY STATEMENT

1. Fox Rothschild LLP ("Fox") is ineligible for retention because it has a material conflict of interest. Fox represents Fulton in connection with commercial loan transactions. The Debtor faces civil and criminal liability associated with certain commercial loans backed by the U.S. Small Business Administration ("SBA"). The loans were issued by lenders under government relief programs relating to the COVID-19 pandemic. One of the loans was issued under the Paycheck Protection Program (the "PPP Loan") to the Debtor's personal business, Textile Décor USA, Inc. ("Textile Décor"). The Debtor applied for and guaranteed the PPP Loan. The SBA alleges that the Debtor submitted false claims, made false statements, and misapplied the proceeds of the PPP Loan. The SBA asserts that these allegations, if true, violate the False Claims Act[2] and other federal statutes. The Debtor seeks to retain Fox to defend against these allegations. Fulton Bank issued the PPP Loan to Textile Décor.

2. Fulton Bank also issued other loans to Textile Décor, applied for and guaranteed by the Debtor. Fulton Bank is pursuing claims in connection with these loans for fraud and breach of contract against the Debtor and Textile Décor in state court. The Debtor is pursuing counterclaims in connection with these loans for violations of the Equal Credit Opportunity Act ("ECOA")[3] and related claims.

3. Harbans Lal Malik—the Debtor's father—has paid Fox's retainer and would pay its fees. H.L. Malik lives in India. H.L. Malik and his wife, Neelam Malik, are creditors of the Debtor.

---

[2] 31 U.S.C. §§ 3729–33.

[3] 15 U.S.C. §§ 1691–1691(f).

4. PNC Bank, N.A. ("PNC Bank"), has produced records showing that the Debtor directed SBA loan proceeds into personal accounts at PNC Bank before transferring the funds to a personal account at Union Bank of India ("UB India"). The Debtor did not disclose these accounts in his Statement of Financial Affairs ("SOFA"), the transfer or withdrawal of in excess of $1,500,000 of monies deposited in one or more of these accounts within weeks of the commencement of the Bankruptcy Case, or the transferee(s).[4]

## II.     RELEVANT BACKGROUND

**A.     Loan Agreement, State Court Action, Fraud, and First Rule 2004 Exam**

5. Fulton Bank incorporates by reference as if fully set forth herein the "Relevant Background" section of its previously filed motion to convert the Chapter 11 Case ("Motion to Convert").[5] Fulton Bank highlights and supplements the following incorporated facts:

a. The Debtor and his wholly owned corporation, Textile Décor are adversaries in the State Court Action. Their claims and counterclaims arise in connection with commercial loans issued by Fulton Bank. The State Court Action is not stayed.[6]

b. The SBA Claim[7] asserts various federal claims against the Debtor in connection with, *inter alia*, the PPP Loan[8] and an Economic Injury Disaster Loan ("EIDL") issued to Textile Décor. Fulton Bank is lender of record for the PPP Loan.[9] On March 30, 2021, the SBA repaid

---

[4] *See* Dkt. No. 22.

[5] Dkt. No. 116, ¶¶ 9–53. Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion to Convert.

[6] *See* Dkt. No. 61.

[7] Claim No. 6, amended at Claim No. 6-2.

[8] With respect to the PPP Loan, the SBA asserts violations of (a) the False Claims Act, 31 U.S.C. §§ 3729–33; (b) the Program Civil Remedies Act, 31 U.S.C. §§ 3801–12; (c) section 16 of the Small Business Act, 15 U.S.C. § 645; and (d) section 951 of the Financial Institution, Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a. Addendum to SBA Claim ¶ 9.

[9] *See id.* ¶ 7.

3

Fulton Bank the principal of $187,500 plus $1,765.62 in interest upon the Debtor's application for forgiveness.[10]

    c.    On May 27, 2022, the Court ordered the Debtor, *inter alia*, to produce all his bank statements from 2018–22 to Fulton Bank within two weeks and to appear for a Rule 2004 exam by Fulton Bank within four weeks (the "May 27 Order").[11]  The Court further ordered that the first four hours of the Rule 2004 exam must be in person, with an additional four hours remote.[12]

    d.    The Debtor appeared for a Rule 2004 exam on June 23, 2022.  The Debtor provided approximately 30 minutes of testimony to Fulton Bank before representing that he received an email notice that he had tested positive for COVID-19.  The parties stopped the exam as a result.

**B.**    **Subsequent Developments**

    **1.**    **Concealed Bank Accounts**

6.    On July 5, 2022, Fulton Bank filed a motion to compel *inter alia*, the Debtor to attend a continued Rule 2004 exam and produce missing bank statements (the "Motion to Compel").[13]  The Motion to Compel is still pending at a continued hearing date.

7.    On the same day, PNC Bank produced records showing that the Debtor had closed six personal PNC Bank accounts shortly before the petition date.[14]  The records also show international wire transfers to a personal UB India account ending in 2174 (the "UB India Account").[15]  PNC Bank produced these records in response to a subpoena issued by Fulton Bank

---

[10] *See id.* Ex. B, Notice of Paycheck Protection Program Forgiveness Payment dated March 30, 2021, and PPP Loan Forgiveness Application Form 3508EZ dated March 11, 2021.

[11] *See* Dkt. No. 103 ¶¶ 2–3; *id.* Ex. A.

[12] *Id.* ¶ 4.

[13] Dkt. No. 114.

[14] True and correct copies of the final statements for these accounts are attached as Exhibits 4–9 to the Transcript of July 27, 2022, Deposition [hereinafter Transcript]  A true and correct copy of the Transcript is attached as Exhibit A to the *Reply of Fulton Bank, N.A., to the Debtor's Objection to Motion of Fulton Bank, N.A., to Convert Chapter 11 Case and Supplement Thereto* [Bauer Cert.].

[15] True and correct copies of the transfer records are attached as Exhibit 21 to the Transcript.

on June 20, 2022.[16] The Debtor neither disclosed these accounts in his SOFA nor produced them as required by the May 27 Order.

8. The Debtor voluntarily appeared for a continued Rule 2004 exam on July 27, 2022, at which Fulton Bank questioned him about the PNC Bank production.

**2. Redirection of SBA Loan Proceeds**

9. The Debtor redirected SBA loan proceeds to personal PNC Bank accounts and then a personal UB India account as follows:

    a. On July 27, 2020, Textile Décor received the initial EIDL disbursement of $149,900 from "SBAD TREAS" into its account ending in 2848 at TD Bank, N.A. ("TD Bank Account").[17]

    b. On July 29, 2020, Textile Décor withdrew $144,096.40 from the TD Bank Account by check.[18]

    c. On August 8, 2020, $144,096.40 was deposited into the Debtor's personal PNC Bank account ending in 1898 (the "1898 PNC Personal Account").[19]

    d. On March 12, 2021, as described in the incorporated facts, the Debtor certified in the State Court Action that Textile Décor had stopped operating in February 2021.[20]

    e. On August 16, 2021, the Debtor increased the EIDL to $500,000 and replaced the TD Bank Account with the 1898 PNC Personal Account for receiving disbursements.[21]

---

[16] A true and correct copy of the PNC Subpoena is attached as Exhibit B to the Bauer Cert. Fulton Bank served the PNC Subpoena on counsel for the Debtor in addition to PNC Bank.

[17] A true and correct copy of the TD Bank Account is attached as Exhibit 11 to the Transcript. Textile Décor's EDIL application provides the TD Bank account for disbursements. SBA Claim, Ex. A at 42.

[18] A true and correct copy of the check is attached as Exhibit 12 to the Transcript.

[19] A true and correct copy of the August 2020 1898 PNC Personal Account statement is attached at Exhibit 13 to the Transcript.

[20] A true and correct copy of this certification is attached as Exhibit 16 to the Transcript.

[21] SBA Letter dated August 16, 2021, SBA Claim, Ex. A at 46.

    f. On August 20, 2021, the 1898 PNC Personal Account received a $350,000 deposit from "Sbad Treas."[22]

    g. On December 16, 2021, the Debtor increased the EIDL to $2 million.[23]

    h. On December 23, 2021, the 1898 PNC Personal Account received a $1.5 million deposit from "Sbad Treas."[24]

    i. On December 29, 2021, the Debtor withdrew $496,754.98 from the 1898 PNC Personal Account via "withdrawal ticket."[25]

    j. From February 2–15, 2022, a total of $1,099,864.04 was deposited into the Debtor's personal PNC Bank account ending in 5835 (the "5835 PNC Personal Account").[26]

    k. From February 14–17, 2022, funds totaling $1,099,798.50 were wire transferred to the Debtor's UB India Account.[27]

  10. The Debtor testified that the December 29, 2021, withdrawal was a "vendor payment" but could not provide details.[28] He testified, "I don't recall any wire," with respect to the $1,099,864.04 deposit into the 5835 PNC Personal Account.[29] The Debtor further testified that

---

[22] A true and correct copy of the August 2021 1898 PNC Personal Account statement is attached at Exhibit 14 to the Transcript.

[23] SBA Letter dated December 6, 2021, SBA Claim, Ex. A at 48.

[24] A true and correct copy of the December 2021 1898 PNC Personal Account statement is attached at Exhibit 15 to the Transcript.

[25] A true and correct copy of the December 29, 2021, withdrawal ticket is attached at Exhibit 19 to the Transcript.

[26] A true and correct copy of the February 2022 5835 PNC Personal Account statement is attached at Exhibit 20 to the Transcript.

[27] True and correct copies of the transfer records are attached as Exhibit 21 to the Transcript.

[28] Transcript at 96 ll. 1–16.

[29] *Id.* at 99 ll. 6–16.

the transfers to the UB India Account were "were paid to the vendors" of Textile Décor,[30] and that the address on the account belonged to his parents.[31]

11.     Additional unexplained activity included cashier's checks to the Debtor from his wife, Swati Bhatheja, dated February 19 and February 26, 2021, in the respective amounts of $40,004.21 and $50,001.31[32] On February 26, 2022, the Debtor's personal PNC Bank account ending in 1249 (the "1249 PNC Personal Account") received deposits in nearly identical amounts.[33] The Debtor could not recall the circumstances of the deposits.[34] The next day, the Debtor withdrew $48,364.80 and $41,840.88 from the 1249 PNC Personal Account via "withdrawal tickets" indicating that the funds were for his parents, H.L. Malik and N. Malik, respectively.[35] The Debtor could not recall the circumstances of the payments.[36] However, he admitted that he had borrowed money from his parents in an amount that "may be more than a million" or "may be less," that he sometimes made periodic payments to them, and that he would probably have to amend his schedules to reflect this.[37]

12.     Throughout the Rule 2004 Exam, the Debtor declined to admit to specific facts or explain the transactions. Instead, he repeatedly insisted that he would provide "supporting paperwork"

---

[30] *Id.* at 106 l. 1–107 l. 22.

[31] *Id.* at 102 l. 10–103 l. 2.

[32] True and correct copies of these checks are attached to the Transcript as Exhibits 26–27.

[33] A true and correct copy of the February 2021 1249 PNC Personal Account statement is attached as Exhibit 8 to the Transcript.

[34] Transcript at 130 l. 2–131 l. 9.

[35] True and correct copies are attached as Exhibit 22 to the Transcript.

[36] Transcript at 112 l. 1–115 l. 21.

[37] *Id.*

that would disclose the necessary information at least 14 times.[38]  As of the date of this Objection, Fulton Bank has received nothing.

**C.      Fox Retention Application**

13.      On August 14, 2022, the Debtor filed the Fox Retention Application.  The services to be rendered include "advis[ing] the Debtor as his special counsel in connection with the Debtor's dealings with the SBA, including regarding the Debtor's PPP and EIDL loans."[39]  The declaration of Marissa Koblitz Kingman in support of the Application asserts that "Fox maintains that it is not disqualified from representing the Debtor as special counsel under 11 U.S.C. § 327(e) because of its representation of Fulton Bank in matters unrelated to this bankruptcy case or the Adversary Proceeding," which is now closed.[40]  In a supplemental declaration, she asserts that Fox's representation would be limited to "Varun Malik's dealings with the SBA requires special counsel because of potential allegations regarding the False Claims Act claims and the potential criminal exposure associated with the SBA COVID-19 related programs."[41]

14.      Neither the Fox Retention Application nor Ms. Kingman's declarations mention the State Court Action, in which the parties are directly adverse, or that Fulton Bank issued the PPP Loan.  Fulton Bank was never asked to waive this conflict.

---

[38] *See, e.g.*, *id.* at 22 ll. 7–9; 24 ll. 18–21; 25 ll. 10–11; 34 ll. 16–19; 39 ll. 15–18; 40 ll. 3–9; 42 ll. 16–18; 43 ll. 1–5; 85 ll. 1–8; 100 ll. 14–18; 101 l. 24–102 l. 3; 107 l. 24–108 l. 3; 198 ll. 17–20.

[39] Application ¶ 13(a).

[40] Dkt. No. 133-1 at ¶ 22.

[41] Dkt. No. 133 at ¶ 3.

### III. DISCUSSION

#### A. Legal Standard

15. Under 11 U.S.C. § 327(e), "special counsel may be appointed if: (1) the representation is in the best interest of the estate; (2) the attorney represented the debtor in the past; (3) the attorney is for a specific purpose approved by the court; and (4) the attorney does not represent or hold an interest adverse to the debtor or the debtor's estate."[42]

16. If counsel has not previously represented the Debtor, then it must be employed under 11 U.S.C. § 327(a), which allows the employment of counsel "that do not hold or represent an interest adverse to the estate, and that are disinterested persons."[43] Because the Debtor does not allege that Fox has represented him in the past, § 327(e) is unavailable, and he must retain Fox under § 327(a) instead. A "disinterested person" is one who "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."[44] An "adverse interest" means "any economic interest that would tend to lessen the value of the bankruptcy or that would create either an actual or potential dispute in which the estate is a rival claimant."[45]

17. Section 327(a) "presents a *per se* bar to the appointment of a law firm with an actual conflict, and gives the . . . court wide discretion in deciding whether to approve the appointment

---

[42] *In re Roper & Twardowsky, LLC*, 566 B.R. 734, 750 (Bankr. D.N.J. 2017).

[43] *Id.* at 754–55; *see also In re Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 849 (D. Del. 1996) ("Of the handful of courts that have examined the question of whether § 327(e) permits appointment of counsel that have not previously represented the debtor, most have held that it does not.").

[44] 11 U.S.C. § 101(14)(c)

[45] *Roper*, 566 B.R. at 755 (internal quotation marks and citation omitted).

of a law firm with a potential conflict."[46]  A conflict is actual "if 'it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest.'"[47]

18.     Whether retained under § 327(a) or § 327(e), counsel must always comply with the professional rules.[48]  Rule 1.7 of the New Jersey Rules of Professional Conduct provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," including where "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client."[49]

**B.     Argument**

19.     Fox has an actual and concurrent conflict of interest because it represents Fulton Bank in connection with commercial loan transactions, and the Debtor is asserting ECOA and related counterclaims against Fulton Bank in the State Court Action that arise from a commercial loan transaction.

20.     Fox also has an actual and concurrent conflict of interest because it seeks to represent the Debtor in connection with civil and criminal liability arising from an EIDL and a PPP Loan, and Fulton Bank issued the PPP Loan.

21.     Fox also has an actual and concurrent conflict of interest because it proposes to be paid by an individual at risk of being a fraudulent transferee of the EIDL proceeds and possibly

---

[46] *Roper*, 566 B.R. at 755 (quoting *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 477 (3d Cir. 1998)).

[47] *Id.* (quoting *In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir. 2002)).

[48] *In re Congoleum Corp.*, 426 F.3d 675, 687–89 (3d Cir. 2005).

[49] N.J.R. Prof. Conduct 1.7(a).

other monies from the Debtor, which the Debtor should be actively pursuing for the benefit of all creditors.

22. Fox also is not a disinterested person, and holds a materially adverse interest to the estate, because it proposes to be paid by a person whom the Debtor admitted is a creditor of the estate.

23. Finally, Fox's representation is directly adverse to Fulton Bank, who is seeking to convert the Bankruptcy Case to a chapter 7 proceeding in part based on the same facts on which Fox would be defending the Debtor's interest.

## IV.     CONCLUSION

For the foregoing reasons, Fulton Bank respectfully asks the Court to sustain its Objection and deny the Fox Retention Application.

Respectfully Submitted,

**DUANE MORRIS LLP**
Attorneys for Fulton Bank, N.A.

By: */s/ Morris S. Bauer*
Morris S. Bauer, Esq.

Dated: August 22, 2022