**THE KELLY FIRM, P.C.**
Andrew J. Kelly, Esq.
Bunce D. Atkinson, Esq.
Coast Capital Building
1011 Highway 71, Suite 200
Spring Lake, New Jersey 07762
(732) 449-0525
akelly@kbtlaw.com
bunceatkinson@aol.com
*Attorneys for the Trustee, Bunce D. Atkinson, Esq.*

| In re:<br><br>VARUN MALIK<br><br>Debtors | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Chapter 7<br><br>Case No.: 22-11708<br>CHRISTINE M. GRAVELLE   U.S.B.J.<br><br>Hearing Date: February 7, 2023 at 2:00 p.m. |
|---|---|

**CERTIFICATION OF TRUSTEE BUNCE D. ATKINSON IN OPPOSITION TO FIRST AND FINAL FEE APPLICATION OF FOX ROTHSCHILD LLP AS SPECIAL COUNSEL FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD FROM JULY 29,2022 THOUGH DECEMBER 12, 2022.**

I, BUNCE D. ATKINSON, ESQ., being of full age, hereby certify as follows:

1.  I am the Chapter 7 Trustee for Varun Malik (the "Debtor"), and I am fully familiar with the facts contained herein.

2.  I was appointed as the Chapter 7 Trustee on September 15, 2022 (ECF 175) following the conversion of the case from a Chapter 11 to a Chapter 7 case on September 15, 2022. (ECF 174).

3. I make this Certification in opposition to the First and Final Fee Application of Fox Rothchild LLP. (hereinafter "Fox") as Special Counsel to the Debtor for allowance of compensation for professional services rendered and reimbursement of expenses incurred for the period from July 29, 2022 through December 12, 2022 seeking $64,099.20 for legal fees and $162.44 for expenses. ("Fee Application"). The majority of the services were rendered in the seven (7) week period between July 29, 2022 and September 15, 2022 when the Court Order converting the case was filed.

4. The fee application is primarily for services rendered for Case Administration ($24,296), Fee/Employment Applications ($20,223), responding to objections to employment as Special Counsel ($14,834.50), and Criminal Defense ($12,211.50). The Trustee objects to the fee application in its entirety.

5. The Fee Application attaches the time records of the attorneys and paralegals at Fox who performed services. The first twenty-two (22) pages are for Case Administration, Fee/Employment Applications, and Fee/Employment Objections. The Trustee notes that although the time record pages are numbered 1 through 22, there is no page 2. The fees sought for professional services total $52,110.40 after giving a courtesy discount adjustment of $10,183.10.

6. The second six (6) pages are for Criminal Defense and seek $11,988.80 for professional services after giving a courtesy discount of $222.70. The Trustee notes that although the pages are numbered 1 through 6, there is no page 2.

7. Following the conversion of the case to a Chapter 7 and my appointment as the Chapter 7 Trustee on September 15, 2022, I did not retain Fox as special counsel for the Debtor Estate.

8. The application to appoint Fox as special counsel for the Debtor filed on August 14, 2022 (ECF 133) revealed that the representation was to be in connection with advising the Debtor in dealings with the SBA regarding Payroll Protection Plan (PPP) and Economic Injury Disaster Loans (EIDL). The application to employ Fox revealed that $28,000 had been paid as a retainer by a non-debtor. The name of the non-debtor was not disclosed.

9. Following an objection filed on behalf of Fulton Bank to the application to appoint Fox, Fox attorney Kingman filed a Supplemental Declaration on August 18, 2022 (ECF 139). In her supplemental Declaration Ms. Kingman stated that "The services provided by Fox will only be in relation to potential criminal accusations and False Claim Act claims relating to the government Covid-19 related programs." (Paragraph 4). She also revealed that the retainer was paid by the Debtor's father. (Paragraph 5).

10. In response to the Fulton Bank objection to appointment of Fox, the Debtor filed a reply certification on August 30, 2022 (ECF 159). In paragraph 3 the Debtor certified that "Importantly the services rendered by Fox will <u>only</u> be in relation to potential criminal accusations and False Claims Act claims as it relates to the government Covid-19 protection programs".

11. The Debtor continued in Paragraph 5, "As set forth in the Application and Supplemental Declaration, the Debtor will <u>not</u> be expending estate resources to pay for Fox's engagement".

12. Based upon the application for employment of Fox, the Declaration, the Supplemental Declaration of Kingman, and the Debtor's reply certification, Fox should not be entitled to any claim for professional fees and expenses from the Debtor Estate. In

the event the Court enters an order awarding any legal fees and expenses, the order should specifically provide that they are not claims against the Debtor Estate, and that Fox is not entitled to any compensation from the Debtor Estate.

13. Regarding specific objections to time entries, in the Fee Application's first 22 pages of time records, there are five (5) time entries of Mark Hall on pages 9 and 10 for services rendered post-conversion totaling $367.50 to which Fox is not entitled to receive compensation because they were rendered post-conversion. On pages nineteen (19) and twenty (20) there are post-conversion entries of Kingman, Esq. and Hall for services totaling $298.00. In the Fee Application's second section of time entries for "Criminal Defense", there are seven (7) entries totaling 3.0 hours on page 5 for services rendered post-conversion. For the post-conversion services, Fox seeks $1,295. The Trustee objects to all compensation requested for post conversion services.

14. Regarding the Criminal Defense services, the Trustee believes that the services were not necessary services rendered to the Debtor Estate. All of the services relate to potential criminal charges and claims against the Debtor Varun Malik individually relating to the PPP and EIDL loans. Many the entries in the criminal defense section are redacted so the Court cannot determine whether they were necessary for the benefit of the Debtor Estate rather than Malik individually. Moreover, it is clear from the application for employment that the Debtor Estate was not to be responsible for paying for the services.

15. In the section of the Fee Application records entitled Criminal Defense, there are entries on September 13 and 14 on pages 4 and 5 totaling 6.2 hours relating to the exercise of the Fifth Amendment by the Debtor. September 14 was the date of the

4

hearing on conversion to a Chapter 7. It is unknown whether the services were after the Court's determination to convert to a Chapter 7, but before the entry of the Order on September 15, 2022. The services in the Criminal Defense section of the fee application relating to the Fifth Amendment are valued at $3,162.

16. At the first Meeting of Creditors, the Debtor invoked his Fifth Amendment privilege and accordingly did not provide the Trustee with any information or give any testimony regarding the PPP and EIDL loans or what happened to the proceeds. From bank records that I have reviewed, I have determined that within 2 ½ months before filing his Chapter 11 petition, the Debtor deposited at least $1,850,000 into his personal bank account at PNC, then transferred the funds to another of his accounts at PNC, and then electronically transferred $950,000 to an account at the Union Bank in India. I believe the Union Bank account belonged to the Debtor. None of this was disclosed in his Petition. Additionally, the bank records reveal that the Debtor withdrew $140,000 from his PNC account in the fifteen days pre-petition. He invoked the Fifth Amendment when questioned about the withdrawals. Clearly none of the services of Fox relating to the Fifth Amendment have benefitted the Estate and were not necessary for the Debtor Estate. These fees should be denied.

17. According to the Fee Application time records on page twenty (20) $20,223 has been billed for Fee/Employment Applications and $14,834.50 for Fee/Employment Objections.

18. The time records associated with the Application of Employment are found on pages ten (10) through fifteen (15). The Trustee notes that the time recorded as Employment Application (Code G) also includes some of the time that should have been

properly attributed to the Objection to Employment Application (Code H). These include the services rendered in connection with the Kingman Supplemental Declaration. The entries are found on pages fourteen (14) and fifteen (15) during the period August 17, 2022 through August 19, 2022 and total 2.4 hours for which fees are sought of $1,336.

19. In the section concerning Employment Applications on pages thirteen (13) through fifteen (15), there are seven (7) entries regarding the employment of Withum as financial advisors for the Debtor. The time totals 1.9 hours for which compensation of $1,337.50 is sought. These services were not for services for which Special Counsel was employed, and Special Counsel is not entitled to be compensated for services that were beyond the scope of its employment. These would have been services for the Debtor's Bankruptcy Counsel to perform. Moreover, no application to appoint Withum was ever filed.

20. The Fee Application also includes time expended to employ Bruce Levitt Esq. as substitute bankruptcy counsel for the Debtor. The entries are found on pages thirteen (13) through fifteen (15) and total 1.1 hours for which Fox seeks $797.50. These services are not services for which Special Counsel was employed, and Special Counsel is not entitled to be compensated for services that were beyond the scope of its employment.

21. Regarding Code H, Fee/Employment Objections, as of the filing of the Fee Application, there had not yet been any objections to fees, so the entire $14,834.50 was for responding to objections to Fox's employment as Special Counsel. The time is found on pages sixteen (16) through nineteen (19.) The Trustee notes that only a six (6) page Supplemental Declaration was filed by Kingman Esq., and a nine (9) page reply was

6

filed by the Debtor. The Debtor's reply was the same information in the Kingman supplemental declaration. The services were not necessary for the Debtor Estate, and $14,834.50 is not reasonable compensation for responding to the objection to employment.

22. On pages fifteen (15) and sixteen (16) there are time entries of Hall and paralegal Solomon for services rendered between November 7 and December 12 relating to preparation and filing of the fee application for which Fox seeks $2,841.50.

23. Fox seeks a total of $35,057.50 solely for matters which it states were for services related to obtaining an order for employment as Special Counsel for a limited purpose for which it was not to be compensated by the Debtor Estate. This is in addition to the $1,554 it seeks for Court appearances relating to the application for employment. The Trustee objects to all these fees in connection with the application to employ Special Counsel as being unnecessary for the Debtor Estate.

24. Fox also seeks compensation of $24,296 for 42.7 hours of what is referred to as case administration (D), as set forth on the page 20 summary. The actual time records for case administration are found on pages 1 through 9 of the time records.

25. A review of the time records reveals that the time includes items unrelated to the matters for which it sought employment as special counsel. These include 10.7 hours for attorney time on August 1, 2022 regarding meeting with Malik, and an internal conference. The fees for that day total $6,778.50. These services appear to be meeting with a potential client rather than providing necessary services to the Debtor Estate.

26. For case administration section, there are conferences with the Debtor and potential replacement counsel and attempting to find Debtor a replacement counsel

7

(August 11, 2022 1 hr. $725., August 12 .7 hr, $507.50, August 15 .1 hr $72.50), discussions, telephone conferences, and correspondence with or involving Withum (August 1, August 12, .9 hr. $459, August 19 1.1 hr. $561., August 25 1.1 hr. $816). These are not the services for which Fox was to be employed as Special Counsel.

27. There are other services in case administration that are beyond the scope of employment. These include but are not limited to August 11 regarding status of pending matters and motions (.3 hr. $217.50), August 15 and 16 regarding Consent Orders to extend deadlines for non-dischargeability complaints (.7 hr $507.50), August 16 and 17 relating to transcript and discovery requests (1.2 hrs. $870.), August 19 reviewing letters and drafting letters regarding adjournments of motions unrelated to Special Counsel (.9 hr. $652.50), August 22 (.4 hr. $290.), drafting correspondence and reviewing correspondence relating to adjournment request by Debtor for additional time to provide discovery, September 1 and 2 (.5 hr. for $367.50).

28. Based upon the Fee Application, page 22, Fox received a total retainer of $56,000, and $52,263.82 has already been applied to the $52,263.82 attorney fees and expenses sought in the time records pages 1 through 22. It also indicates that there is a credit balance of $3,736.18. The $52,263.82 was applied prior to receiving a Court Order approving the fees and costs, clearly indicating that Fox was not seeking compensation from the Debtor Estate.

29. In summary, the Trustee objects to the award of any attorney fees and costs to Fox, and that if any fees and costs are awarded that the order clearly indicate that they are not an obligation of the Debtor Estate and that Fox has no claim against the Debtor Estate.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false that I am subject to punishment.

By: ___*/s/ Bunce Atkinson*___
BUNCE D. ATKINSON, ESQ.

Dated: January 24, 2023