| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>*Caption In Compliance With D.N.J. LBR 9004-1(b)* | |
| **DUANE MORRIS LLP**<br>Morris S. Bauer, Esq.<br>One Riverfront Plaza<br>1037 Raymond Boulevard, Suite 1800<br>Newark, NJ 07102-5429<br>Telephone: (973) 424-2037<br>E-mail: msbauer@duanemorris.com<br><br>*Counsel for Fulton Bank, N.A.* | |
| In Re:<br><br>**VARUN MALIK**,<br><br>       Debtor. | Case No. 22-11708 CMG<br><br>Judge: Hon. Christine M. Gravelle<br><br>Chapter 7<br><br>Related to Dkt. No. 222 |

### FULTON BANK, N.A., AND DUANE MORRIS LLP'S VERIFIED OPPOSITION TO THE DEBTOR'S MOTION TO HOLD FULTON BANK AND DUANE MORRIS, LLC IN CONTEMPT; AND FULTON BANK'S CROSS-MOTION TO AUTHORIZE FULTON BANK AND ANY THIRD PARTY TO USE ANY DISCOVERY PRODUCED IN CONNECTION WITH THE EXAMINATION OF THE DEBTOR FOR ANY PURPOSE

### INTRODUCTION

1.      The *Motion to Hold Fulton Bank and Duane Morris, LLC*[1] *in Contempt* [Dkt. No. 222] (the "Contempt Motion") filed by Varun Malik (the "Debtor") concerns whether Fulton Bank, N.A. ("Fulton Bank") and Duane Morris LLP ("Duane Morris") violated the *Order on Debtor's Motion to Modify Fed. R. Bankr. P. 2004 Subpoena Issued by Fulton Bank, N.A. Directed to Varun Malik Pursuant to D.N.J. LBR 2004-1(d) and U.S.C. § 105(a); Entering Protective Order in Light of Pending Proceedings; and Other Related Relief* [Dkt. No. 103] (the "Order") entered by the

---

[1] The Debtor incorrectly references Duane Morris LLP as "Duane Morris, LLC" in the title of this motion.

U.S. Bankruptcy Court for the District of New Jersey (the "Court") on May 27, 2022, when they

utilized certain documents in a civil action commenced by Fulton Bank against the Debtor and his

company, Textile Décor USA, Inc. ("Textile Décor"), in the Superior Court of New Jersey for

Somerset County, Law Division (the "State Court"), Case No. SOM-L-265-21 (the "State Court

Action").

2.    As set forth below, the Contempt Motion is without merit and should be denied

because the documents at issue are not subject to the Order.

3.    Because the Court has denied the Debtor a discharge of his debts and Fulton Bank

has obtained a judgment against the Debtor in the State Court Action, Fulton Bank also files the

above-captioned cross-motion (the "Cross-Motion") seeking authority for itself and any third party to

use any discovery produced in connection with the Examination (as defined in the Order) for any

purpose.

## **FACTUAL BACKGROUND**

4.    To determine whether Fulton Bank and Duane Morris violated the Order, it is

important to recall the impetus for such Order and the purpose of its protective language.

5.    On April 1, 2022, Fulton served a *Subpoena for Rule 2004 Examination* (together

with the Rider attached thereto, the "Subpoena") under Rule 2004 of the Federal Rules of Bankruptcy

Procedure (the "Rules") on the Debtor via his counsel.  A true and correct copy of the Subpoena is

annexed hereto as Exhibit A.

6.    The Subpoena sought the ***Debtor's*** production of the following ***Debtor*** documents:

1.    Tax Returns for years 2018, 2019, 2020 and 2021;

2.    Bank Statements for years 2018, 2019, 2020, 2021 and 2022, including [the
Debtor's] accounts, if any, with Citibank, Habib American Bank, Amboy Bank;

3. Copies of documents relating to the sale, transfer, purchase or acquisition of [the Debtor's] ownership or any other type of interest [the Debtor] may have in any real estate, stock or other type of ownership interest, including with respect to HLM Koncept LLC, 44 Denise Drive, Edison, NJ, 1 Skytop Road, Edison, NJ, 21 Maida Road, Edison, NJ, RDM Concepts Holdings, Inc., 21 Model Town, Panipat, India, Malik Fabrics Private Limited;

4. Personal financial statements provided to any persons during the years 2018, 2019, 2020, 2021 and 2022; and,

5. Copies of any loan applications, loan documents or guarantees in which [the Debtor] was a party to during the years 2019, 2020 and 2021, including U.S. Small Business Administration, TD Bank and HSBC.

Subpoena at Rider.

7. The Subpoena also sought Debtor's testimony at a Rule 2004 examination. *Id.* at 1.

8. On April 19, 2022, the Debtor filed a *Motion for Order Modifying Fed. R. Bankr. P. 2004 Subpoena Issued by Fulton Bank, N.A. Directed to Varun Malik Pursuant to D.N.J. LBR 2004-1(d) and 11 U.S.C. § 105(a); Entering a Protective Order in Light of Pending Proceedings; and Granting Related Relief* [Dkt. No. 74] (the "Motion to Modify"), seeking a modification of the Subpoena and a protective order against "undue burden and harassment" of the Debtor and to prevent Fulton Bank from taking "unfair advantage" of Rule 2004 to further its aims in the State Court Action or the general assignment for the benefit of creditors of Textile Décor pending in the Superior Court of New Jersey for Somerset County, Chancery Division, Probate Part (the "Assignment Proceeding").[2] *Id.* at 3. The Debtor is the principal and sole shareholder of Textile Décor.

---

[2] Steven Mitnick was designated to serve as assignee for the benefit of the creditors of Textile Décor (the "Assignee") pursuant to a Deed of Assignment dated February 21, 2022.

9.      In the Motion to Modify, the Debtor also asked the Court to require Fulton Bank to "articulate and demonstrate good cause for the various documents and information it seeks under the Subpoena" and demonstrate "the necessity for . . . [the Subpoena] in this case in light of the stay relief granted to Fulton Bank." Motion to Modify at 3.

10.     The central relief sought by the Debtor in the Motion to Modify was an order directing Fulton Bank "to refrain from use of its Rule 2004 examination" in connection with the State Court Action and to limit the scope of the Rule 2004 examination. *Id.* at 3–4. The Debtor cited *In re Wash. Mut., Inc.* in support of such relief as follows:

> There are . . . limits to the use of Rule 2004 examinations. "It may not be used for 'purposes of abuse or harassment' and it 'cannot stray into matters which are not relevant to the basic inquiry.'" . . . In addition to restricting the use of Rule 2004 examinations when proceedings are pending against the examinee in the bankruptcy court, **courts have also recognized that Rule 2004 examinations may be inappropriate "where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee."**

*Id.* at 4 (quoting 408 B.R. 45, 50 (Bankr. D. Del. 2009) (internal citations omitted) (emphasis added by the Debtor)). The Debtor also cited *Synder v. Soc'y Bank*, which affirmed an order denying a motion to compel production under a Rule 2004 subpoena "where [the] appellant's ***primary motivation*** was to use those materials in a state court action against the examinee." *Id.* (citing 181 B.R. 40, 42 (S.D. Tex. 1994), *aff'd sub nom., In re Snyder*, 52 F.3d 1067 (5th Cir. 1995) (mem.)) (emphasis added).

11.     The Order stated that the Motion to Modify was "GRANTED to the extent set forth below." Order ¶ 1. A true and correct copy of the Order is annexed hereto as <u>Exhibit B</u>.

12.     The Court did not conclude that the Subpoena represented "undue burden and harassment" of the Debtor or was designed to obtain "unfair advantage" by using Rule 2004 to further Fulton Bank's aims in the State Court Action.

13.     Further, the Court did not conclude that Fulton Bank had failed to "articulate and demonstrate good cause" for the various documents and information it sought under the Subpoena or to demonstrate "the necessity" for their production. The Court similarly did not conclude that the Fulton Bank's "primary motivation" in issuing the Subpoena was to use such documents and information in the State Court Action.

14.     To the contrary, the Court ordered that the Debtor "shall produce" to Fulton Bank "all documents" sought in the Rider, defining such documents as the "Documents." Order ¶ 2.

15.     The Court also ordered that the Debtor "shall appear for a 2004 examination," defining such examination as the "Examination." *Id*. ¶ 3.

16.     Finally, after providing for the location, length, and other specifics of the Examination, the Court ordered that:

> Any discovery produced in connection with the Examination, including but not limited to the Documents, shall not be used by Fulton Bank or any third party in any case or action except for the instant Bankruptcy Case without further Order from this Court.

Order ¶ 7.

17.     Given the express purpose behind the Motion to Modify and the language of the Order itself, it is evident that the Order restricts the use of discovery produced in connection with to the Examination **of the Debtor**—meaning documents produced **by the Debtor** under the Subpoena compelling such Examination and production, his Examination testimony itself, and any discovery produced **by the Debtor** as a result of his Examination.

18.    Notably, the Debtor did not seek an order providing—and the Order itself does not state—that Fulton Bank is prohibited from using any material produced by any party under any Rule 2004 subpoena during the course of the bankruptcy case in the State Court Action and certainly not material obtained outside the bankruptcy case.

## ARGUMENT

19.    A bankruptcy court may hold a party in civil contempt pursuant to 11 U.S.C. § 105(a) upon a showing "by clear and convincing evidence[ that] (i) a valid court order exists; (ii) the party had knowledge of the order; and (iii) the [party] disobeyed the order." *In re Corvisiero*, No. 12-31117-CMG, 2016 WL 3960535, at *2 (Bankr. D.N.J. July 15, 2016).  A contempt motion "should not be granted if there is doubt surrounding the wrongfulness of the party's conduct[, such that a]ny ambiguities must be resolved in favor of the party charged with contempt." *Raza v. Biase*, No. 2:07-CV-02576, 2008 WL 11495053, at *2 (D.N.J. Mar. 17, 2008) (internal citation omitted).

20.    The purpose of civil contempt sanctions is "to coerce a defendant into complying with a court's orders or to compensate the complainant for losses sustained as a result of the defendant's non-compliance." *Corvisiero*, 2016 WL 3960535, at *2.  Compensatory damages "may include an award of attorneys' fees incurred in connection with the contempt proceedings" but "must not exceed the actual damages caused the offended party by a violation of the court's order." *In re Suh*, No. 17-17221-ABA, 2018 WL 2113092, at *10 (Bankr. D.N.J. May 4, 2018) (internal quotation marks and citation omitted).

21.    The Debtor asserts that Fulton Bank and Duane Morris violated the Order by filing certain documents attached as Exhibits H–M of the *Certification of Robert Brener in Support of Fulton Bank, N.A.'s Motion for Summary Judgment* (the "Brener Certification") in the State Court

Action that were "*utilized* in connection with [the Debtor's] Rule 2004 Examination." *See* Contempt Motion ¶ 6 (emphasis added).

22.    But the Order does not prohibit the use of any document *utilized* in connection with the Examination, which would mean that the mere act of showing the Debtor a document obtained elsewhere would preclude its use in the State Court Action.  The Order prohibits the use of any document "*produced* in connection with the Examination," *see* Order ¶ 7 (emphasis added), which can only reasonably be read to encompass any document produced *by the Debtor under the Subpoena* or as a result of the Examination.  The documents attached to the Brener Certification were not "produced in connection with the Examination" and thus are not subject to the Order. Accordingly, neither Fulton Bank nor Duane Morris disobeyed the Order.

23.    For example, Exhibit H to the Brener Certification is a TD Bank, N.A. ("TD Bank") statement for an account held by *Textile Décor*.  It is not a Debtor bank statement and is thus not a "Document" as defined in the Order.  Additionally, Fulton Bank did not obtain the Textile Décor bank statement in the bankruptcy case but rather received it from the Assignee in the Assignment Proceeding.  The Assignee issued a subpoena to TD Bank (the "TD Bank Subpoena") and provided TD Bank's production thereunder to Fulton Bank.  A true and correct copy of the TD Bank Subpoena issued by the Assignee is annexed hereto as Exhibit C.

24.    Thus, the Textile Décor bank statement is merely a document that Fulton Bank obtained during the course of its efforts to pursue the State Court Action and protect its rights as a creditor in the Assignment Proceeding.

25.    The Debtor cannot credibly argue that because Fulton Bank *used* the Textile Décor bank statement that it obtained from a third party in the Examination, Fulton Bank is barred from filing the same document in the State Court Action.  The wording of the Order does not support

DM3\9634705.4

an interpretation that precludes Fulton Bank from using documents obtained from a third party outside the bankruptcy case in other proceedings.

26.    The other documents at issue—Exhibits I–M of the Brener Certification—are also outside the scope of the Order because they comprise statements and other documents relating to the Debtor's accounts at PNC Bank, N.A. ("PNC") produced **by PNC** in response to a ***separate Rule 2004 subpoena*** issued by Fulton Bank after the Debtor failed to identify such accounts to the Court.  Notwithstanding this omission, the U.S. Small Business Administration (the "SBA") filed Claim No. 6 (the "SBA Claim") with supporting documents suggesting that the Debtor had directed the SBA to deposit Economic Injury Disaster Loan ("EIDL") proceeds issued to Textile Décor into a PNC bank account appearing to be held in his name.

27.    Regardless of the Debtor's testimony at the Examination, the existence of one or more personal PNC accounts that received EIDL proceeds would have potentially (a) disclosed additional assets for the estate and (b) constituted evidence in support of conversion and/or a denial of discharge because the Debtor disclosed no such accounts or transfers in his *Statement of Financial Affairs for Individuals Filing for Bankruptcy* [Dkt. No. 22] (the "SOFA") filed with the Court or at the meeting of creditors conducted by the U.S. Trustee on March 31, 2022, pursuant to 11 U.S.C. 341(a).

28.    To reveal any potentially concealed accounts or assets, Fulton Bank issued a *Subpoena for Rule 2004 Examination* (together with the Rider attached thereto, the "PNC Subpoena") to PNC on June 2, 2022, and served a courtesy copy of the PNC Subpoena on the Debtor's then-counsel, Joseph Shapiro, by email on the same date (the "PNC Subpoena Courtesy Email").  True and correct copies of the PNC Subpoena Courtesy Email and the PNC Subpoena attached thereto are annexed hereto as Exhibit D.

29.    Although Fulton Bank issued the PNC Subpoena *two months* after it served the Subpoena on the Debtor and approximately *six days* after the Court issued the Order that is the subject of the Contempt Motion, the Debtor did not move to quash or modify the PNC Subpoena or seek a protective order against the use of documents produced by PNC in other proceedings or for any other purpose.

30.    Conversely, the Debtor separately opposed Rule 2004 subpoenas issued by Fulton Bank to (a) Habib American Bank and Glenwood Office Furniture II [Dkt. No. 71] and (b) Swati Bhatheja a/k/a/ Swati Malik [Dkt. No. 80] and obtained separate orders containing nearly identical language to paragraph 7 of the Order to restricting the use of documents *produced in connection with those Rule 2004 examinations* in other proceedings.  *See* Dkt. No. 104 ¶ 7 ("Any discovery produced in connection with the foregoing Glenwood and Habib Examinations, including but not limited to the Glenwood and Habib Documents, shall not be used by Fulton Bank or any third party in any case or action except for the instant Bankruptcy Case without further Order from this Court."); Dkt. No. 105 ¶ 5 ("Any discovery produced in connection with the Bhatheja Examination, including but not limited to the Bhatheja Documents, shall not be used by Fulton Bank or any third party in any case or action except for the instant Bankruptcy Case without further Order from this Court.").

31.    The Court entered these orders on May 27, 2022—the same day it entered the Order on the Motion to Modify *the Debtor's* Subpoena.  Yet when Fulton Bank issued the PNC Subpoena six days later, the Debtor sought no modification of the request or limitation on the use of any production by PNC.

32.    Even though the Debtor received service of the PNC Subpoena and failed to oppose it in any way, he argues that Fulton Bank and Duane Morris violated the Order governing *the*

*separate Subpoena issued to him* because they "utilized" such documents in his Examination, Contempt Motion ¶ 6, mischaracterizing the Order's restriction on the use of documents "produced in connection with the Examination" compelled thereunder, Order ¶ 7.  This position necessarily concedes that documents *produced by PNC under the PNC Subpoena* are not subject to the Order but for (according to the Debtor) the fact that Fulton Bank, through counsel, asked questions about them in the Examination.  But this is a distinction without a difference.  In compliance with the Order, Fulton Bank did not cite any of the Debtor's Examination testimony in the State Court Action and indeed filed no bank statements *actually produced by the Debtor*, which solely comprised statements from Amboy Bank and Citibank, N.A.—the only accounts identified in his SOFA.

33.     Because Fulton Bank obtained the PNC documents (i) pursuant to a separate PNC Subpoena without objection from the Debtor *and not the Subpoena that prompted the Motion to Modify and resulting Order*; (ii) in pursuit of potential accounts and assets never disclosed in any prior filing or testimony of the Debtor but later implicated by documents supporting the SBA Claim; (iii) *from PNC and not from the Debtor*; and (iv) in connection with the Rule 2004 production sought under the PNC Subpoena *and not the Debtor's Examination*, Fulton Bank and Duane Morris did not violate the Order by filing examples from the PNC production in the State Court Action and have remained in compliance with such Order at all times.  There was no order that precluded Fulton Bank and Duane Morris from using the documents produced by PNC.

34.     To the extent that the Court agrees with the Debtor's interpretation of the Order (*i.e.*, that any document produced by a third party under a separate Rule 2004 subpoena or obtained from a third party outside the bankruptcy case is subject to the Order if it were shown to the Debtor during the Examination), the operative language in paragraph 7 is reasonably susceptible to Fulton

DM3\9634705.4

Bank and Duane Morris's reading, and any ambiguity should be construed in their favor. *Raza* 2008 WL 11495053, at *2.

35.    Additionally, the use of the PNC documents (and the TD Bank statement of Textile Décor) in the State Court Action caused no harm to the Debtor because the State Court rendered judgment against the Debtor without relying on such documents. *Corvisiero*, 2016 WL 3960535, at *2; *Suh*, 2018 WL 2113092, at *10.

36.    On April 17, 2023, the State Court issued a decision (the "Summary Judgment Decision") awarding Fulton Bank summary judgment on all claims against the Debtor and Textile Décor and denying their counterclaims.   A true and correct copy of the Summary Judgment Decision is annexed hereto as Exhibit E.  In the decision, the State Court concluded that the Debtor had fraudulently induced Fulton Bank into extending loans to Textile Décor by making knowing, material misrepresentations about Textile Décor's accounts receivable.   Summary Judgment Decision at 29 ll. 5–22; *id.* at 31 ll. 5–12.  The State Court also concluded that the Debtor breached the guaranty requiring him to pay Textile Décor's loan obligations to Fulton Bank in the event of a default. *Id.* at 30 l. 4– 31 l. 12.

37.    In so doing, the State Court did not mention, and therefore did not rely on, Exhibits H–M attached to the Brener Certification. *See generally* Summary Judgment Decision (making no reference to such exhibits).

38.    As a result, to the extent that the Court deems the use of Exhibits H–M attached to the Brener Certification in the State Court Action to be a violation of the Order, the Debtor has not been harmed and will not be harmed going forward.  Additionally, because the State Court Action has effectively concluded, the concerns underlying the Motion to Modify and the Order are moot

such that Fulton Bank and any third party should be permitted to rely on discovery produced in connection with the Examination for any purpose.

## RELIEF REQUESTED

39.     The Debtor argues that he is entitled to collect legal fees of over $50,000 that he incurred in opposing Fulton Bank's *Motion for Summary Judgment* (the "MSJ") in the State Court Action.  Contempt Motion ¶ 12.  A true and correct copy of the MSJ is annexed hereto as Exhibit G.  Because only compensatory damages are available to a party asserting a claim of civil contempt, the Debtor is essentially arguing that he would not have incurred any fees opposing the MSJ if Fulton Bank had not attached six bank documents to the Brener Certification in support thereof.

40.     The argument is not credible.  Fulton Bank's MSJ—in which Fulton Bank sought summary judgment on its claims for breach of contract and fraudulent inducement against both the Debtor and Textile Décor—consisted of a 14-page certification from Fulton Bank, a 20-page *Statement of Material Undisputed Facts*, a 32-page legal brief, and the five-page Brener Certification, not to mention hundreds of pages of exhibits.  Fulton referenced the handful of documents about which the Debtor complains—12 pages in total—in a total of ***two paragraphs*** in the 32-page legal brief and ***a half-page*** of the Brener Certification. It is no wonder the State Court ignored them altogether in its Summary Judgment Decision.

41.     In other words, the Debtor would have incurred the same fees if Fulton Bank had not referenced the subject documents at all.  Additionally, the Debtor claims to have provided a summary of time and expenses supporting such fees in Exhibit C to the Contempt Motion, *id.* ¶ 12, but no such summary is attached.

DM3\9634705.4

42.     For the reasons articulated above, the Debtor is also entitled to no fees associated with the Contempt Motion, which is wholly frivolous and unsubstantiated, and the Court has no basis to issue a fine against Fulton Bank and Duane Morris because they did not violate the Order.

43.     Instead, the Court should deny the Contempt Motion.

### FULTON BANK'S CROSS-MOTION

44.     The Order states that Fulton Bank should seek permission to use discovery produced in connection with the Examination in other proceedings.  *Id.* ¶ 7.

45.     To the extent that the Order is unclear, and now that this Court has denied the Debtor a discharge of his debts, *see* Dkt. No. 215, and the State Court has awarded Fulton Bank the total sum of $4,670,698.02, *see* Summary Judgment Decision at 3 ll. 7–11; *id.* at 25 l. 21–31 l. 19, Fulton Bank respectfully asks the Court for permission for itself and any third party to use any discovery produced in connection with the Examination for any purpose.

46.     WHEREFORE, Fulton Bank respectfully requests that the Court deny the Contempt Motion and grant the Cross-Motion.

Respectfully submitted,

**DUANE MORRIS LLP**
Counsel for Fulton Bank, N.A.

*/s/ Morris S. Bauer*
Morris S. Bauer, Esq.

Dated:  May 9, 2023

DM3\9634705.4

## <u>VERIFICATION</u>

Morris S. Bauer, of full age, hereby certifies and says:

1.      I am a partner with the law firm of Duane Morris LLP, counsel for the respondent and cross-movant Fulton Bank, N.A., a creditor and party in interest in the above-captioned bankruptcy case.  I am fully familiar with the facts set forth herein.

2.      I have reviewed the factual information contained herein, and the same is true and accurate to the best of my knowledge and belief.

I hereby certify that the foregoing statements made by me are true.  If any of the foregoing statements made by me are willfully false, I am subject to punishment.

*/s/ Morris S. Bauer*       
Morris S. Bauer, Esq.

Dated:  May 9, 2023